1
2
3
4
5
6
7

KEKER, VAN NEST & PETERS LLP
R. JAMES SLAUGHTER - #192813
rslaughter@keker.com
R. ADAM LAURIDSEN - # 243780
alauridsen@keker.com
CANDICE MAI KHANH NGUYEN - # 329881
cnguyen@keker.com
LUIS G. HOYOS - # 313019
lhoyos@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:    415 391 5400
Facsimile:    415 397 7188

8
9

Attorneys for Defendant
ELECTRONIC ARTS INC.

10

UNITED STATES DISTRICT COURT

11

NORTHERN DISTRICT OF CALIFORNIA

12

OAKLAND DIVISION

13
14
15
16
17
18

THE BRANDR GROUP, LLC

　　　　　Plaintiff,

　　v.

ELECTRONIC ARTS INC., and DOES 1
through 10, inclusive,

　　　　　Defendants.

Case No. 4:23-cv-02994-HSG

[Removed from San Mateo Superior Court,
Case No. 23-CIV-02715]

**DEFENDANT ELECTRONIC ARTS
INC.'S MOTION TO DISMISS AND
MOTION TO STAY DISCOVERY**

Date:　　October 19, 2023
Time:　　2:00 p.m.
Dept.:　　Courtroom 2 – 4th Floor
Judge:　　Honorable Haywood S. Gilliam, Jr.

19
20
21
22
23
24
25
26
27
28

1    **TO ALL PARTIES AND COUNSEL OF RECORD:**

2         PLEASE TAKE NOTICE that on October 19, 2023, at 2:00 p.m., or as soon thereafter as

3    this matter can be heard, in the courtroom of the Honorable Haywood S. Gilliam, Jr., located at

4    1301 Clay Street, Oakland, CA 94612, Defendant Electronic Arts Inc. ("EA") moves this Court

5    for an order dismissing Plaintiff The BrandR Group LLC's ("BrandR") Complaint and staying all

6    discovery in this action until the pleadings are settled.

7         This motion is brought pursuant to Federal Rules of Civil Procedure 12(b)(6) on the

8    grounds that the Complaint, including each cause of action, fails to state a claim on which relief

9    may be granted, 12(b)(1) on the grounds that the Court lacks subject matter jurisdiction as to

10   Plaintiff's right of publicity claims, and 26(c) on the grounds that the Court has discretion to

11   protect a Defendant from undue burden or expense and therefore should stay discovery pending

12   the Court's ruling on EA's motion to dismiss and, if leave to amend is granted, until it is clear if

13   any claims will proceed based on any amendment.  This motion is based on this Notice of Motion

14   and Motion, the following Memorandum of Points and Authorities, all files, records, and orders

15   in this action, oral argument, and such additional matters as may be judicially noticed or

16   incorporated by reference by the Court or may come before the Court prior to or at the hearing on

17   this matter.

18

19   Dated:  August 1, 2023                          KEKER, VAN NEST & PETERS LLP

20

21                                          By:    _/s/ R. James Slaughter_
                                                   R. JAMES SLAUGHTER
22                                                 R. ADAM LAURIDSEN
                                                   CANDICE MAI KHANH NGUYEN
23                                                 LUIS G. HOYOS

24                                                 Attorneys for Defendant
                                                   ELECTRONIC ARTS INC.
25

26

27

28

---

**TABLE OF CONTENTS**

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES .................................................................1

I.     INTRODUCTION ........................................................................................................1

II.    BACKGROUND ..........................................................................................................2

       A.     EA's new college football game .................................................................2

       B.     BrandR's agreements with student-athletes and schools .........................3

              1.     Student GLA Template .................................................................3

              2.     MSU and Marshall Agreements....................................................4

       C.     EA's plan to individually license student-athlete NIL............................6

       D.     Procedural history ......................................................................................6

III.   MOTION TO DISMISS ..............................................................................................7

       A.     Legal standards ...........................................................................................7

              1.     Rule 12(b)(6).................................................................................7

              2.     Rule 12(b)(1).................................................................................7

              3.     Dismissal with prejudice .............................................................8

       B.     Argument .....................................................................................................8

              1.     BrandR fails to state a claim for tortious interference with contract ..........8

                     a.     EA does not interfere with the terms of BrandR's Student GLA Template ..................................................8

                     b.     EA does not interfere with the terms of the MSU and Marshall agreements ......................................11

              2.     BrandR fails to state a right of publicity claim .........................12

                     a.     BrandR's right of publicity claims are not ripe ...........................12

                     b.     BrandR has failed to allege use of any student's NIL ..................13

                     c.     BrandR does not have standing to bring right of publicity claims ...............................................13

                     d.     BrandR has failed to allege facts sufficient to establish that California law applies to its right of publicity claims...................14

              3.     BrandR's UCL claim rises and falls with its substantive claims and should be dismissed along with them ........................................15

a.  Damages are an adequate remedy at law for BrandR's claims ...........................................16

b.  BrandR fails to state a claim under the "unlawful" prong ............17

c.  BrandR fails to state a claim under the "fraudulent" prong..........17

d.  BrandR fails to state a claim under the "unfair" prong.................18

4.  BrandR fails to state a claim for declaratory relief...................................20

5.  Amendment should be denied...................................................................20

IV.  MOTION TO STAY.......................................................................................................21

V.  CONCLUSION...............................................................................................................23

DEFENDANT ELECTRONIC ARTS INC.'S MOTION TO DISMISS AND MOTION TO STAY DISCOVERY
Case No. 4:23-cv-02994-HSG

2333001

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adams v. Cole Haan, LLC*,
No. 20-cv-913 JVS, 2020 WL 5648605 (C.D. Cal. Sept. 3, 2020) ........................................16

*AIU Ins. Co. v. FMC Corp.*,
51 Cal. 3d 807 (1995) ........................................................................................................20

*Alvarez v. Chevron Corp.*,
656 F.3d 925 (9th Cir. 2011) ..............................................................................................7

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ...........................................................................................................7

*Backhaut v. Apple, Inc.*,
74 F. Supp. 3d 1033 (N.D. Cal. 2014) ...............................................................................19

*Badella v. Deniro Mktg. LLC*,
No. C 10-03908 CRB, 2011 WL 5358400 (N.D. Cal. Nov. 4, 2011).....................................20

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)............................................................................................................7

*Bishop Paiute Tribe v. Inyo Cnty.*,
863 F.3d 1144 (9th Cir. 2017) ...........................................................................................12

*Cairns v. Franklin Mint Co.*,
24 F. Supp. 2d 1013 (C.D. Cal. 1998) ...............................................................................14

*Cal. Crane Sch., Inc. v. Google LLC*,
No. 21-cv-10001-HSG, 2022 WL 1271010 (N.D. Cal. Apr. 28, 2022) ................................22

*Charles v. City of Los Angeles*,
697 F.3d 1146 (9th Cir. 2012) ...........................................................................................13

*Clark v. City of Seattle*,
899 F.3d 802 (9th Cir. 2018) .............................................................................................12

*Crowder v. LinkedIn Corp.*,
No. 22-cv-00237-HSG, 2023 WL 2405335 (N.D. Cal. Mar. 8, 2023)..........................21, 22

*Crump v. Beckley Newspapers, Inc.*,
173 W. Va. 669 (1983) ......................................................................................................15

*Curran v. Amazon.com, Inc.*,
No. 2:07-0354, 2008 WL 472433 (S.D. W. Va. Feb. 19, 2008)............................................15

*Davis v. Elec. Arts, Inc.*,
    No. 10-cv-03328-RS, 2017 WL 8948081 (N.D. Cal. Feb. 2, 2017).......................................14

*Doe v. Holy*,
    557 F.3d 1066 (9th Cir. 2009) ...............................................................................................8

*eBay Inc. v. MercExchange, LLC*,
    547 U.S. 388 (2006)..............................................................................................................16

*Farhat v. Wells Fargo Bank, N.A.*,
    No. 18-cv-02273-HSG, 2018 WL 5733657 (N.D. Cal. Oct. 30, 2018)...............................21

*Fighters Inc., LLC v. Elec. Arts Inc.*,
    No. 09-cv-06389 SJO, 2009 WL 10699504 (C.D. Cal. Oct. 30, 2009)...............................13

*Foreman v. Bank of Am., N.A.*,
    401 F. Supp. 3d 914 (N.D. Cal. 2019) ..................................................................................8

*G.N. v. Life Ins. Co. of N. Am.*,
    No. 20-cv-08907-HSG, 2021 WL 2633404 (N.D. Cal. June 25, 2021) .................................7

*Gionfriddo v. Major League Baseball*,
    94 Cal. App. 4th 400 (2001) ................................................................................................13

