KEKER, VAN NEST & PETERS LLP
R. JAMES SLAUGHTER - #192813
rslaughter@keker.com
R. ADAM LAURIDSEN - # 243780
alauridsen@keker.com
CANDICE MAI KHANH NGUYEN - # 329881
cnguyen@keker.com
LUIS G. HOYOS - # 313019
lhoyos@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:    415 391 5400
Facsimile:     415 397 7188

Attorneys for Defendant
ELECTRONIC ARTS INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| THE BRANDR GROUP, LLC<br><br>             Plaintiff,<br><br>    v.<br><br>ELECTRONIC ARTS INC., and DOES 1 through 10, inclusive,<br><br>           Defendants. | Case No. 4:23-cv-02994-HSG<br><br>[Removed from San Mateo Superior Court, Case No. 23-CIV-02715]<br><br>**DEFENDANT ELECTRONIC ARTS INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**<br><br>Date:      November 16, 2023<br>Time:     2:00 PM<br>Dept.:    Courtroom 2 – 4th Floor<br>Judge:   Honorable Haywood S. Gilliam, Jr.<br><br>**JURY TRIAL DEMANDED** |

1    **TO ALL PARTIES AND COUNSEL OF RECORD:**

2          PLEASE TAKE NOTICE that on November 16, 2023, at 2:00 p.m.,[1] or as soon thereafter

3    as this matter can be heard, in the courtroom of the Honorable Haywood S. Gilliam, Jr., located at

4    1301 Clay Street, Oakland, CA 94612, Defendant Electronic Arts Inc. ("EA") moves this Court

5    for an order dismissing Plaintiff The BrandR Group LLC's ("BrandR") Amended Complaint.

6          This motion is brought pursuant to Federal Rules of Civil Procedure 12(b)(6) on the

7    grounds that the Amended Complaint, including each cause of action, fails to state a claim on

8    which relief may be granted, and 12(b)(1) on the grounds that the Court lacks subject matter

9    jurisdiction as to Plaintiff's right of publicity claims.  This motion is based on this Notice of

10   Motion and Motion, the following Memorandum of Points and Authorities, all files, records, and

11   orders in this action, oral argument, and such additional matters as may be judicially noticed or

12   incorporated by reference by the Court or may come before the Court prior to or at the hearing on

13   this matter.

14

15   Dated:  August 22, 2023                              KEKER, VAN NEST & PETERS LLP

16                                                  By:   _/s/ R. James Slaughter_

17                                                        R. JAMES SLAUGHTER
                                                         R. ADAM LAURIDSEN
18                                                       CANDICE MAI KHANH NGUYEN
                                                         LUIS G. HOYOS
19

20                                                       Attorneys for Defendant
                                                         ELECTRONIC ARTS INC.
21

22

23

24

25

26

27   _____
     [1] Defendant set the date for this motion on the earliest possible date noted on the Court's website.
28   EA's Motion to Stay (Dkt. 28) and the Parties' Initial Case Management Conference (Dkt. 30) are
     set for October 19, 2023.

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ................................................................1

I.    INTRODUCTION ...............................................................................................................1

II.   BACKGROUND .................................................................................................................3

    A.    EA's new college football game ..............................................................................3

    B.    BrandR's agreements with student-athletes and schools ..........................................3

        1.    Student GLA Template ................................................................................4

        2.    MSU and Marshall Agreements ..................................................................5

    C.    EA's plan to individually license student-athletes' NILs ........................................7

    D.    Procedural history ....................................................................................................7

III.   ARGUMENT .......................................................................................................................8

    A.    Legal standards .........................................................................................................8

        1.    Rule 12(b)(6) ................................................................................................8

        2.    Rule 12(b)(1) ................................................................................................8

    B.    BrandR fails to state a claim for tortious interference with contract ......................9

        1.    EA does not interfere with the terms of BrandR's Student GLA Template .......................................................................................................9

        2.    EA does not interfere with the terms of the MSU and Marshall agreements ..............................................................................................12

    C.    BrandR fails to state a claim for intentional interference with prospective economic advantage ..............................................................................................13

    D.    BrandR fails to state a right of publicity claim .....................................................15

        1.    BrandR's right of publicity claims are not ripe .......................................15

        2.    BrandR has failed to allege use of any student's NIL ..............................16

        3.    BrandR does not have standing to bring right of publicity claims ...........16

        4.    BrandR has failed to allege facts sufficient to establish that California law applies to its right of publicity claims ...............................18

    E.    BrandR's UCL claim rises and falls with its substantive claims and should be dismissed along with them .................................................................................19

1.    Damages are an adequate remedy at law for BrandR's claims................19

2.    BrandR fails to state a claim under the "unlawful" prong ........................21

3.    BrandR fails to state a claim under the "fraudulent" prong.....................21

4.    BrandR fails to state a claim under the "unfair" prong............................22

F.    BrandR fails to state a claim for declaratory relief.................................23

G.    Amendment should be denied...............................................................24

IV.    CONCLUSION.............................................................................................24

1

## TABLE OF AUTHORITIES

2

Page(s)

3

**Cases**

4

*Abagninin v. AMVAC Chem. Corp.*,
    545 F.3d 733 (9th Cir. 2008) ...........................................................................................24

5

6

*Adams v. Cole Haan, LLC*,
    No. 20-cv-913 JVS, 2020 WL 5648605 (C.D. Cal. Sept. 3, 2020) ......................................20

7

*AlterG, Inc. v. Boost Treadmills LLC*,
    388 F. Supp. 3d 1133 (N.D. Cal. 2019) ...........................................................................15

8

9

*Alvarez v. Chevron Corp.*,
    656 F.3d 925 (9th Cir. 2011) .............................................................................................8

10

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)...........................................................................................................8

11

12

*Backhaut v. Apple, Inc.*,
    74 F. Supp. 3d 1033 (N.D. Cal. 2014) .............................................................................22

13

14

*Badella v. Deniro Mktg. LLC*,
    No. C 10-03908 CRB, 2011 WL 5358400 (N.D. Cal. Nov. 4, 2011)................................23

15

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)...........................................................................................................8

16

17

*Bishop Paiute Tribe v. Inyo Cnty.*,
    863 F.3d 1144 (9th Cir. 2017) .........................................................................................15

18

19

*Blank v. Kirwan*,
    39 Cal. 3d 311 (1985) ...............................................................................................14, 15

20

*Cairns v. Franklin Mint Co.*,
    24 F. Supp. 2d 1013 (C.D. Cal. 1998) .............................................................................17

21

22

*Charles v. City of Los Angeles*,
    697 F.3d 1146 (9th Cir. 2012) .........................................................................................16

23

24

*Clark v. City of Seattle*,
    899 F.3d 802 (9th Cir. 2018) ...........................................................................................15

25

*Crump v. Beckley Newspapers, Inc.*,
    173 W. Va. 669 (1983) .....................................................................................................18

26

27

*Curran v. Amazon.com, Inc.*,
    No. 2:07-0354, 2008 WL 472433 (S.D. W. Va. Feb. 19, 2008)........................................18

28

iii

*Davis v. Elec. Arts, Inc.*,
  No. 10-cv-03328-RS, 2017 WL 8948081 (N.D. Cal. Feb. 2, 2017) .......................................18

*Doe v. Holy*,
  557 F.3d 1066 (9th Cir. 2009) ..........................................................................................9

*eBay Inc. v. MercExchange, LLC*,
  547 U.S. 388 (2006) .........................................................................................................19

*Ebner v. Fresh, Inc.*,
  838 F.3d 958 (9th Cir. 2016) ...........................................................................................24

*Farhat v. Wells Fargo Bank, N.A.*,
  No. 18-cv-02273-HSG, 2018 WL 5733657 (N.D. Cal. Oct. 30, 2018) ...............................24

*Fighters Inc., LLC v. Elec. Arts Inc.*,
  No. 09-cv-06389 SJO, 2009 WL 10699504 (C.D. Cal. Oct. 30, 2009) ...............................17

*Foreman v. Bank of Am., N.A.*,
  401 F. Supp. 3d 914 (N.D. Cal. 2019) .............................................................................23

*G.N. v. Life Ins. Co. of N. Am.*,
  No. 20-cv-08907-HSG, 2021 WL 2633404 (N.D. Cal. June 25, 2021) ...............................8

*Gionfriddo v. Major League Baseball*,
  94 Cal. App. 4th 400 (2001) ............................................................................................16

*In re Google Assistant Priv. Litig.*,
  457 F. Supp. 3d 797 (N.D. Cal. 2020) .............................................................................22

*Guttmann v. La Tapatia Tortilleria, Inc.*,
  No. 15-cv-02042-SI, 2015 WL 7283024 (N.D. Cal. Nov. 18, 2015) ...............................21

*Hernandez v. Sonoma-Marin Area Rail Transit Dist.*,
  No. 21-cv-01782-DMR, 2022 WL 3348574 (N.D. Cal. Aug. 12, 2022)...............................9

*Ixchel Pharma, LLC v. Biogen, Inc.*,
  9 Cal. 5th 1130 (2020) .......................................................................................................9

*Jackson v. City & Cnty. Of San Francisco*,
  829 F. Supp. 2d 867 (N.D. Cal. 2011) ...............................................................................9

*Kendall v. Visa U.S.A., Inc.*,
  518 F.3d 1042 (9th Cir. 2008) .........................................................................................23