*In re Google Assistant Priv. Litig.*,
    457 F. Supp. 3d 797 (N.D. Cal. 2020) ............................................................................18, 19

*Guttmann v. La Tapatia Tortilleria, Inc.*,
    No. 15-cv-02042-SI, 2015 WL 7283024 (N.D. Cal. Nov. 18, 2015) ....................................18

*Hernandez v. Sonoma-Marin Area Rail Transit Dist.*,
    2022 WL 3348574 (N.D. Cal. Aug. 12, 2022) ......................................................................8

*Ixchel Pharma, LLC v. Biogen, Inc.*,
    9 Cal. 5th 1130 (2020) ..........................................................................................................8

*Jackson v. City & Cnty. Of San Francisco*,
    829 F. Supp. 2d 867 (N.D. Cal. 2011) ..................................................................................8

*Kendall v. Visa U.S.A., Inc.*,
    518 F.3d 1042 (9th Cir. 2008) ...............................................................................................8

*Khoja v. Orexigen Therapeutics*,
    899 F.3d 988 (9th Cir. 2018) .................................................................................................7

*Krantz v. BT Visual Images*,
    89 Cal. App. 4th 164 (2001) ................................................................................................17

*Lightbourne v. Printroom Inc.*,
    307 F.R.D. 593 (C.D. Cal. 2015) ........................................................................................15

DEFENDANT ELECTRONIC ARTS INC.'S MOTION TO DISMISS AND MOTION TO STAY DISCOVERY
Case No. 4:23-cv-02994-HSG

2333001

*Little v. City of Seattle*,
  863 F.2d 681 (9th Cir. 1988) ...............................................................................21

*In re MacBook Keyboard Litig.*,
  No. 5:15-cv-02813-EJD, 2020 WL 6047253 (N.D. Cal. Oct. 13, 2020) ..........................16, 17

*Mendiondo v. Centinela Hosp. Med. Ctr.*,
  521 F.3d 1097 (9th Cir. 2008) ...............................................................................7

*Michaels v. Internet Entm't. Group, Inc.*,
  5 F. Supp. 2d 823 (C.D. Cal. 1998) ..................................................................4, 13

*Ministerio Roca Solida v. U.S. Dep't of Fish & Wildlife*,
  288 F.R.D. 500 (D. Nev. 2013).............................................................................22

*National Collegiate Athletic Association v. Alston*,
  141 S. Ct. 2141 (2021) ..........................................................................................2

*Nationwide Biweekly Admin., Inc. v. Superior Ct. of Alameda Cnty.*,
  9 Cal. 5th 279 (2020) ...........................................................................................16

*In re Nexus 6p Prod. Liab. Litig.*,
  No. 17-cv-02185-BLF, 2017 WL 3581188 (N.D. Cal. Aug. 18, 2017) ...............................22

*Norwest Mortgage, Inc. v. Superior Ct.*,
  72 Cal. App. 4th 214 (1999) ................................................................................20

*Palomino v. Facebook, Inc.*,
  No. 16-cv-04230-HSG, 2017 WL 76901 (N.D. Cal. Jan. 9, 2017) ...................................21

*Pauma Band of Luiseno Mission Indians of Pauma & Yuima Rsrv. V. California*,
  813 F.3d 1155 (9th Cir. 2015) ...............................................................................9

*Reyes-Aguilar v. Bank of Am.*,
  No. 13-cv-05764-JCS, 2014 WL 2153792 (N.D. Cal. Mar. 20, 2014).................................8

*Rutman Wine Co. v. E & J Gallo Winery*,
  829 F.2d 729 (9th Cir. 1987) ...............................................................................21

*Segal v. Silberstein*,
  156 Cal. App. 4th 627 (2007) ..............................................................................20

*Sonner v. Premier Nutrition Corp.*,
  971 F.3d 834 (9th Cir. 2020) .........................................................................16, 17

*Thomas v. Anchorage Equal Rights Comm'n*,
  220 F.3d 1134 (9th Cir. 2000) (en banc) ...............................................................12

*Timed Out, LLC v. Youabian, Inc.*,
  229 Cal. App. 4th 1001 (2014) ............................................................................14

*Upper Deck Authenticated, Ltd. v. CPG Direct*,
    971 F. Supp. 1337 (S.D. Cal. 1997)..................................................................................2, 13

*Upper Deck Co. v. Panini America, Inc.*,
    469 F. Supp. 3d 963 (S.D. Cal. 2020)........................................................................................13

*Vascular Imaging Pros., Inc. v. Digirad Corp.*,
    401 F. Supp. 3d 1005 (S.D. Cal. 2019).....................................................................................19

*Vigdor v. Super Lucky Casino, Inc.*,
    No. 16-cv-05326-HSG, 2017 WL 2720218 (N.D. Cal. June 23, 2017) .................................21

*Wenger v. Monroe*,
    282 F.3d 1068 (9th Cir. 2002) .................................................................................................21

*Williams v. Apple, Inc.*,
    No. 19-cv-04700-LHK, 2020 WL 6743911 (N.D. Cal. Nov. 17, 2020)............................16, 17

*Williamson v. McAfee, Inc.*,
    No. 5:14-CV-00158-EJD, 2014 WL 4220824 (N.D. Cal. Aug. 22, 2014) ........................18, 19

*Wilson v. Hewlett-Packard Co.*,
    668 F.3d 1136 (9th Cir. 2012) ...................................................................................................7

*Wolfson v. Brammer*,
    616 F.3d 1045 (9th Cir. 2010) .................................................................................................12

*Wolski v. Fremont Inv. & Loan*,
    127 Cal. App. 4th 347 (2005) ..................................................................................................17

*Wyler Summit P'ship v. Turner Broad. Sys., Inc.*,
    135 F.3d 658 (9th Cir. 1998) ...................................................................................................21

*Yamasaki v. Zicam LLC*,
    No. 21-cv-02596-HSG, 2021 WL 3675214 (N.D. Cal. Aug. 19, 2021)...................................22

**Statutes**

Cal. Bus. & Prof. Code § 17200 .....................................................................................................6

Cal. Civ. Code § 1636....................................................................................................................20

Cal. Civ. Code § 3344................................................................................................................1, 6, 13

**Rules**

Fed. R. Civ. P. 9(b) ..................................................................................................................18, 19

Fed. R. Civ. P. 12 ................................................................................................................ *passim*

Fed. R. Civ. P. 26..........................................................................................................................21

**Other Authorities**

J. Thomas McCarthy, *The Rights of Publicity & Privacy* (2017 ed.) § 6:2 ...................................15

DEFENDANT ELECTRONIC ARTS INC.'S MOTION TO DISMISS AND MOTION TO STAY DISCOVERY
Case No. 4:23-cv-02994-HSG

2333001

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

BrandR has pled itself out of court according to black letter law and the facts alleged in its Complaint.  On February 2, 2021, EA announced that, after a 7-year hiatus, it was preparing to develop and release a new college football video game. Dkt. No. 1-1 ("Compl.") ¶ 60 and n.7. BrandR generally alleges that it is the exclusive avenue through which EA must license student-athletes' names, images and likenesses ("NILs") and schools' trademarks, stadiums logos, mascots, and other intellectual property ("IP") for a product that includes both, and that EA has interfered with BrandR's alleged contracts with student-athletes and schools in connection with its new video game. *Id.* ¶ 8.  But BrandR's allegations of broad exclusivity contradict the plain language of the contracts BrandR attached to its Complaint.  Those agreements provide that (1) student-athletes at all times retain the right to license their NILs individually and, (2) *at most*, schools agree only to work with BrandR to "develop, implement or manage" a group licensing program that bundles the rights of multiple student-athletes with the schools' IP. Put another way, BrandR could be involved in negotiations *only* when a school seeks to create a group licensing program that bundles the NILs of a group of student-athletes *together with* a school's IP into a *single* license.  But as the Complaint concedes, EA has no intent of pursuing a group licensing program.  Rather, the Complaint admits that EA plans to enter into direct agreements with individual student-athletes for their NILs and *separately* license the schools' IP from the Collegiate Licensing Company.  *See id.* ¶ 78, 131.  BrandR therefore cannot state a tortious interference claim.