*Khoja v. Orexigen Therapeutics*,
  899 F.3d 988 (9th Cir. 2018) ............................................................................................8

*Krantz v. BT Visual Images*,
  89 Cal. App. 4th 164 (2001) ............................................................................................20

iv

*Lightbourne v. Printroom Inc.*,
    307 F.R.D. 593 (C.D. Cal. 2015) .......................................................................................18

*In re MacBook Keyboard Litig.*,
    No. 5:15-cv-02813-EJD, 2020 WL 6047253 (N.D. Cal. Oct. 13, 2020)...........................19, 20

*Mendiondo v. Centinela Hosp. Med. Ctr.*,
    521 F.3d 1097 (9th Cir. 2008) ...........................................................................................8

*Michaels v. Internet Entm't. Group, Inc.*,
    5 F. Supp. 2d 823 (C.D. Cal. 1998) ...............................................................................5, 16

*National Collegiate Athletic Association v. Alston*,
    141 S. Ct. 2141 (2021) .......................................................................................................3

*Nationwide Biweekly Admin., Inc. v. Superior Ct. of Alameda Cnty.*,
    9 Cal. 5th 279 (2020) .......................................................................................................19

*Norwest Mortgage, Inc. v. Superior Ct.*,
    72 Cal. App. 4th 214 (1999) ............................................................................................23

*Pac. Gas & Elec. Co. v. Bear Stearns & Co.*,
    50 Cal. 3d 1118 (1990) ....................................................................................................13

*Palomino v. Facebook, Inc.*,
    No. 16-cv-04230-HSG, 2017 WL 76901 (N.D. Cal. Jan. 9, 2017) ..................................24

*Pauma Band of Luiseno Mission Indians of Pauma & Yuima Rsrv. V. California*,
    813 F.3d 1155 (9th Cir. 2015) .........................................................................................10

*Reyes-Aguilar v. Bank of Am.*,
    No. 13-cv-05764-JCS, 2014 WL 2153792 (N.D. Cal. Mar. 20, 2014)..............................23

*Sonner v. Premier Nutrition Corp.*,
    971 F.3d 834 (9th Cir. 2020) .......................................................................................19, 20

*Steep Hill Lab'ys, Inc. v. Moore*,
    No. 18-cv-00373-LB, 2018 WL 1242182 (N.D. Cal. Mar. 8, 2018), *aff'd*, 744
    F. App'x 443 (9th Cir. 2018) ...........................................................................................14

*Thomas v. Anchorage Equal Rights Comm'n*,
    220 F.3d 1134 (9th Cir. 2000) (en banc) .........................................................................15

*Timed Out, LLC v. Youabian, Inc.*,
    229 Cal. App. 4th 1001 (2014) ........................................................................................17

*Upper Deck Authenticated, Ltd. v. CPG Direct*,
    971 F. Supp. 1337 (S.D. Cal. 1997)...............................................................................2, 17

*Upper Deck Co. v. Panini Am., Inc.*,
   469 F. Supp. 3d 963 (S.D. Cal. 2020)................................................................16, 17

*Vascular Imaging Pros., Inc. v. Digirad Corp.*,
   401 F. Supp. 3d 1005 (S.D. Cal. 2019)....................................................................23

*Vigdor v. Super Lucky Casino, Inc.*,
   No. 16-cv-05326-HSG, 2017 WL 2720218 (N.D. Cal. June 23, 2017) ..................24

*Westside Ctr. Assocs. v. Safeway Stores 23, Inc.*,
   42 Cal. App. 4th 507 (1996) ....................................................................................14

*Williams v. Apple, Inc.*,
   No. 19-cv-04700-LHK, 2020 WL 6743911 (N.D. Cal. Nov. 17, 2020)............19, 20

*Williamson v. McAfee, Inc.*,
   No. 5:14-CV-00158-EJD, 2014 WL 4220824 (N.D. Cal. Aug. 22, 2014)........21, 22

*Wilson v. Hewlett-Packard Co.*,
   668 F.3d 1136 (9th Cir. 2012) ...................................................................................8

*Wolfson v. Brammer*,
   616 F.3d 1045 (9th Cir. 2010) .................................................................................15

*Wolski v. Fremont Inv. & Loan*,
   127 Cal. App. 4th 347 (2005) ..................................................................................20

*Wyler Summit P'ship v. Turner Broad. Sys., Inc.*,
   135 F.3d 658 (9th Cir. 1998) ...................................................................................24

**Statutes**

Cal. Bus. & Prof. Code § 17200 .........................................................................................7

Cal. Civ. Code § 3344....................................................................................2, 7, 16

**Rules**

Fed. R. Civ. P. 9(b) ...........................................................................................21, 22

Fed. R. Civ. P. 12(b) ................................................................................8, 9, 15, 16

**Other Authorities**

J. Thomas McCarthy & Roger E. Schechter, *The Rights of Publicity & Privacy* §
   6:2 (2017 2d ed.)......................................................................................................18

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

BrandR's Amended Complaint—filed instead of a substantive opposition to EA's first motion to dismiss—fails to cure any of the original complaint's fatal defects.  BrandR still has pled itself out of court according to black letter law and the facts alleged in its Amended Complaint.  BrandR's additions to the Amended Complaint amount to nothing more than attorney argument.  BrandR cannot escape the fact that its rights are limited by the *actual terms* of the agreements it attached to both the original and Amended Complaints.  As explained below, BrandR's Amended Complaint ultimately puts nothing new before the Court and simply layers on more of the same arguments this Court previously rejected in its denial of BrandR's request for a temporary restraining order.  EA's original motion to dismiss put BrandR on notice of its Complaint's deficiencies.  Because BrandR's Amended Complaint does not overcome any of those dispositive flaws, the Court should dismiss it with prejudice.

On February 2, 2021, EA announced that, after a 7-year hiatus, it was preparing to develop and release a new college football video game.  Dkt. No. 31 ("Am. Compl.") ¶ 85 and n.13.  BrandR generally alleges that it is the exclusive avenue through which EA must license student-athletes' names, images and likenesses ("NILs") and schools' trademarks, stadiums logos, mascots, and other intellectual property ("IP") for a product that includes both, and that EA has interfered with BrandR's alleged contracts with student-athletes and schools in connection with its new video game.  *Id.* ¶ 8.  But BrandR's allegations of broad exclusivity contradict the plain language of the contracts BrandR attached to its Amended Complaint.  Those agreements provide that (1) student-athletes at all times retain the right to license their NILs individually and, (2) *at most*, schools agree only to work with BrandR to "develop, implement or manage" a group licensing program that bundles the rights of multiple student-athletes with the schools' IP. Put another way, BrandR could be involved in negotiations *only* when a school seeks to create a group licensing program that bundles the NILs of a group of student-athletes *together with* a school's IP into a *single* license.  But as the Amended Complaint *still* concedes, EA has no intent of pursuing a group licensing program.  Rather, the Amended Complaint *still* admits that EA

1

1    plans to enter into direct agreements with individual student-athletes for their NILs and *separately*

2    license the schools' IP from the Collegiate Licensing Company. *See id.* ¶ 104, 157. BrandR

3    therefore cannot state a tortious interference claim. BrandR's Amended Complaint tacks on an

4    intentional interference with prospective economic advantage claim, but it fares no better for the

5    same reasons as its tortious interference claim. In addition, such a claim is limited to

6    *noncontractual* relationships, and BrandR's only allegations here relate to its purported contracts

7    with student-athletes and schools.

8         BrandR's common law and section 3344 right of publicity claims likewise fail for a host

9    of reasons. First, BrandR's claims are not ripe because BrandR does not allege (nor could it) that

10   EA has entered into a single agreement with any student-athlete for their NILs or used any

11   student-athlete NIL in the video game; and even if the claims were ripe, BrandR fails to state a

12   claim because it does not (and cannot) allege that EA has actually used student-athletes' NILs, a

13   necessary element of a right of publicity claim. Second, even if BrandR alleged that EA had used

14   student-athletes' NILs, BrandR lacks standing to assert such claims on behalf of student-athletes

15   because, pursuant to the draft template agreement attached to the Amended Complaint, BrandR is

16   not the exclusive licensee of student-athletes' NIL rights. *See Upper Deck Authenticated, Ltd. v.*

17   *CPG Direct*, 971 F. Supp. 1337, 1349 (S.D. Cal. 1997) (holding nonexclusive licensee had no

18   standing to bring right of publicity claims). And third, BrandR fails to allege facts sufficient to

19   show that it has right of publicity claims under California law given its failure to identify a single

20   student-athlete that resides or is domiciled in the state.

21        BrandR's UCL and declaratory relief claims depend upon, and fall with, its interference

22   and publicity claims. BrandR's UCL claim also fails because BrandR does not (and cannot)

23   allege that it lacks an adequate remedy at law. On the contrary, BrandR's Amended Complaint

24   makes clear that any future, hypothetical injury it may suffer is redressable via damages.[2]

25   Further, BrandR's UCL claim fails to plead a violation of the UCL's "unlawful," "unfair," or

26

27   _____

     [2] Although the evidentiary standard is different in the context of preliminary injunctive relief, the
     Court already found that monetary damages can compensate BrandR for any harm it may suffer
28   from EA licensing student-athletes' NILs and schools' IP. Dkt. No. 23 ("TRO Order") at 5, 6-9.