BrandR's common law and section 3344 right of publicity claims likewise fail for a host of reasons.  First, BrandR's claims are not ripe because BrandR does not allege (nor could it) that EA has entered into a single agreement with any student-athlete for their NILs or used any student-athlete NIL in the video game; and even if the claims were ripe, BrandR fails to state a claim because it does not (and cannot) allege that EA has actually used student-athletes' NILs, a necessary element of a right of publicity claim.  Second, even if BrandR alleged that EA had used student-athletes' NILs, BrandR lacks standing to assert such claims on behalf of student-athletes

DEFENDANT ELECTRONIC ARTS INC.'S MOTION TO DISMISS AND MOTION TO STAY DISCOVERY
Case No. 4:23-cv-02994-HSG

because, pursuant to the draft template agreement attached to the Complaint, BrandR is not the exclusive licensee of student-athletes' NIL rights.  *See Upper Deck Authenticated, Ltd. v. CPG Direct*, 971 F. Supp. 1337, 1349 (S.D. Cal. 1997) (holding nonexclusive licensee had no standing to bring right of publicity claims).  And third, BrandR fails to allege facts sufficient to show that it has right of publicity claims under California law given its failure to identify a single student-athlete that resides or is domiciled in the state.

BrandR's UCL and declaratory relief claims depend upon, and fall with, its interference and publicity claims.  BrandR's UCL claim also fails because BrandR does not (and cannot) allege that it lacks an adequate remedy at law.  On the contrary, BrandR's Complaint makes clear that any future, hypothetical injury it may suffer is redressable via damages.[1]  Further, BrandR's UCL claim fails to plead a violation of the UCL's "unlawful," "unfair," or "fraudulent" prongs.

Finally, the Court should dismiss BrandR's claims with prejudice because any amendment would be futile.  If the Court decides to afford BrandR leave to amend, however, the Court should stay discovery until it is clear if any claims will proceed based on BrandR's amendments.

## II.    BACKGROUND

### A.    EA's new college football game

BrandR alleges that, from 1998 to 2013, EA sold a college football video game featuring actual college teams with their schools IP but, given NCAA rules precluding payment to students, without student-athletes' NILs.  Compl. ¶¶ 52-54.  After eight years off the market, in February 2021, EA announced that it intended to relaunch the Game as *EA Sports College Football* (the "New Game").  *Id.* ¶¶ 59, 61.  At the same time, EA also announced that it would license schools' IP through the Collegiate Licensing Company ("CLC"), the schools' exclusive licensing agent. *Id.* ¶ 61.

In June 2021, following the Supreme Court's decision in *National Collegiate Athletic Association v. Alston*, 141 S. Ct. 2141 (2021), the National Collegiate Athletic Association ("NCAA") began permitting licensees to compensate student-athletes for use of their NILs.

---

[1] Although the evidentiary standard is different in the context of preliminary injunctive relief, the Court already found that monetary damages can compensate BrandR for any harm it may suffer from EA licensing student-athletes' NILs and schools' IP.  Dkt. No. 23 ("TRO Order") at 5, 6-9.

Compl. ¶¶ 2-3.  In response, EA announced that it would explore the possibility of licensing the student-athletes' NILs for use in the New Game.  *Id.* ¶ 64.

### B.  BrandR's agreements with student-athletes and schools

BrandR alleges that it has entered into agreements with 65 schools and 3,750 student-athletes "to facilitate co-branding experiences" for them and, that as a result of these agreements, potential licensees such as EA must negotiate with BrandR for the use of student-athletes' NILs or school IP when the licensee uses three or more student-athletes in a product that also includes school IP.  *See, e.g.*, *id.* ¶¶ 8, 19-20, 27-48, 61, 86, 91, 141-42, 155-56, 176.

Importantly, BrandR does not attach or otherwise identify a single executed agreement with a student-athlete.  Instead, BrandR attaches only an unsigned *template* agreement with a hypothetical student-athlete (the "Student GLA Template"), Compl., Ex. 1, and asks the Court to assume that this template "is substantially similar to all of [BrandR]'s executed GLAs in all material respects."  *Id.* ¶ 36.  Similarly, for schools, BrandR attaches only two agreements—one with Michigan State University ("MSU") and one with Marshall University ("Marshall")—that vary from each other in significant ways.  Compl, Exs. 2 & 3.

#### 1.  Student GLA Template

BrandR's Student GLA Template is an unsigned draft template through which student-athletes can grant BrandR the non-exclusive right to license the use of their "Athlete Attributes"[2] in "Collegiate Group Licensing Programs," defined as "programs in which a collegiate licensee or collegiate sponsor uses the [NILs] of three (3) or more current XX Athletes from one sport or six (6) or more from multiple sports, *in combination with* University trademarks and logos."  Student GLA Template ¶ 3 (emphasis added).[3]  This grant of rights is narrowly limited in several material

---

[2] The Student GLA Template defines "Athlete Attributes" as "all or any combination of the [athlete's] name, nickname, initials, autograph/signature, facsimile, voice, caricature, photograph, portrait, picture, image, likeness, jersey number, statistics, data, biographical information or any other identifiable feature."  Student GLA Template ¶ 3.

[3] *See also* Student GLA Template ¶ 9 ("[D]URING THE TERM OF THIS AGREEMENT, [BRANDR] SHALL REPRESENT MY <u>GROUP</u> NIL RIGHTS ONLY IN *ANY CO-BRANDED LICENSING THAT ALSO INCLUDES THE UNIVERSITY'S IP*." (EMPHASIS ADDED)); *id.* ¶ 5 ("THE FOCUS OF THE COLLEGIATE GROUP LICENSING PROGRAMS WILL BE *CO-BRANDED OPPORTUNITIES* INVOLVING GROUPS OF ATHLETES' NIL *ALONG WITH [THE UNIVERSITY'S] IP*." (emphases added)).

ways.

Most importantly, the Student GLA Template does not grant BrandR exclusive rights to an individual student-athlete's NIL.  On the contrary, under the terms of the Template, student-athletes expressly retain the right to license their individual NILs.  *Id.* ¶ 4 ("[T]his Agreement does NOT limit an Athlete's right to grant the use of his/her ***individual*** Athlete Attributes or ***individual*** NIL for publicity, advertising, or other commercial purposes, except that such individual grants will not preclude the undersigned also from being covered by the Collegiate Group Licensing Programs" (emphasis added)); *id.* ¶ 11 ("[T]HIS AGREEMENT DOES <u>NOT</u> RESTRICT OR PREVENT ANY OF MY EXISTING OR FUTURE, ***INDIVIDUAL*** NIL AGREEMENTS.").  In other words, student-athletes expressly retain the right to enter into individual license agreements at all times.

In fact, student-athletes even retain the right to license their NIL rights in a group, if the grant of group-NIL rights "***does not involve any use or co-branding of any kind of [the University's] own IP or property (such as trademarks, logos, jerseys, names, nicknames, etc.)***." *Id.* ¶ 4 (emphasis added); *see also id.* ¶ 9 ("DURING THE TERM OF THIS AGREEMENT [BrandR] SHALL REPRESENT MY <u>GROUP</u> NIL RIGHTS *ONLY IN ANY CO-BRANDED LICENSING THAT ALSO INCLUDES THE UNIVERSITY'S IP*." (emphasis added)); *id.* ¶ 12 ("THIS AGREEMENT DOES NOT RESTRICT ANY OF MY EXISTING GROUP NIL AGREEMENTS NOR ANY SUCH FUTURE NIL AGREEMENTS *THAT DO NOT ALSO INCLUDE THE UNIVERSITY'S CO-BRANDED IP*." (emphasis added)).

In sum, the unsigned student-athlete authorization form BrandR submitted shows only a narrow, non-exclusive grant for BrandR to attempt to develop a group licensing program that bundles together the NIL rights of numerous student-athletes and school IP into a single license. In no way does the Student GLA Template confer upon BrandR the right to individual student-athletes' NILs, let alone an exclusive right.

## 2.    MSU and Marshall Agreements

BrandR also attaches to its Complaint "Group Rights Collaboration Agreement[s]" whereby MSU and Marshall agree only "to make available a Group Licensing Program for its

current student-athletes in conjunction with the University's official marks, logos or other intellectual property."  *See* Dkt. No. 7-4, Ex. 2 ("MSU Agreement") at 1; Dkt. No. 7-4, Ex. 3 ("Marshall Agreement") at 1.

Nothing in the school agreements grants BrandR the rights to any student-athlete's NIL nor do they grant BrandR the rights to use or license the schools' IP.  For instance, the Marshall Agreement merely obligates Marshall to (1) "distribute information about the [Group Licensing] Program" in order to "facilitate[e] student-athlete's voluntary decisions to enter into agreements with BrandR, and (2) "connect[] [BrandR] with [Marshall's] third-party trademark licensing agency"—*i.e.*, CLC—"and University licensing staff, so that [BrandR] can discuss opportunities to secure from such entity(-ies) the right to use [Marshall's] [IP] in connection with the Group Licensing Program, provided that [Marshall] reserves the right to review and approve each proposed use of [Marshall's] [IP][.]"  Marshall Agreement ¶¶ 2(a)(i)-(vii).  In other words, Marshall licenses nothing to BrandR and agrees only to introduce BrandR to student-athletes and its school licensing agent, CLC.[4]

The MSU and Marshall agreements have no effect on the schools' ability to license their IP independently from any student-athletes' NILs.  This is because a license solely for the schools' IP does not fall under BrandR's collaboration agreements' definition of a "Group Licensing Program," defined as "***licensing or sponsorship programs*** in which a collegiate licensee or collegiate sponsor uses the Athlete Attributes[5] of three (3) or more Athletes from any one specific sport or six (6) or more Athletes from multiple sports ***in combination with University trademarks***."  MSU Agreement ¶ 1(b) (emphases added); Marshall Agreement ¶ 1(c). In other words, schools at all times retain the right to license their IP.