"fraudulent" prongs.

For these reasons and those below, the Court should dismiss BrandR's Amended Complaint with prejudice.

## II.     BACKGROUND

### A.     EA's new college football game

BrandR alleges that, from 1998 to 2013, EA sold a college football video game featuring actual college teams with their schools IP but, given NCAA rules precluding payment to students, without student-athletes' NILs.  Am. Compl. ¶¶ 78-80.  After eight years off the market, in February 2021, EA announced that it intended to relaunch the Game as *EA Sports College Football* (the "New Game").  *Id.* ¶¶ 85, 87.  At the same time, EA also announced that it would license schools' IP through the Collegiate Licensing Company ("CLC"), the schools' exclusive licensing agent.  *Id.* ¶ 87.

In June 2021, following the Supreme Court's decision in *National Collegiate Athletic Association v. Alston*, 141 S. Ct. 2141 (2021), the National Collegiate Athletic Association ("NCAA") began permitting licensees to compensate student-athletes for use of their NILs.  Am. Compl. ¶¶ 2-3.  In response, EA announced that it would explore the possibility of licensing the student-athletes' NILs for use in the New Game.  *Id.* ¶ 90.

### B.     BrandR's agreements with student-athletes and schools

BrandR alleges that it has entered into agreements with 65 schools and 3,900 student-athletes "to facilitate co-branding opportunities" for them and, that as a result of these agreements, potential licensees such as EA must negotiate with BrandR for the use of student-athletes' NILs or school IP when the licensee uses three or more student-athletes in a product that also includes school IP.  *See, e.g.*, *id.* ¶¶ 8, 21-22, 32-59, 87, 113, 118, 177-178, 191-192, 213

Importantly, BrandR does not attach or otherwise identify a single executed agreement with a student-athlete.  Instead, BrandR attaches only an unsigned *template* agreement with a hypothetical student-athlete (the "Student GLA Template"), Am. Compl., Ex. 3, and asks the Court to assume that this template "is substantially similar to all of [BrandR]'s executed GLAs in all material respects."  *Id.* ¶ 49.  Similarly, for schools, BrandR attaches only two agreements—

3

one with Michigan State University ("MSU") and one with Marshall University ("Marshall")—

that vary from each other in significant ways.  Am. Compl, Exs. 1 & 2.  The three agreements

attached to the Amended Complaint are the same agreements that BrandR attached to its original

Complaint.

### 1.    Student GLA Template

BrandR's Student GLA Template is an unsigned draft template through which student-

athletes can grant BrandR the non-exclusive right to license the use of their "Athlete Attributes"[3]

in "Collegiate Group Licensing Programs," defined as "programs in which a collegiate licensee or

collegiate sponsor uses the [NILs] of three (3) or more current XX Athletes from one sport or six

(6) or more from multiple sports, *in combination with* University trademarks and logos."  Student

GLA Template ¶ 3 (emphasis added).[4]  This grant of rights is narrowly limited in several material

ways.

Most importantly, the Student GLA Template does not grant BrandR exclusive rights to

an individual student-athlete's NIL.  On the contrary, under the terms of the Template, student-

athletes expressly retain the right to license their individual NILs.  *Id.* ¶ 4 ("[T]his Agreement

does NOT limit an Athlete's right to grant the use of his/her *individual* Athlete Attributes or

*individual* NIL for publicity, advertising, or other commercial purposes, except that such

individual grants will not preclude the undersigned also from being covered by the Collegiate

Group Licensing Programs" (emphasis added)); *id.* ¶ 11 ("[T]HIS AGREEMENT DOES NOT

RESTRICT OR PREVENT ANY OF MY EXISTING OR FUTURE, *INDIVIDUAL* NIL

AGREEMENTS.").  In other words, student-athletes expressly retain the right to enter into

---

[3] The Student GLA Template defines "Athlete Attributes" as "all or any combination of the [athlete's] name, nickname, initials, autograph/signature, facsimile, voice, caricature, photograph, portrait, picture, image, likeness, jersey number, statistics, data, biographical information or any other identifiable feature."  Student GLA Template ¶ 3.

[4] *See also* Student GLA Template ¶ 9 ("[D]URING THE TERM OF THIS AGREEMENT, [BRANDR] SHALL REPRESENT MY GROUP NIL RIGHTS ONLY IN *ANY CO-BRANDED LICENSING THAT ALSO INCLUDES THE UNIVERSITY'S IP*." (EMPHASIS ADDED)); *id.* ¶ 5 ("The focus of the Collegiate Group Licensing Programs will be **co-branded [] opportunities** involving groups of Athletes' NIL **along with [the University's] IP**.." (emphases added)).

---

4

1   individual license agreements at all times.

2        In fact, student-athletes even retain the right to license their NIL rights in a group, if the

3   grant of group-NIL rights: "THIS AGREEMENT DOES NOT RESTRICT ANY OF MY

4   EXISTING GROUP NIL AGREEMENTS NOR ANY SUCH FUTURE NIL AGREEMENTS

5   *THAT DO NOT ALSO INCLUDE THE UNIVERSITY'S CO-BRANDED IP.*"  *Id.* ¶ 12; *see also id.*

6   ¶ 5 ("The focus of the Collegiate Group Licensing Programs will be <u>co-branded licensing</u>

7   <u>opportunities involving groups of Athletes' NIL along with [School] IP.</u>") (emphasis in original);

8   *id.* ¶ 9 ("DURING THE TERM OF THIS AGREEMENT [BrandR] SHALL REPRESENT MY

9   <u>GROUP</u> NIL RIGHTS *ONLY IN ANY CO-BRANDED LICENSING THAT ALSO INCLUDES*

10  *THE UNIVERSITY'S IP.*" (emphasis added)).

11       In sum, the unsigned student-athlete authorization form BrandR submitted shows only a

12  narrow, non-exclusive grant for BrandR to attempt to develop a group licensing program that

13  bundles together the NIL rights of numerous student-athletes and school IP into a single license.

14  In no way does the Student GLA Template confer upon BrandR the right to individual student-

15  athletes' NILs, let alone an exclusive right.

16            **2.      MSU and Marshall Agreements**

17       BrandR also attaches to its Amended Complaint "Group Rights Collaboration

18  Agreement[s]" for two schools: MSU and Marshall.  In those agreements, MSU and Marshall

19  agree only "to make available a Group Licensing Program for their current student-athletes in

20  conjunction with the University's official marks, logos or other intellectual property."  *See* Dkt.

21  No. 7-4, Ex. 1 ("MSU Agreement") at 1; Dkt. No. 7-4, Ex. 2 ("Marshall Agreement") at 1.

22       Nothing in the school agreements grants BrandR the rights to any student-athlete's NILs

23  nor do they grant BrandR the right to license the schools' IP to third parties, like EA.  Indeed,

24  absent a program that bundles together the use of student-athletes' NILs together with school IP,

25  BrandR itself now concedes in its Amended Complaint that pursuant to its Collaboration

26  Agreements, "[BrandR] does not represent the Partner Schools, nor does [BrandR] license the

27  right to use the Partner Schools' IP."  Am. Compl. ¶ 36.  For instance, the Marshall Agreement

28  merely obligates Marshall to (1) "distribut[e] information about the [Group Licensing] Program"

in order to "facilitate[e]" student-athlete's voluntary decisions to enter into agreements with BrandR, and (2) "connect[] [BrandR] with [Marshall's] third-party trademark licensing agency"—*i.e.*, CLC—"and University licensing staff, so that [BrandR] can discuss opportunities to secure from such entity(-ies) the right to use [Marshall's] [IP] in connection with the Group Licensing Program, provided that [Marshall] reserves the right to review and approve each proposed use of [Marshall's] [IP][.]"  Marshall Agreement ¶¶ 2(a)(i)-(vii).  In other words, pursuant to the clear language of the Agreement and as BrandR acknowledges in its Amended Complaint, Marshall licenses nothing to BrandR and agrees only to introduce BrandR to student-athletes and its school licensing agent, CLC.[5]

The MSU and Marshall agreements have no effect on the schools' ability to license their IP independently from any student-athletes' NILs.  This is because a license solely for the schools' IP does not fall under BrandR's collaboration agreements' definition of a "Group Licensing Program," defined as "***licensing or sponsorship programs*** in which a collegiate licensee or collegiate sponsor uses the Athlete Attributes[6] of three (3) or more Athletes from any one specific sport or six (6) or more Athletes from multiple sports ***in combination with University trademarks***."  MSU Agreement ¶ 1(b) (emphases added); Marshall Agreement ¶ 1(c).  In other words, schools at all times retain the right to license their IP.

The effect of the "Exclusivity" and "Preferred Provider" terms in the MSU and Marshall Agreements is to limit the schools from contracting with other third parties to create a Group Licensing Program that bundles the rights of multiple student-athletes with the schools' IP.  MSU Agreement ¶ 6 ("MSU recognizes [BrandR] as MSU's exclusive agent to develop, implement, and manage the Group Licensing Program among its current Athletes."); Marshall Agreement ¶ 6 (Marshall "shall not, without [BrandR's] written consent, contract with any other party to

---

[5] Nor does the MSU Agreement grant BrandR a license to MSU's IP.  There is no language granting BrandR a license or rights to any MSU property.  At most, MSU has agreed to make its IP "available for use in the Program" through MSU's "third-party licensing agency" (CLC)—subject to coordination with CLC to avoid, *inter alia*, licensing conflicts such as CLC's license with EA.  MSU Agreement ¶¶ 2(a)(v); *id.* 2(b)(iv).