The effect of the "Exclusivity" and "Preferred Provider" terms in the MSU and Marshall

---

[4] Nor does the MSU Agreement grant BrandR a license to MSU's IP.  There is no language granting BrandR a license or rights to any MSU property.  At most, MSU has agreed to make its IP "available for use in the Program" through MSU's "third-party licensing agency" (CLC)— subject to coordination with CLC to avoid, *inter alia*, licensing conflicts such as CLC's license with EA.  MSU Agreement ¶¶ 2(a)(v); *id.* 2(b)(iv).

[5] The MSU and Marshall agreements define "Athlete Attributes" identically to that in the Student GLA template.  *Compare* MSU Agreement ¶ 1(a) and Marshall Agreement ¶ 1(a) *with* Student GLA Template ¶ 3.

Agreements is to limit the schools from contracting with other third parties to create a group licensing program that bundles the rights of multiple student-athletes with the schools' IP.  MSU Agreement ¶ 6 ("MSU recognizes [BrandR] as MSU's exclusive agent to develop, implement, and manage the Group Licensing Program among its current athletes."); Marshall Agreement ¶ 6 (Marshall "shall not, without [BrandR's] written consent, contract with any other party to develop, implement or manage any substantially similar group licensing program for groups of any size of Athletes.").  Nothing in those terms prevents the schools from licensing their IP separate and apart from any student-athletes' NIL rights.

### C. EA's plan to individually license student-athlete NIL

BrandR alleges that EA is attempting to individually license student-athlete NILs directly from student-athletes.  Compl. ¶¶ 7, 89, 91, 93.  Indeed, BrandR alleges that EA itself explained to BrandR that "EA plans to provide [student-athletes] the opportunity to opt-in ***individually*** and license their likeness rights ***directly to*** EA."  *Id.* ¶ 78 (emphasis added); *id.* ¶ 79 (noting that EA's goal is to allow student-athletes to license their NILs directly to EA).  Nevertheless, and despite the plain language of the GLA Template permitting such individual licenses, BrandR claims that EA's alleged conduct "run[s] afoul" of BrandR's contractual rights.  *See id.* ¶¶ 93, 95.

### D. Procedural history

BrandR filed this case in California Superior Court, County of San Mateo, on June 16, 2023.  *See* Compl.  Based on the facts discussed above, BrandR brings five causes of action:  (1) tortious interference with contract; (2) violation of California's statutory right of publicity, section 3344 of the California Civil Code; (3) violation of the common law right of publicity; (4) violation of California's Unfair Competition Law ("UCL"), section 17200 of the California Business and Professions Code; and (5) declaratory relief.  *Id.* ¶¶ 125-79.

On June 20, 2023, EA removed the lawsuit to this Court.  Dkt. No. 1.  Two days later, BrandR filed an application for a temporary restraining order, Dkt. No. 7, which the Court denied, Dkt. No. 23.  EA now moves to dismiss BrandR's complaint in its entirety.  EA also moves to stay discovery until the Court concludes that any of BrandR's claims are ripe and adequately pled.

III.    **MOTION TO DISMISS**

    A.    **Legal standards**

        1.    **Rule 12(b)(6)**

A complaint should be dismissed where it "lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). "[C]ourts are not bound to accept as true a legal conclusion couched as a factual allegation." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). Although allegations of material fact are taken as true and construed in the light most favorable to the plaintiff, *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012), courts "disregard threadbare recitals of the elements of a cause of action" and "unsupported legal conclusions," *Alvarez v. Chevron Corp.*, 656 F.3d 925, 930 (9th Cir. 2011) (affirming dismissal with prejudice).

In deciding a Rule 12(b)(6) motion to dismiss, courts "generally . . . may not consider material outside the pleadings." *Khoja v. Orexigen Therapeutics*, 899 F.3d 988, 998 (9th Cir. 2018). That said, courts may "incorporate a document into the complaint 'if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim.'" *Id.* At 1002 (quoting *United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003)). This "incorporation-by-reference" doctrine "prevents plaintiffs from selecting portions of documents that support their claims while omitting portions of those very documents that waken—or doom—their claims." *Id.*; *see also G.N. v. Life Ins. Co. of N. Am.*, No. 20-cv-08907-HSG, 2021 WL 2633404, at *2 (N.D. Cal. June 25, 2021) (same). Accordingly, the Court here can and should incorporate by reference the contracts BrandR attaches to its Complaint and rely on the language of those contracts in evaluating BrandR's claims under Rule 12(b)(6).

        2.    **Rule 12(b)(1)**

Federal Rule of Civil Procedure 12(b)(1) allows a party to assert, by motion, that the Court does not have subject-matter jurisdiction over a claim and should therefore dismiss it. "The challenging party may make a facial or factual attack challenging subject matter jurisdiction."

1   *Hernandez v. Sonoma-Marin Area Rail Transit Dist.*, 2022 WL 3348574, at *2 (N.D. Cal. Aug.

2   12, 2022) (citing *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000)).  Here, where EA facially

3   challenges the ripeness of BrandR's right of publicity claims, the Court "assumes plaintiff's

4   factual allegations to be true and draws all reasonable inferences in [its] favor," but it does not

5   accept the "truth of legal conclusions merely because they are cast in the form of factual

6   allegations." *Doe v. Holy See*, 557 F.3d 1066, 1073 (9th Cir. 2009) (quotations omitted); *Jackson*

7   *v. City & Cnty. Of San Francisco*, 829 F. Supp. 2d 867, 870 (N.D. Cal. 2011) ("Because . . .

8   ripeness pertain[s] to federal courts' subject matter jurisdiction, [it is] properly raised in a Rule

9   12(b)(1) motion to dismiss." (citing *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989)).

10                           **3.      Dismissal with prejudice**

11           When a plaintiff's claims are fatally defective, the Court should dismiss those claims with

12   prejudice because it is "clear that the complaint could not be saved by amendment."  *Kendall v.*

13   *Visa U.S.A., Inc.*, 518 F.3d 1042, 1051 (9th Cir. 2008).  Dismissal with prejudice follows when a

14   complaint's core theories of liability are precluded by "question[s] of law that amendment cannot

15   cure." *Foreman v. Bank of Am., N.A.*, 401 F. Supp. 3d 914, 924 (N.D. Cal. 2019); *see also Reyes-*

16   *Aguilar v. Bank of Am.*, No. 13-cv-05764-JCS, 2014 WL 2153792, at *10 (N.D. Cal. Mar. 20,

17   2014) (dismissing with prejudice claim based on "fatally flawed" theory).

18       **B.      Argument**

19                    **1.      BrandR fails to state a claim for tortious interference with contract**

20                           **a.      EA does not interfere with the terms of BrandR's Student GLA**
21                                  **Template**

22           BrandR's tortious interference claim fails because, by the template's own terms, student-

23   athletes retain the right to individually license their NIL.[6]  BrandR acknowledges that EA intends

24   only to "enter[] into individual and direct contracts for participation in the game."  Compl. ¶ 91.

25   In other words, EA will seek to license the student-athletes' individual NILs directly from the

26   ───────────────────

27   [6] Tortious interference with contractual relations requires "(1) the existence of a valid contract
    between the plaintiff and a third party; (2) the defendant's knowledge of that contract; (3) the
    defendant's intentional acts designed to induce a breach or disruption of the contractual
28   relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting
    damage."  *Ixchel Pharma, LLC v. Biogen, Inc.*, 9 Cal. 5th 1130, 1141 (2020) (emphasis added).

student-athletes.  The problem for BrandR is that its own Student GLA Template expressly

permits student-athletes to individually license their NIL:

> Please note that this Agreement **does NOT limit** an Athlete's right to grant the use of his/her **individual** Athlete Attributes or **individual** NIL for publicity, advertising, or other commercial purposes, except that such individual grants will not preclude the undersigned also from being covered by the Collegiate Group Licensing Programs granted by [BrandR].