[6] The MSU and Marshall agreements define "Athlete Attributes" identically to that in the Student GLA template.  *Compare* MSU Agreement ¶ 1(a) and Marshall Agreement ¶ 1(a) *with* Student GLA Template ¶ 3.

develop, implement or manage any substantially similar group licensing program for groups of any size of Athletes."). Nothing in those terms prevents the schools from licensing their IP separate and apart from any student-athletes' NIL rights.

**C.   EA's plan to individually license student-athletes' NILs**

BrandR alleges that EA is attempting to individually license NILs directly from student-athletes. Am. Compl. ¶¶ 7, 116, 118. Indeed, BrandR alleges that EA itself explained to BrandR that "EA plans to provide [student-athletes] the opportunity to opt-in *individually* and license their likeness rights *directly to* EA." *Id.* ¶ 105 (emphasis added); *id.* (noting that EA's goal is to allow student-athletes to license their NILs directly to EA). Nevertheless, and despite the plain language of the GLA Template permitting such individual licenses, BrandR claims that EA's alleged conduct "run[s] afoul" of BrandR's contractual rights.[7] *See id.* ¶ 124.

**D.   Procedural history**

BrandR filed this case in California Superior Court, County of San Mateo, on June 16, 2023. *See* Dkt. No. 1 ("Compl."). Based on the facts discussed above, BrandR brought five causes of action: (1) tortious interference with contract; (2) violation of California's statutory right of publicity, section 3344 of the California Civil Code; (3) violation of the common law right of publicity; (4) violation of California's Unfair Competition Law ("UCL"), section 17200 of the California Business and Professions Code; and (5) declaratory relief. *Id.* ¶¶ 125-79.

On June 20, 2023, EA removed the lawsuit to this Court. Dkt. No. 1. Two days later, BrandR filed an application for a temporary restraining order, Dkt. No. 7, which the Court denied, Dkt. No. 23. On August 1, 2023, EA filed a motion to dismiss and a motion to stay discovery. Dkt. No. 28. On August 15, 2023, BrandR filed an Amended Complaint and opposition to EA's motions, arguing that they were mooted by the Amended Complaint. Dkt. Nos. 31, 32. In its Amended Complaint, BrandR has added a cause of action for intentional interference with

---

[7] BrandR also asserts that EA's direct licensing is a means of denying student-athletes any legal representation. Am. Compl., ¶ 143. Not so. EA's alleged licensing approach is beyond the narrow scope of BrandR's purported representation of student-athletes, but there is nothing to prevent student-athletes from seeking representation from others for any individual licensing arrangement with EA.

prospective economic advantage.  EA now files this motion to dismiss BrandR's Amended

Complaint along with a reply in support of its motion to stay.

## III.     ARGUMENT

### A.     Legal standards

#### 1.     Rule 12(b)(6)

A complaint should be dismissed where it "lacks a cognizable legal theory or sufficient

facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d

1097, 1104 (9th Cir. 2008).  "[C]ourts are not bound to accept as true a legal conclusion couched

as a factual allegation." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "Nor does a

complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Ashcroft

v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up).  Although allegations of material fact are taken

as true and construed in the light most favorable to the plaintiff, *Wilson v. Hewlett-Packard Co.*,

668 F.3d 1136, 1140 (9th Cir. 2012), courts "disregard threadbare recitals of the elements of a

cause of action" and "unsupported legal conclusions," *Alvarez v. Chevron Corp.*, 656 F.3d 925,

930 (9th Cir. 2011) (affirming dismissal with prejudice).

In deciding a Rule 12(b)(6) motion to dismiss, courts "generally . . . may not consider

material outside the pleadings." *Khoja v. Orexigen Therapeutics*, 899 F.3d 988, 998 (9th Cir.

2018).  That said, courts may "incorporate a document into the complaint 'if the plaintiff refers

extensively to the document or the document forms the basis of the plaintiff's claim.'" *Id.* At

1002 (quoting *United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003)).  This "incorporation-

by-reference" doctrine "prevents plaintiffs from selecting portions of documents that support their

claims while omitting portions of those very documents that waken—or doom—their claims."

*Id.*; *see also G.N. v. Life Ins. Co. of N. Am.*, No. 20-cv-08907-HSG, 2021 WL 2633404, at *2

(N.D. Cal. June 25, 2021) (same).  Accordingly, the Court here can and should incorporate by

reference the contracts BrandR attaches to its Amended Complaint and rely on the language of

those contracts in evaluating BrandR's claims under Rule 12(b)(6).

#### 2.     Rule 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) allows a party to assert, by motion, that the

8

1   Court does not have subject-matter jurisdiction over a claim and should therefore dismiss it.  "The

2   challenging party may make a facial or factual attack challenging subject matter jurisdiction."

3   *Hernandez v. Sonoma-Marin Area Rail Transit Dist.*, No. 21-cv-01782-DMR, 2022 WL

4   3348574, at *2 (N.D. Cal. Aug. 12, 2022) (citing *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir.

5   2000)).  Here, where EA facially challenges the ripeness of BrandR's right of publicity claims,

6   the Court "assumes plaintiff's factual allegations to be true and draws all reasonable inferences in

7   [its] favor," but it does not accept the "truth of legal conclusions merely because they are cast in

8   the form of factual allegations."  *Doe v. Holy See*, 557 F.3d 1066, 1073 (9th Cir. 2009)

9   (quotations omitted); *Jackson v. City & Cnty. Of San Francisco*, 829 F. Supp. 2d 867, 870 (N.D.

10   Cal. 2011) ("Because . . . ripeness pertain[s] to federal courts' subject matter jurisdiction, [it is]

11   properly raised in a Rule 12(b)(1) motion to dismiss." (citing *St. Clair v. City of Chico*, 880 F.2d

12   199, 201 (9th Cir. 1989)).

13   **B.      BrandR fails to state a claim for tortious interference with contract**

14   **1.      EA does not interfere with the terms of BrandR's Student GLA
            Template**

15

16          Despite BrandR's attempts to recharacterize the terms of its agreement with student-

17   athletes, *see, e.g.*, Am. Compl., ¶¶ 72-77, BrandR's tortious interference claim fails because, by

18   the template's *own terms*, student-athletes retain the right to individually license their NILs.[8]

19   BrandR acknowledges that EA intends only to "enter[] into individual and direct contracts for

20   participation in the game."  Compl. ¶ 91.  In other words, EA will seek to license the student-

21   athletes' individual NILs directly from the student-athletes.  The problem for BrandR, therefore,

22   is that its own Student GLA Template expressly permits student-athletes to individually license

23   their NILs:

24          Please note that this Agreement **does NOT limit** an Athlete's right to grant the use
            of his/her **individual** Athlete Attributes or **individual** NIL for publicity,

25

26   _____
     [8] Tortious interference with contractual relations requires "(1) the existence of a valid contract
27   between the plaintiff and a third party; (2) the defendant's knowledge of that contract; (3) the
     defendant's intentional acts designed to induce a breach or disruption of the contractual
     relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting
28   damage."  *Ixchel Pharma, LLC v. Biogen, Inc.*, 9 Cal. 5th 1130, 1141 (2020).

1

2

advertising, or other commercial purposes, except that such individual grants will not preclude the undersigned also from being covered by the Collegiate Group Licensing Programs granted by [BrandR].

3

4

5

6

7

Student GLA Template ¶ 4 (emphases added); *see also id.* ¶ 11 ("I RECOGNIZE THAT THIS AGREEMENT DOES <u>NOT</u> RESTRICT OR PREVENT ANY OF MY EXISTING OR FUTURE, INDIVIDUAL NIL AGREEMENTS.").  Because BrandR alleges that EA intends to individually license each student-athlete's NIL, BrandR has failed to plausibly plead a tortious interference claim as to BrandR's agreements with the student-athletes.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

As it did in its request for a TRO, and consistent with its allegations in its Amended Complaint, BrandR will likely try to argue that EA's future *use* in a game of multiple student-athletes' NILs pursuant to individual licenses is equivalent to a group *license*.  This argument is nonsensical for multiple reasons.  First, to (inaccurately) characterize the aggregation of student-athletes' individual licenses as a single group license would nullify the aforementioned provisions of the Student GLA Template that explicitly preserve the student-athletes' right to individually license their NILs.  *See Pauma Band of Luiseno Mission Indians of Pauma & Yuima Rsrv. V. California*, 813 F.3d 1155, 1171 (9th Cir. 2015) ("An interpretation which gives effect to all provisions of the contract is preferred to one which renders part of the writing superfluous, useless or inexplicable." (quoting Williston on Contracts § 32:5 (4th ed. 2015)).  Indeed, under BrandR's theory, two football players could individually license their NIL rights to EA without violating the terms of the Student GLA Template, but if a third player individually licensed their NIL to EA, all three individual licenses would somehow become a group license. The law does not permit such alchemy.[9]

22

23

24

Second, the Student GLA Template applies only to group licenses that bundle the NIL rights of several student-athletes *together with* their schools' IP.  Indeed, BrandR's Student GLA

25

26

27

28

---

[9] Similarly, five student-athletes from multiple sports could individually license their NIL rights to EA without violating the terms of the Student GLA Template, but if a sixth student-athlete individually licensed their NIL to EA, all three licenses would somehow become a group license. BrandR's new allegations in its Amended Complaint do nothing to undercut the nonsensical nature of its position.  *See* Am. Compl., ¶¶ 58-59 (noting that a student-athlete could contract with an apparel company depicting only that athlete using the school's IP, but that is not the case where three or more members are involved).