Student GLA Template ¶ 4 (emphases added); *see also id.* ¶ 11 ("I RECOGNIZE THAT THIS

AGREEMENT DOES <u>NOT</u> RESTRICT OR PREVENT ANY OF MY EXISTING OR

FUTURE, INDIVIDUAL NIL AGREEMENTS.").  BrandR acknowledges this in its Complaint:

"neither the Collaboration Agreements nor the GLAs prohibit or prevent the Partner Schools'

student-athletes from individually marketing or licensing their NIL."  Compl. ¶¶ 46-47.  Because

BrandR alleges that EA intends to individually license each student-athlete's NIL, BrandR has

failed to plausibly plead a tortious interference claim as to BrandR's agreements with the student-

athletes.

  As it did in its request for a TRO, BrandR will likely try to argue that EA's future *use* in a

game of multiple student-athletes' NILs pursuant to individual licenses is equivalent to a group

*license*.  This argument is nonsensical for multiple reasons.  First, to (inaccurately) characterize

the aggregation of student-athletes' individual licenses as a single group license would nullify the

aforementioned provisions of the Student GLA Template that explicitly preserve the student-

athletes' right to individually license their NILs.  *See Pauma Band of Luiseno Mission Indians of*

*Pauma & Yuima Rsrv. V. California*, 813 F.3d 1155, 1171 (9th Cir. 2015) ("An interpretation

which gives effect to all provisions of the contract is preferred to one which renders part of the

writing superfluous, useless or inexplicable." (quoting Williston on Contracts § 32:5 (4th ed.

2015)).  Indeed, under BrandR's theory, two football players could individually license their NIL

rights to EA without violating the terms of the Student GLA Template, but if a third player

individually licensed their NIL to EA, all three individual licenses would somehow become a

group license. The law does not permit such alchemy.[7]

Second, the Student GLA template applies only to group licenses that bundle the NIL rights of several student-athletes *together with* their schools' IP.  *See* Student GLA Template ¶ 4 (acknowledging that agreement does not limit student-athletes' rights to enter group grants "IF any such group grant <u>does not involve any use or co-branding of any kind of [the school]'s own IP or property</u>" (emphasis in original)).  Indeed, BrandR's Student GLA Template covers only "Collegiate Group Licensing Programs," which are "licensing or sponsorship programs in which a collegiate licensee or collegiate sponsor uses the Athlete Attributes of three (3) or more current [] Athletes from one sport or six (6) or more from multiple sports, ***in combination with University trademarks and logos*.**"  *Id.* ¶ 3 (emphasis added); *see also id.* ¶ 5 ("The focus of the Collegiate Group Licensing Programs will be ***co-branded licensing opportunities*** involving groups of Athletes' NIL ***along with [the University's] IP*.**" (emphases added)).  In other words, the Student GLA Template only grants BrandR a non-exclusive license to use student-athlete NIL in a licensing program that bundles several student-athletes' NILs *plus* their school's IP.  *See id.* ¶ 6 ("[BrandR] makes no representation regarding individual or group licensing programs or matters other than those expressed herein."); *id.* ¶ 9 (providing that the BrandR shall represent a student-athlete's "<u>GROUP</u> NIL RIGHTS ONLY IN ANY CO-BRANDED LICENSING THAT ALSO INCLUDES THE UNIVERSITY'S IP"); *id.* ¶ 12 (providing that the agreement "DOES NOT RESTRICT ANY OF [THE STUDENT-ATHLETE'S] EXISTING GROUP NIL AGREEMENTS NOR ANY SUCH FUTURE NIL AGREEMENTS THAT DO NOT ALSO INCLUDE THE UNIVERSITY'S CO-BRANDED IP").

Accordingly, even if the student-athletes' licenses to EA were (inaccurately) characterized as a group license, BrandR would *still* fail to state a tortious interference claim because its Complaint concedes that EA is separately licensing school IP from CLC, not bundling together those rights with student-athletes' NILs.

---

[7] BrandR's theory would also mean that five student-athletes from multiple sports could individually license their NIL rights to EA without violating the terms of the Student GLA Template, but if a sixth student-athlete individually licensed their NIL to EA, all three licenses would somehow become a group license.

**b.** **EA does not interfere with the terms of the MSU and Marshall agreements**

BrandR's tortious interference claim as to the MSU and Marshall collaboration agreements also fails because those agreements do not grant BrandR the right to use or license any of the schools' IP.  To the contrary, the schools' obligations under the MSU and Marshall collaboration agreements are limited to (1) making information available to student-athletes regarding BrandR's non-exclusive group licensing program and (2) facilitating the potential licensing of school IP—through CLC—*in conjunction with* a potential student-athlete group license.  Therefore, the collaboration agreements do not implicate EA because (1) EA is not developing or implementing a group licensing program with student-athletes and (2) EA is licensing school IP separately from student-athletes' NILs. The fact is, schools at all times retain the right to license their school IP individually or as a group with other schools, and in fact nothing in the collaboration agreements allows BrandR to license the schools' IP without going through CLC to get the schools' approval to enter into a license agreement.

The "exclusivity" provisions in the collaboration agreements do not change this analysis. At most, the schools agree that they will not hire a competitor to BrandR to market a bundled combination of multiple student-athletes' NIL rights *together* with the school's IP.  MSU Agreement ¶ 6 ("MSU shall not engage any other third party, without the express written consent of [BrandR], to develop, implement or manage any similar program *involving a group of any size of current or former MSU Athletes.*" (emphasis added)); Marshall Agreement ¶ 6 (preventing Marshall from entering into a "contract with any other party to develop, implement or manage any substantially similar group licensing program *for groups of any size of athletes*" (emphasis added)).  But the MSU and Marshall collaboration agreements do not prohibit separate agreements between EA and the schools on the one hand and EA and individual student-athletes on the other.  In other words, nothing prevents schools from licensing their IP to a video game company, as they do here with EA through CLC.  That conclusion does not change even if the video game company *separately* licenses the NIL rights of multiple student-athletes, because the schools did not hire a different third-party competitor of BrandR to bundle together student-

athlete and school rights as a Group Licensing Program.

Accordingly, the Court should dismiss BrandR's tortious interference claim as to the collaboration agreements with schools because there is nothing in the complaint suggesting that schools and student-athletes are coordinating the licensing of their rights.

### 2.    BrandR fails to state a right of publicity claim

#### a.    BrandR's right of publicity claims are not ripe

The Court should dismiss BrandR's right of publicity claims as unripe under Rule 12(b)(1).  The ripeness doctrine is a "question of timing" designed to "prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1138 (9th Cir. 2000) (en banc) (quotations omitted).  "A proper ripeness inquiry contains a constitutional and a prudential component."  *Bishop Paiute Tribe v. Inyo Cnty.*, 863 F.3d 1144, 1153 (9th Cir. 2017).  The constitutional component asks "whether the issues presented are 'definite and concrete, not hypothetical or abstract.'"  *Wolfson v. Brammer*, 616 F.3d 1045, 1058 (9th Cir. 2010) (quotation omitted).  Under the prudential component, courts may decline to exercise jurisdiction even if a claim is ripe under the constitutional component.  *See Thomas*, 220 F.3d at 1141.  But "mere satisfaction of prudential considerations, without satisfaction of the constitutional component of ripeness, will not cure an unripe claim."  *Clark v. City of Seattle*, 899 F.3d 802, 813 n.6 (9th Cir. 2018).

Here, BrandR's right of publicity allegations are hypothetical and abstract.  BrandR has not alleged that EA has (1) entered into any contracts with student-athletes for use of their NILs, or (2) released—let alone sold—a single copy of the New Game that uses student-athletes' NILs.  On the contrary, BrandR's allegations underscore that the New Game is still being developed.  *See*, *e.g.*, Compl., ¶ 6 ("EA now *plans* to bring back its popular Game") (emphasis added); *id.* ¶ 10 (referring to "the announcement that EA was *developing* a new version of the Game" (emphasis added)).  And BrandR acknowledges that EA is still in the process of reaching out to individual student-athletes to license their NILs.  *See id.* ¶ 97 ("EA Sports reported that . . . details regarding 'how much an athlete will receive and the structure of payments – are still being

1 finalized.'"). Accordingly, the Court should deny BrandR's right of publicity claims pursuant to

2 Rule 12(b)(1). *See Charles v. City of Los Angeles*, 697 F.3d 1146, 1150 (9th Cir. 2012)

3 (upholding dismissal of claims as unripe on the basis they related to "unspecified future signs").