10

DEFENDANT ELECTRONIC ARTS INC.'S NOTICE OF MOTION AND MOTION TO DISMISS AMENDED COMPLAINT
Case No. 4:23-cv-02994-HSG

2348381

Template covers only "Collegiate Group Licensing Programs," which are "licensing or sponsorship programs in which a collegiate licensee or collegiate sponsor uses the Athlete Attributes of three (3) or more current [] Athletes from one sport or six (6) or more from multiple sports, *in combination with University trademarks and logos*." *Id.* ¶ 3 (emphasis added); *see also id.* ¶ 5 ("The focus of the Collegiate Group Licensing Programs will be ***co-branded licensing opportunities*** involving groups of Athletes' NIL ***along with [the University's] IP***." (emphases added)).  In other words, the Student GLA Template only grants BrandR a non-exclusive license to use student-athlete NIL in a licensing program that bundles several student-athletes' NILs *plus* their school's IP.  *See id.* ¶ 6 ("[BrandR] makes no representation regarding individual or other group licensing programs or matters other than those expressed herein."); *id.* ¶ 9 (providing that BrandR shall represent a student-athlete's "GROUP NIL RIGHTS ONLY IN ANY CO-BRANDED LICENSING THAT ALSO INCLUDES THE UNIVERSITY'S IP"); *id.* ¶ 12 (providing that the agreement "DOES NOT RESTRICT ANY OF [THE STUDENT-ATHLETE'S] EXISTING GROUP NIL AGREEMENTS NOR ANY SUCH FUTURE NIL AGREEMENTS THAT DO NOT ALSO INCLUDE THE UNIVERSITY'S CO-BRANDED IP").  Nowhere does BrandR allege that EA has entered (or plans to enter) into a "co-branded" license that bundles together both student-athlete NILs and school IP.[10]

Perhaps recognizing that the language of BrandR's own agreement defeats its claims, BrandR alleges myriad irrelevant facts in its Amended Complaint.  For example, BrandR notes EA's recognition of "Group Licensing Programs in professional sports, where professional athletes' group licensing rights are held by players' unions."  Am. Compl., ¶ 11; *see also id.* ¶ 67.  Similarly, BrandR cites a 2023 arrangement involving BrandR, Wrangler, and the University of Texas regarding a collegiate apparel line.  *Id.*, ¶ 60; *see also id.*, ¶ 23 (discussing a hypothetical scenario involving a jersey manufacturer which would be "widely recognized as group licensing").  These other purported agreements are beside the point.  A "group" license agreement

---

[10] BrandR goes so far as to nonsensically allege that EA's Game itself is a Group Licensing Program, conflating the *means* by which EA licensed rights (individual versus group) with the ultimate end licensed *use* (a game that includes multiple student-athletes).

DEFENDANT ELECTRONIC ARTS INC.'S NOTICE OF MOTION AND MOTION TO DISMISS AMENDED COMPLAINT
Case No. 4:23-cv-02994-HSG
2348381

is just a contract that is controlled by its terms just like any other contract.  There is no single definition of a group license agreement.  Nor, most importantly, is there any legal requirement that licensees such as EA enter into a group license agreement in order to obtain rights to use individuals' NILs.  Here, the terms of BrandR's purported agreements with student-athletes explicitly permit those individuals to license their NIL on an individual basis for any use.  There is nothing precluding the student-athletes or EA from entering into such individual agreements.

In sum, even if the student-athletes' licenses to EA were (inaccurately) characterized as a group license, BrandR would *still* fail to state a tortious interference claim because its Amended Complaint concedes that EA is separately and independently licensing school IP from CLC, not bundling together those rights with student-athletes' NILs.

### 2. EA does not interfere with the terms of the MSU and Marshall agreements

BrandR's tortious interference claim as to the MSU and Marshall collaboration agreements also fails because—as BrandR acknowledges in paragraph 36 of its Amended Complaint—those agreements do not grant BrandR the right to use or license any of the schools' IP.  Am. Compl. ¶ 36.  To the contrary, the schools' obligations under the MSU and Marshall collaboration agreements are limited to (1) making information available to student-athletes regarding BrandR's non-exclusive group licensing program and (2) facilitating the potential licensing of school IP—through CLC—*in conjunction with* a potential student-athlete group license.  Therefore, the collaboration agreements do not implicate EA because (1) EA is not developing or implementing a group licensing program with student-athletes and (2) EA is licensing school IP separately from student-athletes' NILs. The fact is, schools at all times retain the right to license their school IP individually or as a group with other schools, and in fact nothing in the collaboration agreements allows BrandR to license the schools' IP without going

DEFENDANT ELECTRONIC ARTS INC.'S NOTICE OF MOTION AND MOTION TO DISMISS AMENDED COMPLAINT
Case No. 4:23-cv-02994-HSG

2348381

1  through CLC to get the schools' approval to enter into a license agreement.[11]

2       The "exclusivity" provisions in the collaboration agreements do not change this analysis.

3  At most, the schools agree that they will not hire a competitor to BrandR to market a *bundled*

4  combination of multiple student-athletes' NIL rights ***together*** with the school's IP.  MSU

5  Agreement ¶ 6 ("MSU shall not engage any other third party, without the express written consent

6  of [BrandR], to develop, implement or manage any similar program ***involving a group of any size***

7  ***of current or former MSU Athletes.***" (emphasis added)); Marshall Agreement ¶ 6 (preventing

8  Marshall from entering into a "contract with any other party to develop, implement or manage

9  any substantially similar group licensing program ***for groups of any size of athletes***" (emphasis

10  added)).  But the MSU and Marshall collaboration agreements do not prohibit separate

11  agreements between EA and the schools on the one hand and EA and individual student-athletes

12  on the other.  In other words, nothing prevents schools from licensing their IP to a video game

13  company, as they do here with EA through CLC.  That conclusion does not change even if the

14  video game company *separately* licenses the NIL rights of multiple student-athletes, because the

15  schools did not hire a different third-party competitor of BrandR to bundle together student-

16  athlete and school rights as a Group Licensing Program.

17       Accordingly, the Court should dismiss BrandR's tortious interference claim as to the

18  collaboration agreements with schools because there is nothing in the Amended Complaint

19  suggesting that schools and student-athletes are coordinating the licensing of their rights.

20      **C.**    **BrandR fails to state a claim for intentional interference with prospective economic advantage**

21       In the Amended Complaint, BrandR tacks on a new claim for intentional interference with

22  prospective economic advantage, but that is an even narrower claim than tortious interference

23  with contract and, regardless, finds no factual support here.  That claim fails for the same reasons

24   

25  [11] Again, BrandR's interpretation of its contracts would lead to a nonsensical result.  Under
BrandR's reading of the contract terms, a previously-entered agreement between EA and CLC for
26  school IP would suddenly become a "Group Licensing Program," subject to BrandR's claimed
exclusivity, if EA separately and independently licenses with more than three student-athletes for
27  their individual NILs to be used in the same game as the school IP.  It is BrandR, not EA, who
risks interfering with contractual relationships by asserting such an overbroad claim to licensing
28  exclusivity.

articulated above with respect to the tortious interference claim.  It fails for additional reasons

stemming from the fact that "[t]he chief practical distinction between interference with contract

and interference with prospective economic advantage is that a broader range of privilege to

interfere is recognized when the relationship or economic advantage interfered with is only

prospective." *Pac. Gas & Elec. Co. v. Bear Stearns & Co.*, 50 Cal. 3d 1118, 1126, (1990)

(emphasis added).[12]  Courts have made clear that "[t]he law precludes recovery for overly

speculative expectancies by initially requiring proof" that it is "reasonably probable that the

prospective economic advantage would have been realized but for defendant's

interference." *Westside Ctr. Assocs. v. Safeway Stores 23, Inc.*, 42 Cal. App. 4th 507, 522

(1996) (cleaned up).  As relevant here, "the interference tort applies to interference

with existing ***noncontractual*** relations which hold the promise of future economic advantage.  In

other words, it protects the expectation that the relationship eventually will yield the desired

benefit, not necessarily the more speculative expectation that a potentially beneficial relationship

will eventually arise." *Id.* at 524; *see also Steep Hill Lab'ys, Inc. v. Moore*, No. 18-cv-00373-LB,

2018 WL 1242182, at *10 (N.D. Cal. Mar. 8, 2018), *aff'd*, 744 F. App'x 443 (9th Cir. 2018).

    First, BrandR's intentional interference with prospective economic advantage claim fails

for the simple reason that BrandR has not alleged "existing ***noncontractual*** relations" that would

prospectively grant it rights to the student-athletes' NILs or the schools' IP.  To the contrary, the

only economic relationships discussed in BrandR's Amended Complaint are its Collaboration

Agreements with schools and its GLAs with student-athletes.  Am. Compl., ¶¶ 167-168

("[BrandR] has valid and binding Collaboration Agreements with 65 Partner Schools and GLAs

with 3,725 Client Athletes, creating an economic relationship between it and the Partner Schools

and Client Athletes."); *id.* at ¶¶ 169-170 (alleging EA's awareness of the Collaboration

Agreements and GLAs, and its possession of certain of those Collaboration Agreements).  These

---

[12] The elements of an intentional interference with prospective economic advantage claim are:
"(1) an economic relationship between the plaintiff and some third person containing the
probability of future economic benefit to the plaintiff; (2) knowledge by the defendant of the
existence of the relationship; (3) intentional acts on the part of the defendant designed to disrupt
the relationship; (4) actual disruption of the relationship; and (5) damages to the plaintiff
proximately caused by the acts of the defendant." *Blank v. Kirwan*, 39 Cal. 3d 311, 330 (1985).