4    **b.**  **BrandR has failed to allege use of any student's NIL**

5    Relatedly, to state a claim for right of publicity under common law, BrandR must allege

6 facts sufficient to establish:  (1) that EA actually used the student-athletes' NIL; (2) that EA

7 appropriated the student-athletes' NILs to EA's advantage; (3) that EA lacks consent of student-

8 athletes to use their NIL; and (4) resulting injury.  *See Gionfriddo v. Major League Baseball*, 94

9 Cal. App. 4th 400, 409 (2001).  In addition to these elements, a statutory claim under section

10 3344 requires that BrandR allege facts sufficient to show (5) that EA engaged in "knowing use"

11 of the student-athletes' NIL or (6) a connection between the alleged use and the commercial

12 purpose—the two additional elements of a statutory right of publicity claim.  *See Michaels v.*

13 *Internet Entm't. Group, Inc.*, 5 F. Supp. 2d 823, 837 (C.D. Cal. 1998); Cal. Civ. Code § 3344.

14 Here, BrandR's right of publicity claims fail under Rule 12(b)(6) because BrandR has not alleged

15 (nor could it) that EA has actually used student-athletes' NILs or misappropriated their NILs.

16    **c.**  **BrandR does not have standing to bring right of publicity**

17        **claims**

18    Even if the Court were to find that BrandR's right of publicity claims as pled are ripe *and*

19 that BrandR sufficiently pled facts to establish use and misappropriation, those claims would fail

20 because BrandR has not alleged facts sufficient to establish its *standing* to bring right of publicity

21 claims on behalf of *a single* student-athlete.  In California, whether a third party has standing to

22 assert a right of publicity claim under section 3344 or common law "depends on the rights

23 granted to the licensee in the license agreement."  *Upper Deck Co. v. Panini Am., Inc.* ("*Panini*

24 *America*"), 469 F. Supp. 3d 963, 984 (S.D. Cal. 2020).  As relevant here, "it is unlikely that a

25 non-exclusive licensee could assert [a right of publicity claim]."  *Upper Deck Authenticated, Ltd.*,

26 971 F. Supp. at 1349 (holding nonexclusive licensee did not have standing to bring right of

27 publicity claims); *see also Panini America*, 469 F. Supp. 3d at 984; *Fighters Inc., LLC v. Elec.*

28 *Arts Inc.*, No. 09-cv-06389 SJO (VBKx), 2009 WL 10699504, at *6-7 (C.D. Cal. Oct. 30, 2009).

And cases holding that certain non-exclusive assignments may confer standing to third-parties involved—unlike here—"a limited license to exploit the celebrity's likeness in connection with a particular commercial opportunity."  *Timed Out, LLC v. Youabian, Inc.*, 229 Cal. App. 4th 1001, 1012 (2014) (collecting cases and denying motion to dismiss upon finding that "the complaint's allegations are sufficient to support a reasonable inference that Plaintiff received *exclusive assignments* with respect to the Modes' likenesses" (emphasis added)).

Here, BrandR alleges that "[p]ursuant to the express terms of the [Student GLA Template] between TBG and its Client Athletes, each Client Athlete assigned to TBG the right to use their NIL in Collegiate Group Licensing Programs."  Compl. ¶ 141; Compl., Ex. 1.  But, as explained above, BrandR's Student GLA Template includes only a narrow non-exclusive right to license the student-athlete NIL only as part of a license together with school IP.  Pursuant to the express terms of the Student GLA Template, student-athletes expressly retain the right to license their individual NILs.  *Id.*  The clear terms of the Student GLA Template therefore foreclose BrandR's standing to assert right of publicity claims on behalf of unidentified student-athletes.  Indeed, the Court has found as much in denying Plaintiff's TRO.  TRO Order at 7 ("Plaintiff has not established that it actually has an exclusive right to either the schools' IP or the students' NILs.").

### d.   BrandR has failed to allege facts sufficient to establish that California law applies to its right of publicity claims

Finally, BrandR's right of publicity claims fail because BrandR has not alleged facts sufficient to show which state's/states' law(s) apply to those claims.  In right of publicity cases, courts apply the law of the property owner's domicile.  *See Cairns v. Franklin Mint Co.*, 24 F. Supp. 2d 1013, 1028 (C.D. Cal. 1998).  That means BrandR must allege facts showing the domicile of the student-athletes who have supposedly licensed their NILs to BrandR.  But not only does BrandR fail to identify a single student-athlete who has licensed their individual NIL rights to BrandR, it fails to allege where those student-athletes are domiciled.

It is crucial to know what law applies to each of BrandR's right of publicity claims because it is undisputed that "there are material differences among the states with respect to their laws governing the publicity rights."  *Davis v. Elec. Arts, Inc.*, No. 10-cv-03328-RS, 2017 WL

8948081, at *2 (N.D. Cal. Feb. 2, 2017); *Lightbourne v. Printroom Inc.*, 307 F.R.D. 593, 598 (C.D. Cal. 2015).  For example, in West Virginia—where Marshall University is located—the right of publicity claim only applies to public figures.  *See Crump v. Beckley Newspapers, Inc.*, 173 W. Va. 669, 714 n.6 (1983) ("[T]he unjust enrichment caused by an unauthorized exploitation of the good will and reputation that a *public figure* develops in his name or likeness through the investment of time, money and effort" (emphasis added)); *Curran v. Amazon.com, Inc.*, No. 2:07-0354, 2008 WL 472433, at *4 (S.D. W. Va. Feb. 19, 2008) (dismissing right of publicity claim for failure to allege that plaintiff was "a public figure").  So, for instance, to the extent BrandR intends to bring claims on behalf of student-athletes domiciled in West Virginia, BrandR would have to allege that those student-athletes are "public figures" under *Crump* and *Curran*.  Moreover, some states do not recognize a right of publicity at all.  *See* J. Thomas McCarthy, *The Rights of Publicity & Privacy* (2017 ed.) § 6:2 ("As of the date of this edition, under the statute or common law, the right of publicity is recognized as the law of 33 states[.]").  These are just a couple of examples of material differences among the right of publicity laws, all of which depend on a student-athlete's domicile.  BrandR's failure to allege facts sufficient to determine which law applies requires dismissal of its right of publicity claims.

### 3.   BrandR's UCL claim rises and falls with its substantive claims and should be dismissed along with them

BrandR's UCL claim is premised on—and falls with—its tortious interference and right of publicity claims.  The gist of its UCL claim is that EA interfered with BrandR's contracts with student-athletes and schools, violated student-athletes' rights of publicity, and misled schools and student-athletes about the scope of BrandR's rights.  On this basis, BrandR requests injunctive relief.  But for the reasons discussed above, as a matter of law—according to the terms of the contracts attached to the complaint and the facts alleged about EA's intent to individually license student-athlete NIL and separately license school IP through the CLC—EA has not violated any of BrandR's rights or misled anyone about the scope of those rights.  Moreover, BrandR's claim fails for two additional, independent bases:  (1) BrandR cannot allege that it lacks an adequate remedy at law and (2) BrandR fails to adequately plead a claim under the UCL's unlawful, unfair,

1    or fraudulent prongs in any event.

2                    **a.     Damages are an adequate remedy at law for BrandR's claims**

3             BrandR's UCL claim also fails because BrandR cannot show that it lacks adequate

4    alternative remedies at law.  "[C]ivil causes of action authorized by the UCL . . .  must properly

5    be considered equitable, rather than legal, in nature."  *Nationwide Biweekly Admin., Inc. v.*

6    *Superior Ct. of Alameda Cnty.*, 9 Cal. 5th 279, 326 (2020); *see also Williams v. Apple, Inc.*, No.

7    19-cv-04700-LHK, 2020 WL 6743911, at *9 (N.D. Cal. Nov. 17, 2020) ("[A] federal court

8    cannot grant relief under the UCL . . . if Plaintiffs have an adequate remedy at law.").  Monetary

9    damages are a remedy at law.  *See eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006).

10            This Court should follow the Ninth Circuit's decision in *Sonner v. Premier Nutrition*

11   *Corp.*, 971 F.3d 834 (9th Cir. 2020) and its progeny, dismissing UCL claims where damages are a

12   sufficient legal remedy.  In *Sonner*, a district court dismissed a plaintiff's UCL claim because she

13   "failed to establish that she lacked an adequate legal remedy" given that she had previously

14   sought damages under another statute for the same conduct.  *Id.* at 838.  The Ninth Circuit

15   affirmed, holding that a plaintiff seeking restitution under the UCL must "plead 'the basic

16   requisites of the issuance of equitable relief' including 'the inadequacy of remedies at law.'"  *Id.*

17   at 844 (quoting *O'Shea v. Littleton*, 414 U.S. 488, 502 (1974)).  Because the plaintiff had not

18   alleged that she lacked an adequate legal remedy at law, the Court held that she could not seek

19   restitution under the UCL.  *Id.*[8]

20            Because BrandR fails to follow *Sonner*'s "clear rule" that "plaintiffs must plead the

21   inadequacy of legal remedies before requesting equitable relief," *Adams v. Cole Haan, LLC*, No.