2348381

1   agreements cannot form the basis of an intentional interference with economic advantage claim

2   because they are **contractual** in nature.  *See Westside*, 42 Cal. App. 4th at 524 (such a claim

3   applies only to "existing noncontractual relations").

4        Second, even if BrandR's agreements with student-athletes and schools were

5   "noncontractual relationships," its interference with economic advantage claim would also fail

6   because those relationships would only grant BrandR the right to put together Group Licensing

7   Programs that bundle the student-athletes' NILs with the schools' IP, and EA is not seeking to

8   enter into such a program.  *See supra*, Parts III.1-III.2.  In other words, BrandR has not

9   sufficiently alleged that its relationships with the student-athletes or schools "contain the

10  probability of future economic benefit to [BrandR]" outside the context of the Group Licensing

11  Programs.  *AlterG, Inc. v. Boost Treadmills LLC*, 388 F. Supp. 3d 1133, 1152 (N.D. Cal. 2019).

12       At bottom, BrandR cannot establish the first element of this claim—a noncontractual

13  economic relationship—or the remaining elements that rely upon the existence of such

14  relationship.  *See Blank*, 39 Cal. 3d at 311 (affirming dismissal of intentional interference with

15  economic advantage claim because the first element of the tort was lacking).

16       **D.      BrandR fails to state a right of publicity claim**

17            **1.      BrandR's right of publicity claims are not ripe**

18       The Court should dismiss BrandR's right of publicity claims as unripe under Rule

19  12(b)(1).  The ripeness doctrine is a "question of timing" designed to "prevent the courts, through

20  avoidance of premature adjudication, from entangling themselves in abstract disagreements."

21  *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1138 (9th Cir. 2000) (en banc)

22  (quotations omitted).  "A proper ripeness inquiry contains a constitutional and a prudential

23  component."  *Bishop Paiute Tribe v. Inyo Cnty.*, 863 F.3d 1144, 1153 (9th Cir. 2017).  The

24  constitutional component asks "whether the issues presented are 'definite and concrete, not

25  hypothetical or abstract.'"  *Wolfson v. Brammer*, 616 F.3d 1045, 1058 (9th Cir. 2010) (quotation

26  omitted).  Under the prudential component, courts may decline to exercise jurisdiction even if a

27  claim is ripe under the constitutional component.  *See Thomas*, 220 F.3d at 1141.  But "mere

28  satisfaction of prudential considerations, without satisfaction of the constitutional component of

ripeness, will not cure an unripe claim." *Clark v. City of Seattle*, 899 F.3d 802, 813 n.6 (9th Cir. 2018).

Here, BrandR's right of publicity allegations are hypothetical and abstract. BrandR has not alleged that EA has (1) entered into any contracts with student-athletes for use of their NILs, or (2) released—let alone sold—a single copy of the New Game that uses student-athletes' NILs. On the contrary, BrandR's allegations underscore that the New Game is still being developed. *See*, *e.g.*, Am. Compl., ¶ 6 ("EA now *plans* to bring back its popular Game") (emphasis added); *id.* ¶ 10 (referring to "the announcement that EA was *developing* a new version of the Game" (emphasis added)). And BrandR acknowledges that EA is still in the process of reaching out to individual student-athletes to license their NILs. *See id.* ¶ 126 ("EA Sports reported that . . . details regarding 'how much an athlete will receive and the structure of payments – are still being finalized.'"). Accordingly, the Court should deny BrandR's right of publicity claims pursuant to Rule 12(b)(1). *See Charles v. City of Los Angeles*, 697 F.3d 1146, 1150 (9th Cir. 2012) (upholding dismissal of claims as unripe on the basis they related to "unspecified future signs").

### 2.    BrandR has failed to allege use of any student's NIL

Relatedly, to state a claim for right of publicity under common law, BrandR must allege facts sufficient to establish: (1) that EA actually used the student-athletes' NIL; (2) that EA appropriated the student-athletes' NILs to EA's advantage; (3) that EA lacks consent of student-athletes to use their NIL; and (4) resulting injury. *See Gionfriddo v. Major League Baseball*, 94 Cal. App. 4th 400, 409 (2001). In addition to these elements, a statutory claim under section 3344 requires that BrandR allege facts sufficient to show (5) that EA engaged in "knowing use" of the student-athletes' NIL or (6) a connection between the alleged use and the commercial purpose—the two additional elements of a statutory right of publicity claim. *See Michaels v. Internet Entm't Group, Inc.*, 5 F. Supp. 2d 823, 837 (C.D. Cal. 1998); Cal. Civ. Code § 3344. Here, BrandR's right of publicity claims fail under Rule 12(b)(6) because BrandR has not alleged (nor could it) that EA has actually used student-athletes' NILs or misappropriated their NILs.

### 3.    BrandR does not have standing to bring right of publicity claims

Even if the Court were to find that BrandR's right of publicity claims as pled are ripe *and*

16

---

2348381

that BrandR sufficiently pled facts to plausibly allege use and misappropriation, those claims would fail because BrandR has not alleged facts sufficient to establish its *standing* to bring right of publicity claims on behalf of *a single* student-athlete.  In California, whether a third party has standing to assert a right of publicity claim under section 3344 or common law "depends on the rights granted to the licensee in the license agreement." *Upper Deck Co. v. Panini Am., Inc.* ("*Panini America*"), 469 F. Supp. 3d 963, 984 (S.D. Cal. 2020).  As relevant here, "it is unlikely that a non-exclusive licensee could assert [a right of publicity claim]." *Upper Deck Authenticated, Ltd.*, 971 F. Supp. at 1349 (holding nonexclusive licensee did not have standing to bring right of publicity claims); *see also Panini America*, 469 F. Supp. 3d at 984; *Fighters Inc., LLC v. Elec. Arts Inc.*, No. 09-cv-06389 SJO (VBKx), 2009 WL 10699504, at *6-7 (C.D. Cal. Oct. 30, 2009).  And cases holding that certain non-exclusive assignments may confer standing to third-parties involved—unlike here—"a limited license to exploit the celebrity's likeness in connection with a particular commercial opportunity." *Timed Out, LLC v. Youabian, Inc.*, 229 Cal. App. 4th 1001, 1012 (2014) (collecting cases and denying motion to dismiss upon finding that "the complaint's allegations are sufficient to support a reasonable inference that Plaintiff received *exclusive assignments* with respect to the Modes' likenesses" (emphasis added)).

    Here, BrandR alleges that "[p]ursuant to the express terms of the [Student GLA Template] between TBG and its Client Athletes, each Client Athlete assigned to [BrandR] the right to use their NIL in Collegiate Group Licensing Programs." Am. Compl. ¶ 177; Am. Compl., Ex. 3. But, as explained above, BrandR's Student GLA Template includes only a narrow non-exclusive right to license the student-athlete NIL only as part of a license together with school IP.  Pursuant to the express terms of the Student GLA Template, student-athletes expressly retain the right to license their individual NILs.  *Id.*  The clear terms of the Student GLA Template therefore foreclose BrandR's standing to assert right of publicity claims on behalf of unidentified student-athletes.  Indeed, the Court has found as much in denying Plaintiff's TRO.  TRO Order at 7 ("Plaintiff has not established that it actually has an exclusive right to either the schools' IP or the students' NILs.").

1

### 4. BrandR has failed to allege facts sufficient to establish that California law applies to its right of publicity claims

2

3         Finally, BrandR's right of publicity claims fail because BrandR has not alleged facts

4    sufficient to show which state's/states' law(s) apply to those claims.  In right of publicity cases,

5    courts apply the law of the property owner's domicile.  *See Cairns v. Franklin Mint Co.*, 24 F.

6    Supp. 2d 1013, 1028 (C.D. Cal. 1998).  That means BrandR must allege facts showing the

7    domicile of the student-athletes who have supposedly licensed their NILs to BrandR.  But not

8    only does BrandR fail to identify a single student-athlete who has licensed their individual NIL

9    rights to BrandR in its Amended Complaint, it fails to allege where those student-athletes are

10   domiciled.

11        It is crucial to know what law applies to each of BrandR's right of publicity claims

12   because "there are material differences among the states with respect to their laws governing the

13   publicity rights."  *Davis v. Elec. Arts, Inc.*, No. 10-cv-03328-RS, 2017 WL 8948081, at *2 (N.D.