22   20-cv-913 JVS (DFMx), 2020 WL 5648605, at *2 (C.D. Cal. Sept. 3, 2020), the UCL claim must

23   be dismissed in its entirety.  Here, BrandR has not even attempted to plead that it lacks an

24   adequate remedy at law; on the contrary, BrandR expressly acknowledges that any purported

25   injury suffered can be rectified through damages, noting that "[a]s a direct and proximate result of

26   ───────────────
     [8] Although injunctive relief was not at issue in *Sonner*, the courts have since observed that
27   "nothing about the Ninth Circuit's reasoning indicates that the decision is limited to claims for
     restitution."  *In re MacBook Keyboard Litig.*, No. 5:15-cv-02813-EJD, 2020 WL 6047253, at *3
28   (N.D. Cal. Oct. 13, 2020).  Indeed, "numerous courts in this circuit have applied *Sonner* to
     injunctive relief claims."  *Id.* (collecting cases).

1   EA Sports' unfair, fraudulent and illegal business practices, [BrandR] is suffering and will

2   continue to suffer *financial losses*."  Compl. ¶ 172 (emphasis added); *see also id.* ¶ 136 (with

3   respect to tortious interference of contract, BrandR "has suffered and will continue to suffer

4   damages resulting from lost royalties"); *id.* ¶¶ 150, 164 (regarding right of publicity, BrandR "has

5   suffered and will continue to suffer damages resulting from lost royalties"); *id.* ¶ 177 (regarding

6   declaratory relief, "EA Sports is in direct *violation* of [BrandR's] exclusivity *agreements*"

7   (emphases added)).  Indeed, in denying BrandR's TRO, the Court found that BrandR's alleged

8   injuries are monetarily compensable.  TRO Order at 5, 9.

9          Accordingly, while EA disputes that BrandR is entitled to *any* relief, BrandR has failed to

10  and cannot show that damages would be inadequate to compensate any alleged harm.  For this

11  reason, *Sonner* bars BrandR's UCL claim.  Moreover, because "the availability of an adequate

12  legal remedy is clear from the face" of the Complaint, "further amendment of the complaint

13  would be futile," and dismissal with prejudice is appropriate.  *In re MacBook Keyboard Litig.*,

14  2020 WL 6047253, at *4 (N.D. Cal. Oct. 13, 2020); *Williams* 2020 WL 6743911, at *10

15  (applying *Sonner* to dismiss UCL claims with prejudice).

16                     **b.      BrandR fails to state a claim under the "unlawful" prong**

17         BrandR fails to state a claim under the UCL's "unlawful" prong because it fails to

18  adequately plead claims for tortious interference and right of publicity—the predicate bases for

19  their "unlawful" prong claim.  *See Wolski v. Fremont Inv. & Loan*, 127 Cal. App. 4th 347, 357

20  (2005); *Krantz v. BT Visual Images*, 89 Cal. App. 4th 164, 178 (2001).

21                     **c.      BrandR fails to state a claim under the "fraudulent" prong**

22         BrandR fails to state a claim under the "fraudulent" prong for multiple reasons.  First, as

23  explained *supra*, BrandR's own allegations reveal that EA's statements do not constitute fraud.

24  BrandR asserts that EA "is fraudulently misrepresenting the scope and nature of [BrandR]'s rights

25  in communications with [student-athletes], schools, and the public."  Compl. ¶ 170.  Specifically,

26  BrandR contends that EA committed fraud by stating that it can properly license student-athletes'

27  NILs directly from those student-athletes.  *See, e.g.*, *id.* ¶¶ 89, 90.  But EA's statements and

28  conduct are correct as a matter of law and compliant with BrandR's own contracts.  So, for the

same reasons BrandR fails to state a claim for either tortious interference or right of publicity, its theory that EA acted fraudulently under the UCL also fails.

Second, BrandR fails to establish standing under the "fraudulent" prong, which requires that "a plaintiff [] demonstrate that he relied upon the allegedly fraudulent misrepresentation." *Guttmann v. La Tapatia Tortilleria, Inc.*, No. 15-cv-02042-SI, 2015 WL 7283024, at *3 (N.D. Cal. Nov. 18, 2015).  Here, BrandR does not plead that *any* student-athletes or schools (let alone any specific student-athlete or school) relied upon EA's allegedly fraudulent misrepresentations. In fact, BrandR does not allege that EA *entered into* any contracts with a single student-athlete or school for the New Game.

Finally, BrandR's claim fails because it does not meet the heightened pleading standard under Federal Rule of Civil Procedure 9(b).  To state a UCL claim under the fraud prong, BrandR "must allege 'the who, what, where, and how of the misconduct charged.'  In addition, [BrandR] must plead actual reliance on alleged misstatements with particularity by alleging facts "of sufficient specificity," allowing a court to infer that "misrepresentations caused injury to plaintiff[] by inducing [him] to pay" for products or services."  *Williamson v. McAfee, Inc.*, No. 5:14-CV-00158-EJD, 2014 WL 4220824, at *6 (N.D. Cal. Aug. 22, 2014) (cleaned up).  BrandR vaguely alleges that EA is engaged in fraudulent conduct by "misrepresenting the scope and nature of [BrandR's] rights in communications with athletes, schools, and the public."  Compl. ¶ 170.  But the Complaint lacks the "who, what, where, and how of the misconduct charged" to adequately plead a UCL claim under the "fraudulent" prong.  *Williamson*, 2014 WL 4220824, at *6.  BrandR does not allege which student-athletes it represents, that any particular student-athletes actually relied on EA's alleged misstatements, or that this reliance caused injury to those student-athletes.

### d.    BrandR fails to state a claim under the "unfair" prong

Finally, BrandR's claim under the "unfair" prong of the UCL fails.  California courts have articulated two tests to determine unfairness under the UCL:  the "balancing test" and the tethering test.  *In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d 797, 842-43 (N.D. Cal. 2020). BrandR's claim fails either test.

1   Under the balancing test, a defendant's conduct is an "unfair business practice" if it

2   "offends an established public policy or is immoral, unethical, oppressive, unscrupulous, or

3   substantially injurious to consumers." *Williamson*, 2014 WL 4220824, at *6.  BrandR describes

4   EA's purported "unfair business practice" as EA's direct negotiations with schools and fraudulent

5   misrepresentations of the scope and nature of BrandR's rights in EA's communications with

6   student-athletes, schools, and the public.  Compl. ¶ 170.  Thus, because BrandR's claim sounds in

7   fraud, the pleading must "satisfy the heightened standard [of] Rule 9(b)." *Backhaut v. Apple,*

8   *Inc.*, 74 F. Supp. 3d 1033, 1040,1051 (N.D. Cal. 2014) (applying Rule 9(b) standard to UCL

9   claim based on purportedly fraudulent conduct and finding claim inadequately pled).  For the

10  reasons stated *supra*, BrandR's claim does not meet Rule 9(b)'s requirements and fails to allege

11  actual reliance on any fraudulent conduct.

12   BrandR's claim also fails under the tethering test, which frames "unfairness" as "conduct

13  that threatens an incipient violation of an *antitrust* law, or violates the policy or spirit of one of

14  those laws because its effects are comparable to or the same as a violation of the law, or otherwise

15  significantly threatens or harms *competition*." *In re Google Assistant*, 457 F. Supp. 3d at 843

16  (emphases added).  Here, BrandR has not sufficiently alleged "any harm to competition or

17  violation of the 'letter, policy, or spirit of the antitrust laws.'" *Id.*  In asserting its UCL claim,

18  BrandR does not adequately articulate EA's purportedly anticompetitive behavior.  Compl. ¶¶

19  168-73 (summarily stating that EA's "interference is unlawful, fraudulent, and/or unfair

20  competition in violation of the UCL").  In other words, the claim lacks "specific factual

21  allegations regarding unfair business practices," and BrandR has not "pled that [EA's] alleged

22  conduct threatened an incipient violation of any antitrust law or the spirit or policies of those

23  laws." *Vascular Imaging Pros., Inc. v. Digirad Corp.*, 401 F. Supp. 3d 1005, 1015 (S.D. Cal.

24  2019) (dismissing UCL claim where plaintiff made conclusory allegations that defendants

25  conspired to interfere with a contract between plaintiff and a third party to gain a competitive

26  advantage).  At best, BrandR *elsewhere* vaguely alleges that "EA's attempt to exclude [BrandR]

27  from discussions regarding the use of [student-athletes'] NIL in [the New Game] amounts to

28  anticompetitive conduct."  Compl. ¶ 115.  But, as established *supra*, BrandR does not have *any*

1  rights to student-athletes' NILs.[9]

2      **4.    BrandR fails to state a claim for declaratory relief**

3      BrandR seeks a declaratory judgment that it has exclusive rights to license its partner

4  schools' IP and student-athletes' NILs.  *Id.* ¶¶ 174-79.  As explained above, *see infra* Sections

5  II(B)(1) and II(B)(2), the Student GLA Template does not grant BrandR exclusive rights to

6  student-athletes' NILs and the school collaboration agreements do not grant BrandR exclusive

7  rights to schools' IP.  Accordingly, the Court should deny BrandR's claim for declaratory relief.