14   Cal. Feb. 2, 2017); *Lightbourne v. Printroom Inc.*, 307 F.R.D. 593, 598 (C.D. Cal. 2015).  For

15   example, in West Virginia—where Marshall University is located—the right of publicity claim

16   only applies to public figures.  *See Crump v. Beckley Newspapers, Inc.*, 173 W. Va. 669, 714 n.6

17   (1983) ("[T]he unjust enrichment caused by an unauthorized exploitation of the good will and

18   reputation that a *public figure* develops in his name or likeness through the investment of time,

19   money and effort" (emphasis added)); *Curran v. Amazon.com, Inc.*, No. 2:07-0354, 2008 WL

20   472433, at *4 (S.D. W. Va. Feb. 19, 2008) (dismissing right of publicity claim for failure to

21   allege that plaintiff was "a public figure").  So, for instance, to the extent BrandR intends to bring

22   claims on behalf of student-athletes domiciled in West Virginia, BrandR would have to allege that

23   those student-athletes are "public figures" under *Crump* and *Curran*.  Moreover, some states do

24   not recognize a right of publicity at all.  *See* J. Thomas McCarthy & Roger E. Schechter, *The*

25   *Rights of Publicity & Privacy* § 6:2 (2017 2d ed.) ("As of the date of this edition, under the statute

26   or common law, the right of publicity is recognized as the law of 33 states[.]").  These are just a

27   couple of examples of material differences among the right of publicity laws, all of which depend

28   on a student-athlete's domicile.  BrandR's failure to allege facts sufficient to determine which law

18

1   applies requires dismissal of its right of publicity claims.

2        **E.**     **BrandR's UCL claim rises and falls with its substantive claims and should be**
3                **dismissed along with them**

4          BrandR's UCL claim is premised on—and falls with—its tortious interference and right of

5   publicity claims.  The gist of its UCL claim is that EA interfered with BrandR's contracts with

6   student-athletes and schools, violated student-athletes' rights of publicity, and misled schools and

7   student-athletes about the scope of BrandR's rights.  On this basis, BrandR requests injunctive

8   relief.  But for the reasons discussed above, as a matter of law—according to the terms of the

9   contracts attached to the Amended Complaint and the facts alleged about EA's intent to

10  individually license student-athlete NIL and separately license school IP through CLC—EA has

11  not violated any of BrandR's rights or misled anyone about the scope of those rights.  Moreover,

12  BrandR's claim fails for two additional, independent bases: (1) BrandR cannot allege that it lacks

13  an adequate remedy at law and (2) BrandR fails to adequately plead a claim under the UCL's

14  unlawful, unfair, or fraudulent prongs in any event.

15        **1.**      **Damages are an adequate remedy at law for BrandR's claims**

16         BrandR's UCL claim also fails because BrandR cannot show that it lacks adequate

17  alternative remedies at law.  "[C]ivil causes of action authorized by the UCL . . .  must properly

18  be considered equitable, rather than legal, in nature."  *Nationwide Biweekly Admin., Inc. v.*

19  *Superior Ct. of Alameda Cnty.*, 9 Cal. 5th 279, 327 (2020); *see also Williams v. Apple, Inc.*, No.

20  19-cv-04700-LHK, 2020 WL 6743911, at *9 (N.D. Cal. Nov. 17, 2020) ("[A] federal court

21  cannot grant relief under the UCL . . . if Plaintiffs have an adequate remedy at law.").  Monetary

22  damages are a remedy at law.  *See eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006).

23         This Court should follow the Ninth Circuit's decision in *Sonner v. Premier Nutrition*

24  *Corp.*, 971 F.3d 834 (9th Cir. 2020) and its progeny, dismissing UCL claims where damages are a

25  sufficient legal remedy.  In *Sonner*, a district court dismissed a plaintiff's UCL claim because she

26  "failed to establish that she lacked an adequate legal remedy" given that she had previously

27  sought damages under another statute for the same conduct.  *Id.* at 838.  The Ninth Circuit

28  affirmed, holding that a plaintiff seeking restitution under the UCL must "plead 'the basic

1    requisites of the issuance of equitable relief' including 'the inadequacy of remedies at law.'" *Id.*

2    at 844 (quoting *O'Shea v. Littleton*, 414 U.S. 488, 502 (1974)).  Because the plaintiff had not

3    alleged that she lacked an adequate legal remedy at law, the Court held that she could not seek

4    restitution under the UCL. *Id.*[13]

5         Because BrandR fails to follow *Sonner*'s "clear rule" that "plaintiffs must plead the

6    inadequacy of legal remedies before requesting equitable relief," *Adams v. Cole Haan, LLC*, No.

7    20-cv-913 JVS (DFMx), 2020 WL 5648605, at *2 (C.D. Cal. Sept. 3, 2020), the UCL claim must

8    be dismissed in its entirety.  Here, BrandR has not even attempted to plead that it lacks an

9    adequate remedy at law; on the contrary, BrandR expressly acknowledges that any purported

10   injury suffered can be rectified through damages, noting that "[a]s a direct and proximate result of

11   EA Sports' unfair, fraudulent and illegal business practices, [BrandR] is suffering and will

12   continue to suffer *financial losses*."  Am. Compl. ¶ 209 (emphasis added); *see also id.* ¶ 162 (with

13   respect to tortious interference of contract, BrandR "has suffered and will continue to suffer

14   damages resulting from lost royalties"); *id.* ¶¶ 186 (regarding right of publicity, BrandR "has

15   suffered and will continue to suffer damages resulting from lost royalties"); *id.* ¶ 209 (regarding

16   its UCL claims, "EA Sports is in direct *violation* of [BrandR's] exclusivity *agreements*"

17   (emphases added)); *id.* ¶ 175 (BrandR "has suffered and will continue to suffer damages resulting

18   from lost royalties").  Indeed, in denying BrandR's TRO, the Court found that BrandR's alleged

19   injuries are monetarily compensable.  TRO Order at 5, 9.

20        Accordingly, while EA disputes that BrandR is entitled to *any* relief, BrandR has failed to

21   and cannot show that damages would be inadequate to compensate any alleged harm.  For this

22   reason, *Sonner* bars BrandR's UCL claim.  Moreover, because "the availability of an adequate

23   legal remedy is clear from the face" of the Amended Complaint, "further amendment of the

24   complaint would be futile," and dismissal with prejudice is appropriate.  *In re MacBook*

---

26   [13] Although injunctive relief was not at issue in *Sonner*, the courts have since observed that
     "nothing about the Ninth Circuit's reasoning indicates that the decision is limited to claims for
27   restitution." *In re MacBook Keyboard Litig.*, No. 5:15-cv-02813-EJD, 2020 WL 6047253, at *3
     (N.D. Cal. Oct. 13, 2020).  Indeed, "numerous courts in this circuit have applied *Sonner* to
28   injunctive relief claims." *Id.* (collecting cases).

DEFENDANT ELECTRONIC ARTS INC.'S NOTICE OF MOTION AND MOTION TO DISMISS AMENDED
COMPLAINT
Case No. 4:23-cv-02994-HSG
2348381

1   *Keyboard Litig.*, No. 5:18-cv-02813-EJD, 2020 WL 6047253, at *4 (N.D. Cal. Oct. 13, 2020);

2   *Williams* 2020 WL 6743911, at *10 (applying *Sonner* to dismiss UCL claims with prejudice).

3                  **2.      BrandR fails to state a claim under the "unlawful" prong**

4          BrandR fails to state a claim under the UCL's "unlawful" prong because it fails to

5   adequately plead claims for tortious interference and right of publicity—the predicate bases for

6   their "unlawful" prong claim.  *See Wolski v. Fremont Inv. & Loan*, 127 Cal. App. 4th 347, 357

7   (2005); *Krantz v. BT Visual Images*, 89 Cal. App. 4th 164, 178 (2001).

8                  **3.      BrandR fails to state a claim under the "fraudulent" prong**

9          BrandR fails to state a claim under the "fraudulent" prong for multiple reasons.  First, as

10  explained *supra*, BrandR's own allegations reveal that EA's statements do not constitute fraud.

11  BrandR asserts that EA "is fraudulently misrepresenting the scope and nature of [BrandR]'s rights

12  in communications with [student-athletes], schools, and the public."  Am. Compl. ¶ 206.

13  Specifically, BrandR contends that EA committed fraud by stating that it can properly license

14  student-athletes' NILs directly from those student-athletes.  *See, e.g.*, *id.* ¶¶ 116, 117.  But EA's

15  statements and conduct are correct as a matter of law and compliant with BrandR's own

16  contracts.  So, for the same reasons BrandR fails to state a claim for either tortious interference or

17  right of publicity, its theory that EA acted fraudulently under the UCL also fails.

18         Second, BrandR fails to establish standing under the "fraudulent" prong, which requires

19  that "a plaintiff [] demonstrate that he relied upon the allegedly fraudulent misrepresentation."

20  *Guttmann v. La Tapatia Tortilleria, Inc.*, No. 15-cv-02042-SI, 2015 WL 7283024, at *3 (N.D.

21  Cal. Nov. 18, 2015).  Here, BrandR does not plead that *any* student-athletes or schools (let alone

22  any specific student-athlete or school) relied upon EA's allegedly fraudulent misrepresentations.

23  In fact, BrandR does not allege that EA *entered into* any contract with a single student-athlete or

24  school for the New Game.