8      **5.    Amendment should be denied**

9      The Court should deny BrandR leave to amend because BrandR's agreements establish as

10  a matter of law that EA may enter into individual licenses with student-athletes.  Under California

11  law, "[a] contract must be so interpreted as to give effect to the mutual intention of the parties as

12  it existed at the time of contracting[.]"  Cal. Civ. Code § 1636.  "[S]uch intent is to be inferred, if

13  possible, ***solely from the written provisions of the contract***," read in their ordinary and popular

14  sense.  *AIU Ins. Co. v. FMC Corp.*, 51 Cal. 3d 807, 822 (1995) (citing Cal. Civ. Code § 1639).  If

15  the plain language is "clear and explicit," then it controls as a matter of law.  *Segal v. Silberstein*,

16  156 Cal. App. 4th 627, 633 (2007).

17      As the Court noted in its TRO Order, the unambiguous language of BrandR's Student

18  GSA Template and collaboration agreements with MSU and Marshall do not implicate EA's

19  separate license agreements with schools on the one hand and individual student-athletes on the

20  other.  TRO Order at 12-13.  Indeed, BrandR admits EA is not seeking to enter into a group

21  licensing agreement where NIL rights of student-athletes and the IP rights of schools are licensed

22  together, as is required to implicate BrandR's agreements.  *See e.g.*, Compl. ¶¶ 78, 131.

23      Therefore, because BrandR cannot change the plain language of its agreements, and

24  _____

25  [9] Finally, to the extent BrandR's UCL claim concerns EA's negotiations with student-athletes and schools outside of California, California courts hold that the UCL does not extend extraterritorially.  *See Norwest Mortgage, Inc. v. Superior Ct.*, 72 Cal. App. 4th 214, 222-223 (1999) ("[The UCL is not] applicable to claims of non-California residents injured by conduct occurring beyond California's borders"); *see also Badella v. Deniro Mktg. LLC*, No. C 10-03908 CRB, 2011 WL 5358400, at *11 (N.D. Cal. Nov. 4, 2011) ("[T]he Court recognizes that extraterritorial application of the UCL is improper where non-residents of California raise claims based on conduct that allegedly occurred outside of the state." (citing *Sullivan v. Oracle Corp.*, 547 F.3d 1177, 1187 (9th Cir. 2008)).

1    because all of BrandR's claims depend on the language of the agreements, any amendment from

2    BrandR is futile and the Court should dismiss BrandR's complaint with prejudice.  *See Wyler*

3    *Summit P'ship v. Turner Broad. Sys., Inc.*, 135 F.3d 658, 664 n.11 (9th Cir. 1998) ("[U]nfounded

4    attempts at re-drafting contracts can and should be dismissed at an early stage"); *Vigdor v. Super*

5    *Lucky Casino, Inc.*, No. 16-cv-05326-HSG, 2017 WL 2720218, at *3 n.2 (N.D. Cal. June 23,

6    2017) ("Plaintiffs cannot, as a matter of law, pursue a theory that the valuation cap should be $4

7    million if the company fails to meet just one of the two benchmarks, because that theory directly

8    contradicts the unambiguous language of the CPN."); *Farhat v. Wells Fargo Bank, N.A.,* No. 18-

9    cv-02273-HSG, 2018 WL 5733657, at *2 (N.D. Cal. Oct. 30, 2018) (dismissing contract claim as

10   not cognizable because contract provision was "unambiguous"); *Palomino v. Facebook, Inc.*, No.

11   16-cv-04230-HSG, 2017 WL 76901, at *5 (N.D. Cal. Jan. 9, 2017) ("Any amendment would be

12   futile given the Court's resolution of this question of law, and thus the complaint is dismissed

13   with prejudice." (citing *Albrecht v. Lund*, 845 F.2d 193, 195 (9th Cir.) *amended*, 856 F.2d 111

14   (9th Cir. 1988))).

15   **IV.   MOTION TO STAY**

16        The Court should dismiss the complaint with prejudice.  If, however, the Court grants

17   BrandR leave to amend, then the Court should stay discovery "until it is clear if any claims will

18   proceed based on [EA's] amendments."  *Crowder v. LinkedIn Corp.*, No. 22-cv-00237-HSG,

19   2023 WL 2405335, at *8 (N.D. Cal. Mar. 8, 2023).

20        A "district court has wide discretion in controlling discovery."  *Little v. City of Seattle*,

21   863 F.2d 681, 685 (9th Cir. 1988).  Additionally, Federal Rule of Civil Procedure 26 provides

22   that "[t]he court may, for good cause, issue an order to protect a party or person from annoyance,

23   embarrassment, oppression, or undue burden or expense[.]"  FED. R. CIV. P. 26(c).  Good cause to

24   stay discovery exists where, for example, the court "is convinced that the plaintiff will be unable

25   to state a claim for relief."  *Wenger v. Monroe*, 282 F.3d 1068, 1077 (9th Cir. 2002); *see also*

26   *Rutman Wine Co. v. E & J Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987) ("It is sounder

27   practice to determine whether there is any reasonable likelihood that plaintiffs can construct a

28   claim before forcing the parties to undergo the expense of discovery.").  Courts in this district

apply a two-prong test to determine whether a stay of discovery is appropriate.  *See In re Nexus 6p Prod. Liab. Litig.*, No. 17-cv-02185-BLF, 2017 WL 3581188, at *1 (N.D. Cal. Aug. 18, 2017) (collecting cases).  *First*, the moving party must demonstrate that the pending motion is "potentially dispositive of the entire case, or at least dispositive on the issue at which discovery is directed."  *Id.  Second*, "the court must determine whether the pending motion can be decided absent discovery."  *Id.*  "In applying the two-factor test, the court deciding the motion to stay must take a 'preliminary peek' at the merits of the pending dispositive motion to assess whether a stay is warranted."  *Ministerio Roca Solida v. U.S. Dep't of Fish & Wildlife*, 288 F.R.D. 500, 503 (D. Nev. 2013).

Here, both prongs of the test for staying discovery pending a dispositive motion are met.  First, EA's motion to dismiss asks the Court to dismiss the entirety of BrandR's case.  Second, the Court does not need discovery to determine that EA's potential individual licenses with student-athletes and separate licenses with schools do not violate the terms of BrandR's agreements.  *See infra* Sections III(B)(1)-III(B)(5).  To protect defendants from undue burden and expense, this Court has stayed discovery under similar circumstances, *i.e.*, when attacks on the complaint result in a total dismissal and amendment is likely to be futile.  *See e.g.*, *Crowder*, 2023 WL 2405335, at *7-8 ("[G]iven the outcome of the motion to dismiss, the most prudent course now is to wait until it is clear if any claims will proceed based on Plaintiffs' amendments."); *Cal. Crane Sch., Inc. v. Google LLC*, No. 21-cv-10001-HSG, 2022 WL 1271010, at *1 (N.D. Cal. Apr. 28, 2022) ("[F]orcing Defendants to spend time and resources on the kind of discovery that Plaintiff seeks . . . before the Court has an opportunity to assess whether Plaintiff has pled any plausible claims against them may subject Defendants to undue burden and expense."); *Yamasaki v. Zicam LLC*, No. 21-cv-02596-HSG, 2021 WL 3675214, at *2 (N.D. Cal. Aug. 19, 2021) ("The Court finds that Defendant's motion to dismiss could be potentially dispositive.  Staying discovery could therefore prevent the investment of unnecessary time and expense.").  The Court should do the same here.

1

## V.      CONCLUSION

2         For the reasons stated above, the Court should grant EA's motion and dismiss with

3   prejudice BrandR's Complaint under Rules 12(b)(1) and 12(b)(6), or, in the alternative, with

4   leave to amend and stay discovery until it determines that BrandR has pled a plausible cause of

5   action.

6

7   Dated:  August 1, 2023                              KEKER, VAN NEST & PETERS LLP

8

9                                         By:   /s/ R. James Slaughter
                                                R. JAMES SLAUGHTER
10                                              R. ADAM LAURIDSEN
                                                CANDICE MAI KHANH NGUYEN
11                                              LUIS G. HOYOS

12                                              Attorneys for Defendant
                                                ELECTRONIC ARTS INC.
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28