25         Finally, BrandR's claim fails because it does not meet the heightened pleading standard

26  under Federal Rule of Civil Procedure 9(b).  To state a UCL claim under the fraud prong, BrandR

27  "must allege 'the who, what, where, and how of the misconduct charged.'  In addition, [BrandR]

28  must plead actual reliance on alleged misstatements with particularity by alleging facts "of

21

DEFENDANT ELECTRONIC ARTS INC.'S NOTICE OF MOTION AND MOTION TO DISMISS AMENDED
COMPLAINT
Case No. 4:23-cv-02994-HSG

sufficient specificity," allowing a court to infer that "misrepresentations caused injury to plaintiff[] by inducing [him] to pay" for products or services." *Williamson v. McAfee, Inc.*, No. 5:14-CV-00158-EJD, 2014 WL 4220824, at *6 (N.D. Cal. Aug. 22, 2014) (cleaned up). BrandR vaguely alleges that EA is engaged in fraudulent conduct by "misrepresenting the scope and nature of [BrandR's] rights in communications with athletes, schools, and the public." Am. Compl. ¶ 206. But the Amended Complaint lacks the "who, what, where, and how of the misconduct charged" to adequately plead a UCL claim under the "fraudulent" prong. *Williamson*, 2014 WL 4220824, at *6. BrandR does not allege which student-athletes it represents, that any particular student-athletes actually relied on EA's alleged misstatements, or that this reliance caused injury to those student-athletes.

### 4.     BrandR fails to state a claim under the "unfair" prong

Finally, BrandR's claim under the "unfair" prong of the UCL fails. California courts have articulated two tests to determine unfairness under the UCL:  the "balancing test" and the tethering test. *In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d 797, 842-43 (N.D. Cal. 2020). BrandR's claim fails either test.

Under the balancing test, a defendant's conduct is an "unfair business practice" if it "offends an established public policy or is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." *Williamson*, 2014 WL 4220824, at *6. BrandR describes EA's purported "unfair business practice" as EA's direct negotiations with schools and fraudulent misrepresentations of the scope and nature of BrandR's rights in EA's communications with student-athletes, schools, and the public. Am. Compl. ¶ 206. Thus, because BrandR's claim sounds in fraud, the pleading must "satisfy the heightened standard [of] Rule 9(b)." *Backhaut v. Apple, Inc.*, 74 F. Supp. 3d 1033, 1040,1051 (N.D. Cal. 2014) (applying Rule 9(b) standard to UCL claim based on purportedly fraudulent conduct and finding claim inadequately pled). For the reasons stated *supra*, BrandR's claim does not meet Rule 9(b)'s requirements and fails to allege actual reliance on any fraudulent conduct.

BrandR's claim also fails under the tethering test, which frames "unfairness" as "conduct that threatens an incipient violation of an *antitrust* law, or violates the policy or spirit of one of

DEFENDANT ELECTRONIC ARTS INC.'S NOTICE OF MOTION AND MOTION TO DISMISS AMENDED COMPLAINT
Case No. 4:23-cv-02994-HSG

2348381

those laws because its effects are comparable to or the same as a violation of the law, or otherwise

significantly threatens or harms *competition*."  *In re Google Assistant*, 457 F. Supp. 3d at 843

(emphases added).  Here, BrandR has not sufficiently alleged "any harm to competition or

violation of the 'letter, policy, or spirit of the antitrust laws.'"  *Id.*  In asserting its UCL claim,

BrandR does not adequately articulate EA's purportedly anticompetitive behavior.  Am. Compl.

¶¶ 204-210 (summarily stating that EA's "interference is unlawful, fraudulent, and/or unfair

competition in violation of the UCL").  In other words, the claim lacks "specific factual

allegations regarding unfair business practices," and BrandR has not "pled that [EA's] alleged

conduct threatened an incipient violation of any antitrust law or the spirit or policies of those

laws."  *Vascular Imaging Pros., Inc. v. Digirad Corp.*, 401 F. Supp. 3d 1005, 1015 (S.D. Cal.

2019) (dismissing UCL claim where plaintiff made conclusory allegations that defendants

conspired to interfere with a contract between plaintiff and a third party to gain a competitive

advantage).  At best, BrandR *elsewhere* vaguely alleges that "EA's attempt to exclude [BrandR]

from discussions regarding the use of [student-athletes'] NIL in the [New Game] amounts to

anticompetitive conduct."  Am. Compl. ¶ 141.  But, as established *supra*, BrandR does not have

*any* rights to student-athletes' NILs.[14]

## F.    BrandR fails to state a claim for declaratory relief

BrandR seeks a declaratory judgment that it has exclusive rights to license its partner

schools' IP and student-athletes' NILs.  *Id.* ¶¶ 211-216.  As explained above, *see infra* Sections

II(B)(1) and II(B)(2), the Student GLA Template does not grant BrandR exclusive rights to

student-athletes' NILs and the school collaboration agreements do not grant BrandR exclusive

rights to schools' IP.  Accordingly, the Court should deny BrandR's claim for declaratory relief.

---

[14] Finally, to the extent BrandR's UCL claim concerns EA's negotiations with student-athletes and schools outside of California, California courts hold that the UCL does not extend extraterritorially.  *See Norwest Mortgage, Inc. v. Superior Ct.*, 72 Cal. App. 4th 214, 222-223 (1999) ("[The UCL is not] applicable to claims of non-California residents injured by conduct occurring beyond California's borders"); *see also Badella v. Deniro Mktg. LLC*, No. C 10-03908 CRB, 2011 WL 5358400, at *11 (N.D. Cal. Nov. 4, 2011) ("[T]he Court recognizes that extraterritorial application of the UCL is improper where non-residents of California raise claims based on conduct that allegedly occurred outside of the state." (citing *Sullivan v. Oracle Corp.*, 547 F.3d 1177, 1187 (9th Cir. 2008)).

### G.      Amendment should be denied

When a plaintiff's claims are fatally defective, the Court should dismiss those claims with prejudice because it is "clear that the complaint could not be saved by amendment." *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1051 (9th Cir. 2008).  Dismissal with prejudice follows where, as here, a complaint's core theories of liability are precluded by "question[s] of law that amendment cannot cure." *Foreman v. Bank of Am., N.A.*, 401 F. Supp. 3d 914, 924 (N.D. Cal. 2019); *see also Reyes-Aguilar v. Bank of Am.*, No. 13-cv-05764-JCS, 2014 WL 2153792, at *10 (N.D. Cal. Mar. 20, 2014) (dismissing with prejudice claim based on "fatally flawed" theory).  In particular, where plaintiff has already amended its complaint in response to a motion to dismiss and fails to cure fatal defects that cannot be cured by further amendment, dismissal without leave to amend is appropriate.  *See Ebner v. Fresh, Inc.*, 838 F.3d 958, 968 (9th Cir. 2016); *see also Abagninin v. AMVAC Chem. Corp.*, 545 F.3d 733, 742 (9th Cir. 2008) ("Leave to amend may also be denied for repeated failure to cure deficiencies by previous amendment.").

BrandR's agreements establish as a matter of law that EA may enter into individual licenses with student-athletes.[15]  In light of BrandR's inability to cure this and other fatal deficiencies through its Amended Complaint, and the fact that further amendment would be futile, the Court should deny BrandR leave to amend for a second time.  *See Ebner*, 838 F.3d at 968; *see also Abagninin*, 545 F.3d at 742.

## IV.      CONCLUSION

For the reasons stated above, the Court should grant EA's motion and dismiss BrandR's Amended Complaint with prejudice.

---

[15] *See Wyler Summit P'ship v. Turner Broad. Sys., Inc.*, 135 F.3d 658, 664 n.11 (9th Cir. 1998) ("[U]nfounded attempts at re-drafting contracts can and should be dismissed at an early stage"); *Vigdor v. Super Lucky Casino, Inc.*, No. 16-cv-05326-HSG, 2017 WL 2720218, at *3 n.2 (N.D. Cal. June 23, 2017) ("Plaintiffs cannot, as a matter of law, pursue a theory that the valuation cap should be $4 million if the company fails to meet just one of the two benchmarks, because that theory directly contradicts the unambiguous language of the CPN."); *Farhat v. Wells Fargo Bank, N.A.*, No. 18-cv-02273-HSG, 2018 WL 5733657, at *2 (N.D. Cal. Oct. 30, 2018) (dismissing contract claim as not cognizable because contract provision was "unambiguous"); *Palomino v. Facebook, Inc.*, No. 16-cv-04230-HSG, 2017 WL 76901, at *5 (N.D. Cal. Jan. 9, 2017) ("Any amendment would be futile given the Court's resolution of this question of law, and thus the complaint is dismissed with prejudice." (citing *Albrecht v. Lund*, 845 F.2d 193, 195 (9th Cir.) *amended*, 856 F.2d 111 (9th Cir. 1988))).

---

DEFENDANT ELECTRONIC ARTS INC.'S NOTICE OF MOTION AND MOTION TO DISMISS AMENDED
COMPLAINT
Case No. 4:23-cv-02994-HSG

2348381

1

2    Dated:  August 22, 2023                            KEKER, VAN NEST & PETERS LLP

3

4                                             By:    /s/ R. James Slaughter
                                                    R. JAMES SLAUGHTER
5                                                    R. ADAM LAURIDSEN
                                                    CANDICE MAI KHANH NGUYEN
6                                                    LUIS G. HOYOS

7                                                    Attorneys for Defendant
                                                    ELECTRONIC ARTS INC.
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT ELECTRONIC ARTS INC.'S NOTICE OF MOTION AND MOTION TO DISMISS AMENDED
COMPLAINT
Case No. 4:23-cv-02994-HSG

2348381