KEKER, VAN NEST & PETERS LLP
R. JAMES SLAUGHTER - #192813
rslaughter@keker.com
R. ADAM LAURIDSEN - # 243780
alauridsen@keker.com
CANDICE MAI KHANH NGUYEN - # 329881
cnguyen@keker.com
LUIS G. HOYOS - # 313019
lhoyos@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:    415 391 5400
Facsimile:     415 397 7188

Attorneys for Defendant
ELECTRONIC ARTS INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| THE BRANDR GROUP, LLC<br><br>Plaintiff,<br><br>v.<br><br>ELECTRONIC ARTS INC., and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No. 4:23-cv-02994-HSG<br><br>[Removed from San Mateo Superior Court, Case No. 23-CIV-02715]<br><br>**DEFENDANT ELECTRONIC ARTS INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**<br><br>Date:     October 19, 2023<br>Time:     2:00 p.m.<br>Dept.:     Courtroom 2 – 4th Floor<br>Judge:    Honorable Haywood S. Gilliam, Jr. |

**TABLE OF CONTENTS**

I. INTRODUCTION ...................................................................................................................1

II. ARGUMENT ..........................................................................................................................2

    A. BrandR fails to state a claim for tortious interference with contract. .....................2

        1. EA does not interfere with the Collaboration Agreements or the Student GLA Template. ......................................................................2

        2. BrandR's agreements are not ambiguous. ..................................................5

    B. BrandR fails to state a claim for intentional interference with prospective economic advantage. ................................................................................................6

    C. BrandR fails to state a right of publicity claim. .......................................................8

        1. BrandR's right of publicity claim is unripe and BrandR did not plead EA "used" student-athletes' NILs. .....................................................8

        2. BrandR lacks standing. ................................................................................9

        3. BrandR cannot show that California law applies. .....................................10

    D. BrandR's UCL claim rises and falls with its substantive claims. ..........................12

        1. Damages are an adequate remedy at law for BrandR's claims..................12

        2. BrandR fails to state a claim under the unlawful, fraudulent, and unfair prongs. ............................................................................................14

    E. BrandR fails to state a claim for declaratory relief. ...............................................14

    F. Amendment should be denied. ...............................................................................14

III. CONCLUSION .....................................................................................................................15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Andino v. Apple, Inc.*,
  No. 20-CV-01628-JAM-AC, 2021 WL 1549667 (E.D. Cal. Apr. 20, 2021) ..........................13

*Atl. Cancer Care, P.C. v. Amgen, Inc.*,
  359 F. App'x 714 (9th Cir. 2009) .........................................................................................5

*Backhaut v. Apple, Inc.*,
  74 F. Supp. 3d 1033 (N.D. Cal. 2014) ..................................................................................14

*Brooks v. Thomson Reuters Corp.*,
  No. 21-CV-01418-EMC, 2021 WL 3621837 (N.D. Cal. Aug. 16, 2021) .............................13

*Cairns v. Franklin Mint Co.*,
  24 F. Supp. 2d 1013 (C.D. Cal. 1998) ..................................................................................10

*Clapper v. Amnesty Int'l USA*,
  568 U.S. 398 (2013) ................................................................................................................9

*Clark v. City of Seattle*,
  899 F.3d 802 (9th Cir. 2018) ..................................................................................................9

*Davis v. Elec. Arts, Inc.*,
  No. 10-cv-03328-RS, 2017 WL 8948081 (N.D. Cal. Feb. 2, 2017).......................................11

*Del Amo v. Baccash*,
  No. CV 07-663 PSG, 2008 WL 2780978 (C.D. Cal. July 15, 2008).....................................10

*Eminence Cap., LLC v. Aspeon, Inc.*,
  316 F.3d 1048 (9th Cir. 2003) ...............................................................................................15

*Gionfriddo v. Major League Baseball*,
  94 Cal. App. 4th 400 (2001) ...................................................................................................9

*Hinckley v. Bechtel Corp.*,
  41 Cal. App. 3d 206 (Ct. App. 1974).......................................................................................4

*Ixchel Pharma, LLC v. Biogen, Inc.*,
  9 Cal. 5th 1130 (2020) ............................................................................................................2

*Johnson v. Trumpet Behav. Health, LLC*,
  No. 3:21-CV-03221-WHO, 2022 WL 74163 (N.D. Cal. Jan. 7, 2022)..................................13

*Korea Supply Co. v. Lockheed Martin Corp.*,
  29 Cal. 4th 1134 (2003) ..........................................................................................................7

*Michaels v. Internet Entm't. Grp., Inc.*,
  5 F. Supp. 2d 823 (C.D. Cal. 1998) ......................................................................................... 9

*Moore v. Wells Fargo Bank, N.A.*,
  39 Cal. App. 5th 280 (2019) .................................................................................................... 5

*Nacarino v. Chobani, LLC*,
  No. 20-CV-07437-EMC, 2022 WL 344966 (N.D. Cal. Feb. 4, 2022) .................................. 13

*In re NCAA Student-Athlete Name & Likeness Licensing Litig.*,
  37 F. Supp. 3d 1126 (N.D. Cal. 2014) ................................................................................... 11

*In re NCAA Student-Athlete Name & Likeness Licensing Litig.*,
  Case No. C 09-1967 CW, Dkt. 876 (N.D. Cal. 2014) ............................................................ 14

*NCAA v. Alston*,
  141 S. Ct. 2141 (2021) ............................................................................................................. 3

*Nicolosi Distrib., Inc. v. BMW N. Am., LLC*,
  No. C 10-3256 SI, 2011 WL 479993 (N.D. Cal. Feb. 7, 2011) ........................................... 7, 8

*Pauma Band of Luiseno Mission Indians of Pauma & Yuima Rsrv. v. California*,
  813 F.3d 1155 (9th Cir. 2015) ................................................................................................. 4

*Rader Co. v. Stone*,
  178 Cal. App. 3d 10 (Ct. App. 1986) ....................................................................................... 7

*Rheumatology Diagnostics Lab'y, Inc. v. Aetna, Inc.*,
  No. 12-CV-05847-WHO, 2014 WL 524076 (N.D. Cal. Feb. 6, 2014) ................................... 8

*Series AGI W. Linn of Appian Grp. Investors DE, LLC v. Eves*,
  217 Cal. App. 4th 156 (Ct. App. 2103) .................................................................................... 4

*Sonner v. Premier Nutrition Corp.*,
  971 F.3d 834 (9th Cir. 2020) ........................................................................................... 12, 13

*Thomas v. Anchorage Equal Rights Comm'n*,
  220 F.3d 1134 (9th Cir. 2000) (en banc) ................................................................................. 9

*Timed Out, LLC v. Youabian, Inc.*,
  229 Cal. App. 4th 1001 (2014) .............................................................................................. 10

*Upper Deck Co. v. Flores*,
  569 F. Supp. 3d 1050 (S.D. Cal. 2021) .................................................................................. 10

*Westside Ctr. Assocs. v. Safeway Stores 23, Inc.*,
  42 Cal. App. 4th 507 (1996) ................................................................................................ 7, 8

*Wolfson v. Brammer*,
  616 F.3d 1045 (9th Cir. 2010) ................................................................................................. 9

*Yeomans v. World Fin. Grp. Ins. Agency, Inc*,
    No. 19-CV-00792-EMC, 2022 WL 844152 (N.D. Cal. Mar. 22, 2022) ................................. 13

*Zeiger v. WellPet LLC*,
    No. 3:17-CV-04056-WHO, 2021 WL 756109 (N.D. Cal. Feb. 26, 2021) ............................. 13

**Statutes**

California's Consumers Legal Remedies Act and False Advertising Law .................................. 13

Foreign Corrupt Practices Act ........................................................................................................ 7

**Rules**

Fed. R. Civ. P. 9(b) ...................................................................................................................... 14

**Other Authorities**

Williston on Contracts § 32:5 (4th ed. 2015) ................................................................................. 4

## I.     INTRODUCTION

The BrandR Group, LLC's ("BrandR's") opposition to Electronic Arts Inc.'s ("EA's") motion to dismiss rests on the assertion that an unreleased EA game that may use both schools' trademarks and logos ("School IP") and individual student-athletes' NILs interferes with BrandR's rights under its separate agreements with schools and student-athletes.  The Court already rejected this argument in denying BrandR's application for a TRO, concluding that "even if the [schools'] IP and [student-athletes'] NILs are used in the same game," EA does not violate BrandR agreements because "such rights are not licensed together, nor are they contingent on each other."  Dkt. No. 23 ("TRO Order") at 13.  The Court should reach the same conclusion again here.

BrandR concedes, or does not dispute, the critical facts that require the dismissal of its Amended Complaint.  Specifically:

- BrandR concedes that it "does not own the right to license the Partner Schools' IP, nor does [BrandR] represent the Partner Schools in negotiating with third-party licensees or sponsors for the use of the Schools' IP in GLPs."  Dkt. No. 41 ("Opp.") at 5. BrandR also concedes that EA licensed the right to use School IP from the Collegiate Licensing Company ("CLC") prior to BrandR approaching EA.  Dkt. No. 31 ("Am. Compl.") ¶¶ 85-87.
- BrandR concedes that its agreement with student-athletes "DOES NOT RESTRICT OR PREVENT ANY OF [THE STUDENT-ATHLETES'] EXISITNG OR FUTURE, INDIVIDUAL NIL AGREEMENTS," Student GLA Template ¶ 11, and that, while EA has not yet entered into an agreement with any student-athlete, it intends to enter into individual agreements with student-athletes that do not include any School IP rights, Am. Compl. ¶ 120.

These factual admissions are irreconcilable with BrandR's argument that it nonetheless exclusively controls the rights to the schools' IP and student-athletes' NILs anytime a third party uses those rights together.  Rather, as the language of the relevant contracts plainly show, BrandR's rights are only implicated when rights of students and schools are licensed together as

1

DEFENDANT ELECTRONIC ARTS INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S
AMENDED COMPLAINT
Case No. 4:23-cv-02994-HSG

2372212

part of a "co-branded licensing opportunity." As this Court correctly observed, "even as alleged, [EA] is not obtaining . . . co-branded licenses." TRO Order at 13. Quite simply, BrandR has not alleged—and cannot allege—facts to support a claim that EA interfered with its agreements.

BrandR's ancillary right of publicity and UCL claims fail as described in EA's motion and below. BrandR has already had a chance to amend its Complaint, and further amendment would be futile; the Court should therefore dismiss the Amended Complaint without leave to amend.

## II.     ARGUMENT

### A.     BrandR fails to state a claim for tortious interference with contract.

#### 1.     EA does not interfere with the Collaboration Agreements or the Student GLA Template.

To plead a tortious interference with contractual relations claim, BrandR must plausibly allege that there was an "actual breach or disruption of [its] contractual relationship" with the student-athletes and schools. *Ixchel Pharma, LLC v. Biogen, Inc.*, 9 Cal. 5th 1130, 1141 (2020). BrandR argues that EA interfered with BrandR's agreements with both schools and student-athletes because the combination of EA's use of Schools' IP pursuant to its existing license agreement with CLC, together with EA's potential future use of student-athletes' NILs pursuant to separate individual agreements, constitutes a "Group Licensing Program." *See* Opp. at 11-14. This argument is meritless for several reasons.

This Court already correctly concluded that, "even if the [schools'] IP and [student-athletes'] NILs are *used in the same game*," EA's separate licenses with those parties cannot constitute a Group Licensing Program because "such rights are not licensed together, nor are they contingent on each other." TRO Order at 13 (emphasis added). Indeed, BrandR does not dispute that EA's potential future licenses with individual student-athletes will be separate from, and not contingent upon, EA's license with the schools through CLC.[1]

BrandR has not alleged and cannot allege facts sufficient to plausibly suggest that EA interfered with any school Collaboration Agreement. BrandR concedes that it "does not own the right to license the Partner Schools' IP, nor does [BrandR] represent the Partner Schools in

---

[1] *See* Am. Compl. ¶¶ 87, 98-100, 102-103, 105, 107, 116, 118, 120.

2
DEFENDANT ELECTRONIC ARTS INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT
Case No. 4:23-cv-02994-HSG

2372212

negotiating with third-party licensees or sponsors for the use of the Schools' IP in GLPs." Opp. at 5. Indeed, BrandR acknowledges that when EA announced its intention to publish a new college football game, it also disclosed that it had licensed the Schools' IP from CLC. Am. Compl. ¶¶ 86-87. It was not until months *later* (after the Supreme Court's *Alston*[2] decision) that EA announced it was considering whether to include student-athletes' NILs in the Game. *Id.* ¶ 90. In other words, EA's potential use of student-athletes' NILs pursuant to individual licenses from student-athletes is separate from and not contingent upon EA's license for the Schools' IP from CLC and therefore cannot be a Group Licensing Program. Moreover, BrandR did not sign its Collaboration Agreements with MSU or Marshall (the only collaboration agreements before the Court) until *after* EA announced its intent to publish a new game and *after* EA announced it had licensed School IP from CLC.[3] Put another way, BrandR cannot claim EA is interfering with its Collaboration Agreements with schools by using the Schools' IP when it concedes it does not own or control that IP and acknowledges that schools licensed their IP to EA before BrandR ever entered into the Collaboration Agreements.

At most, BrandR's Collaboration Agreements with schools afford it the opportunity to "develop, implement or manage" group licensing programs that bundle the rights of multiple student-athletes with their School IP for licensing to willing third parties. *See* MSU Agreement ¶ 6; Marshall Agreement ¶ 6. It therefore cannot be that EA's prior, separate license for the Schools' IP magically becomes a "Group Licensing Program" subject to BrandR's control if EA *separately* licenses the NIL rights of three or more individual student-athletes. That would result in BrandR obtaining rights to the schools' IP that, *by its own admission*, it does not have.

Nor has BrandR alleged facts that plausibly establish that EA has interfered with BrandR's agreements with student-athletes. BrandR's Student GLA Template unequivocally states that it "DOES NOT RESTRICT OR PREVENT ANY OF [THE STUDENT-ATHLETES']

---

[2] *NCAA v. Alston*, 141 S. Ct. 2141 (2021), decided June 21, 2021.

[3] EA announced its new game and agreement with CLC for School IP on February 2, 2021, Am. Compl. ¶¶ 85-87, and BrandR signed Collaboration Agreements with MSU on August 23, 2021, and Marshall on August 18, 2022, *Id.* at Exs. 1 & 2.

EXISITNG OR FUTURE, INDIVIDUAL NIL AGREEMENTS." Student GLA Template ¶ 11.[4] That, of course, is exactly what EA is planning to do: enter into individual agreements with student-athletes for the use of their NILs. But under BrandR's interpretation of the Student GLA Template, two football players could individually license their NIL rights to EA without violating the terms of their agreements with BrandR, but if a *third* player does so, suddenly all three individual licenses morph into a group license agreement. This outcome would render superfluous the other provisions of the Student GLA Template that explicitly protect the student-athletes' rights to individually license their NILs. *See Pauma Band of Luiseno Mission Indians of Pauma & Yuima Rsrv. v. California*, 813 F.3d 1155, 1171 (9th Cir. 2015) ("An interpretation which gives effect to all provisions of the contract is preferred to one which renders part of the writing superfluous, useless or inexplicable." (quoting Williston on Contracts § 32:5 (4th ed. 2015)). And it would impermissibly require the Court to write from whole cloth the terms of some group license agreement pursuant to which multiple student-athletes together license their NILs to EA. *See Series AGI W. Linn of Appian Grp. Investors DE, LLC v. Eves*, 217 Cal. App. 4th 156, 164 (Ct. App. 2013) ("Neither abstract justice nor the rule of liberal interpretation justifies the creation of a contract for the parties which they did not make themselves." (quoting *Hinckley v. Bechtel Corp.*, 41 Cal. App. 3d 206, 210 (Ct. App. 1974))). That would be a different agreement from the student-athletes' individual agreements with necessarily different terms.

  BrandR appears to be confusing the *use* of IP (whether the schools' IP or the student-athletes' NILs) with the *grant* of rights that would allow such use. Schools, through the CLC, have already granted EA the right to use School IP in the Game. In the future, student-athletes may separately and individually grant EA the right to use their respective NILs in the Game. While EA may use both sets of IP in the Game, neither is contingent upon the other; EA could decide, for example, to forego inclusion of the student-athletes' NILs, as EA has in the past. BrandR appears to claim EA's potential use of School IP violates the Collaboration Agreements,

---

[4] *See also* Student GLA Template ¶ 4 ("This Agreement does NOT limit an Athlete's right to grant the use of his/her individual Athlete Attributes or individual NIL for publicity, advertising, or other commercial purposes.").

because those agreements discuss the development of co-branding licenses for the use of School IP and student-athletes' NILs. Opp. at 12-13. But the relevant question is not whether EA will *use* the schools' IP or the student-athletes' NILs, but under what *grant* of rights EA would make such use. CLC has already granted the right to use the School IP (which BrandR concedes it does not own or control) and EA would, if it so chooses, license student-athletes' NILs individually and directly from student-athletes (which BrandR's Student GLA Template explicitly permits). The plain language of BrandR's agreements permits this.

In sum, the term "Group Licensing Program" in BrandR's agreements only applies when a school and a group of its student-athletes choose to "develop, implement or manage" a group licensing program that combines the rights to the NILs of three or more student-athletes with School IP. In this case, EA chose to enter into a license agreement with schools that is separate and not contingent on potential, future agreements with individual student-athletes. No matter how BrandR tries to spin the plain language of its agreements, the provisions about Group Licensing Programs are not implicated by separate license agreements between EA and the schools on the one hand, and EA's potential future licenses with individual student-athletes on the other. *See* TRO Order at 12-13.

### 2. BrandR's agreements are not ambiguous.

Realizing that the plain meaning of its agreements allows EA to pursue separate licenses with individual student-athletes and schools, BrandR tries to muddle the record by "alternatively" arguing that its agreements are "ambiguous." Opp. at 17-18. But BrandR's opposition does not explain *how* the language of the agreements is ambiguous,[5] presumably because BrandR spent the first half of its opposition arguing the exact opposite. *Id.* at 9-15 ("EA cannot overcome the plain

---

[5] BrandR's cites are inapposite. In those cases, either the parties explained how a particular contractual provision was ambiguous, or the court did not know the applicable contractual language because the plaintiff did not attach the contracts to the complaint. *See Moore v. Wells Fargo Bank, N.A.*, 39 Cal. App. 5th 280, 293 (2019) ("Moore argued the contract was ambiguous because the Notice required him to make the reduced payments 'in place of' the normal payments and there was no indication that his payment of the reduced amounts would result in a default on the loan[.]"); *Atl. Cancer Care, P.C. v. Amgen, Inc.*, 359 F. App'x 714, 715 (9th Cir. 2009) (holding that "a reasoned and informed interpretation of [the parties'] bargain" was impossible because the contract at issue "was not attached to Atlanta Cancer Care's complaint and it was not provided by Amgen when moving to dismiss this case").

language of [its] Agreements."). BrandR cannot have it both ways.

BrandR's ambiguity argument is also meritless. Nothing in the Amended Complaint suggests that the student-athletes and schools intended to give up their rights to separately license their NILs and IP, respectively. There is nothing ambiguous about the provisions in the Student GLA Template providing that it "DOES <u>NOT</u> RESTRICT OR PREVENT ANY OF THE [STUDENT ATHLETES'] EXISITNG OR FUTURE, INDIVIDUAL NIL AGREEMENTS." Student GLA Template ¶¶ 11.

BrandR alleges that a representative from a school "asked EA about a possible conflict with its obligations to" BrandR. Opp. at 18 (citing Am. Compl. ¶ 103). Even if true, that allegation does not establish that the school actually thought there was a conflict, much less that the agreement with BrandR is ambiguous. Likewise, BrandR alleges that EA told BrandR to "rest assured" that EA "would enter into direct agreements with [BrandR] at all schools where [BrandR] has rights" and that EA "100% plans to work with BrandR." Am. Compl. ¶ 96. Setting aside that BrandR's account of that conversation is false, this allegation at best suggests that EA considered the idea of working with BrandR but decided not to—not that EA thought it *was required* to do so under BrandR's agreements, or that the agreements were ambiguous.

BrandR's allegations relating to the University of Texas ("UT")/Wrangler and EA/NFL licensing agreements also have no bearing on whether any agreement here is ambiguous. *Id.* ¶¶ 60, 67. The UT/Wrangler arrangement is irrelevant because the mere fact that Wrangler *chose* to work with BrandR does not mean that EA *must*. The EA/NFL arrangement is even less relevant; EA's licensing arrangement with the NFL arises from entirely separate contracts that do not involve BrandR, are not at issue in this litigation, and are subject to their own unique terms.

**B.  BrandR fails to state a claim for intentional interference with prospective economic advantage.**

BrandR's claim for intentional interference with prospective economic advantage fails for the reasons set forth above with respect to BrandR's tortious interference with contract claim, as well as for two additional reasons.

First, "the interference tort applies to interference with existing ***noncontractual*** relations

which hold the promise of future economic advantage." *Westside Ctr. Assocs. v. Safeway Stores 23, Inc.*, 42 Cal. App. 4th 507, 524 (1996) (emphasis added).  BrandR's claim is tied to contractual (rather than noncontractual) relations and is therefore dead on arrival.  BrandR must plead that EA engaged in a wrongful act *apart* from its alleged tortious interference with contract—here, BrandR's agreements with the schools and student-athletes.  *See* Opp. at 18-19 (citing *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1157 (2003)).  BrandR insists that it sufficiently alleges these separate acts, pointing to supposed misrepresentations EA made to schools.  Opp. at 19 (citing Am. Compl. ¶¶ 116, 146, 173).  But those allegations relate directly to the agreements in question.  By BrandR's own admission, the predicate acts for its intentional interference claim are contractual and therefore insufficient to state a claim for intentional interference with prospective economic advantage.

Moreover, BrandR fails to show how EA's conduct is "independently wrongful," i.e., "proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard." *Korea Supply Co.*, 29 Cal. 4th at 1158.  The authorities BrandR relies on underscore this point.  In *Korea Supply*, the plaintiff satisfied the "independently wrongful" requirement by alleging that the defendant engaged in various acts—including bribery and sexual favors—in violation of the Foreign Corrupt Practices Act.  *Id.* at 1159.[6]  Similarly, in *Rader Co. v. Stone*, the plaintiff alleged that the defendant intentionally interfered with plaintiff's economic relationship with a third party by disparaging plaintiff and conditioning the lease of a property on nonpayment of a commission to the plaintiff.  178 Cal. App. 3d 10, 28 (Ct. App. 1986).  By contrast, BrandR's pleadings—namely, EA's alleged misrepresentations regarding BrandR's agreements—fall far short of this "rigorous pleading burden." *Korea Supply*, 29 Cal. 4th at 1158.  Finally, the unpublished *Nicolosi* order is distinguishable.  There, the plaintiff pled that defendant intentionally interfered with an exclusive agreement between the plaintiff and a third party,

---

[6] *Korea Supply* is further distinguishable because it did not involve a contract at all.  Indeed, the court observed that "[Plaintiff] did not allege in its complaint that it had a contractual agreement with MacDonald Dettwiler. [Plaintiff] merely alleged that it had an economic expectancy in that it was acting as MacDonald Dettwiler's broker and it expected a commission if the contract was awarded to MacDonald Dettwiler. [Plaintiff] nowhere pleads that this expectancy amounted to an enforceable contract." *Korea Supply*, 29 Cal. 4th at 1157.

resulting in lost sales arising from the contract *as well as* noncontractual sales that "plaintiff would naturally have made as a vendor to [the third party]."  *Nicolosi Distrib., Inc. v. BMW N. Am., LLC*, No. C 10-3256 SI, 2011 WL 479993, *1 (N.D. Cal. Feb. 7, 2011).  In contrast, BrandR's agreements make clear that BrandR does *not* have an exclusive right to the schools' IP or student-athletes' NILs with which EA could have interfered.  *See* TRO Order at 7.  Nor has BrandR sufficiently alleged that it has suffered or will suffer noncontractual, collateral damage, as the *Nicolosi* plaintiff did.

In other words, BrandR has not alleged that its relationships with student-athletes or schools "hold the promise of future economic advantage" *outside the context of its agreements* (i.e., separate and apart from its contractual rights).  *Westside Ctr. Assocs.*, 42 Cal. App. 4th at 524.  As pled, BrandR's intentional interference claim is based on "valid and binding" agreements through which BrandR claims to own the rights to NILs.  Am. Compl. ¶ 167.  It is EA's alleged interference with BrandR's group licensing rights that hs resulted in "the deprivation of its *contractual right* to represent its [] Athletes in negotiations with EA for fair compensation for the use of the [] Athletes' NIL in the Game."  *Id.* ¶ 174.  These allegations underscore the contractual (and speculative) nature of both the relationships and alleged interference.[7]

### C. BrandR fails to state a right of publicity claim.

#### 1. BrandR's right of publicity claim is unripe and BrandR did not plead EA "used" student-athletes' NILs.

BrandR all but concedes that its right of publicity claims are unripe for adjudication.  As EA pointed out in its opening motion, no student-athlete has entered into any agreement with EA, and the Game is not scheduled to be released until 2024.  BrandR does not respond to this except

---

[7] Far from pleading the "*probability* of future economic benefit," BrandR's allegations hinge on a series of suppositions—i.e., that EA would negotiate with BrandR and the student-athletes to secure NILs for the New Game; that the parties would make a deal bundling those NILs with the student-athletes' schools, who would also license their IP to EA; and that EA would pay "fair compensation" to the athletes from which BrandR would received a share—the very type of "speculative expectation" that the courts preclude from recovery.  *Westside Ctr. Assocs.*, 42 Cal. App. 4th at 522, 524; *see also Rheumatology Diagnostics Lab'y, Inc. v. Aetna, Inc.*, No. 12-CV-05847-WHO, 2014 WL 524076, at *14 (N.D. Cal. Feb. 6, 2014) ("Any alleged relationship cannot be based upon 'overly speculative expectancies.'").

to ask for the opportunity to "re-file its action once additional evidence has been established." Opp. at 25. Indeed, BrandR confirms that its right of publicity claim arises solely from EA's "*plan* to use [student-athletes] NIL[s] in the Game." Opp. at 20 (emphasis added). But the law is clear that the issues presented before the court must be definite and concrete, not hypothetical or abstract. *See Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1138 (9th Cir. 2000) (en banc). "A claim is not ripe for judicial resolution 'if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Wolfson v. Brammer*, 616 F.3d 1045, 1064 (9th Cir. 2010) (cleaned up). That is the case here: BrandR does not allege that EA has entered into a single contract with a student-athlete for use of their NIL, or released (yet alone sold) a single copy of the Game using those NILs. And BrandR cannot cite any authority for the proposition that a "plan" like EA's satisfies the courts' ripeness requirements.[8]

Even if BrandR's right of publicity claim were ripe, it separately fails because, as noted *supra*, it has not alleged that EA actually **used** student-athletes' NIL. *See Gionfriddo v. Major League Baseball*, 94 Cal. App. 4th 400, 409 (2001); *Michaels v. Internet Entm't. Grp., Inc.*, 5 F. Supp. 2d 823, 837 (C.D. Cal. 1998). BrandR concedes that "use" is required to state a right of publicity claim under either common law or Section 3344, Opp. at 20, n. 24, but nowhere refutes EA's argument that the Amended Complaint fails to allege that any student-athlete's NIL appears in a commercially released game. The Court can and should dismiss BrandR's right of publicity claims on these bases alone.

### 2. BrandR lacks standing.

BrandR's right of publicity claims should also be dismissed because BrandR is a non-exclusive licensee and lacks standing to bring claims on behalf of student-athletes. *See* Dkt. No. 34 ("Mot. to Dismiss") at 16-17; TRO Order at 7. BrandR responds that it has the exclusive right to student-athletes' NILs in group licensing agreements. But that is contradicted by the plain

---

[8] BrandR cites *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013), but that case involved the question of *standing*, not the separate question of the *timing* (i.e., ripeness). As the Ninth Circuit noted, satisfaction of prudential concerns "without satisfaction of the constitutional component of ripeness, will not cure an unripe claim." *Clark v. City of Seattle*, 899 F.3d 802, 813 n.6 (9th Cir. 2018).

language of the Student GLA Template and, regardless, does not matter here where there is no group licensing agreement.  *See* Student GLA Template ¶¶ 4-6, 9, 11-12.

BrandR alternatively argues that limited or nonexclusive assignments to NILs are sufficient to confer standing.  But the cases BrandR cites are distinguishable.  In those cases, the plaintiffs sufficiently pled that the license or assignment gave them the right to assert claims for infringement—in stark contrast to the plain language of BrandR's GLA.  *See Timed Out, LLC v. Youabian, Inc.*, 229 Cal. App. 4th 1001, 1009 (2014) (finding express assignment of "the naked right to bring suit for misappropriation of the models' images"); *Upper Deck Co. v. Flores*, 569 F. Supp. 3d 1050, 1069 (S.D. Cal. 2021) (finding that the plaintiff received a "license to use Jordan's name, image, likeness and/or autograph in connection with trading cards and has been assigned the right to assert claims for deprivation of rights of publicity in connection with trading cards"); *Del Amo v. Baccash*, No. CV 07-663 PSG (JWJx), 2008 WL 2780978, at *9 (C.D. Cal. July 15, 2008) (finding that contract granted "the perpetual but non exclusive right to use, and to license others to use, Artist's name and biography and reproductions of Artist's physical likeness").  Here, the plain language of the Student GLA Template reveals that student-athletes *retain* the right to license their individual NILs and have not assigned general enforcement rights to BrandR.  Student GLA Template ¶¶ 4, 11.  In fact, student-athletes even retain the right to license their NIL rights in a group.  *Id.* ¶¶ 5, 9, 12.  Because the plain language of the agreements make clear that BrandR lacks the relevant NIL rights, BrandR fails to establish that it may stand in the shoes of the student-athletes in asserting those rights.

### 3. BrandR cannot show that California law applies.

Finally, BrandR assumes that California right of publicity law applies to the claims it brings on behalf of the 3,725 student-athletes it claims to represent.  But it does not allege facts sufficient for the Court to determine that the student-athletes have claims under California law and/or that California law applies to their right of publicity claims.

The right of publicity holder's state of domicile is critical to the determination of what law applies to the claim.  *Cairns v. Franklin Mint Co.*, 24 F. Supp. 2d 1013, 1028-29 (C.D. Cal. 1998) (collecting cases).  Which state law applies is potentially dispositive as "there are material

differences among the states with respect to their laws governing the publicity rights." *Davis v. Elec. Arts, Inc.*, No. 10-cv-03328-RS, 2017 WL 8948081, at *2 (N.D. Cal. Feb. 2, 2017) (observing that "eighteen states . . . do not recognize any right of publicity. Of those states that do recognize such rights, the scope varies"). In *Davis*, the plaintiffs asserted California right of publicity claims on behalf of NFL players, contending that EA misappropriated their NILs in *Madden NFL* video games. The court held that it was "not permissible to apply California law to every class member, *regardless of domicile*," citing material differences among states' right of publicity laws and rejecting plaintiffs' argument that the claims arose in California because the games were published there, where EA is headquartered. *Id.* at *1-2 (emphasis added); *id.* at *4. Likewise, BrandR does not adequately plead that the 3,725 student-athletes it purportedly represents are domiciled in California, and therefore fails to establish that California law applies to its right of publicity claims.

BrandR argues in the alternative that "even if it is precluded from bringing right of publicity claims in certain of the [student-athletes'] home states," it should nonetheless be able to bring California law claims on behalf of all student-athletes *regardless of domicile*, since BrandR's harm "relates to a nationwide and international market insofar as the anticipated sales of EA's Game." Opp. at 29. But the *Davis* court rejected this very argument. It observed that while players living outside California *may* be entitled to sue under California law for products sold *within the state*, the plaintiffs in that case had not limited recovery to California sales, "so that possibility does not assist them" in arguing that California law should apply to all class members. *Id.* at *4. Likewise, because BrandR does not limit its damages to California sales, it cannot avail itself of this argument.

Finally, BrandR's reliance on *In re NCAA Student-Athlete Name & Likeness Licensing Litig.*, 37 F. Supp. 3d 1126, 1146 (N.D. Cal. 2014) is misplaced. Opp. at 22. That case, like *Davis*, involved a class action on behalf of student-athletes, asserting both antitrust and right of publicity claims. In moving to dismiss the *antitrust* claim (rather than the right of publicity claim), NCAA argued that the First Amendment and California Civil Code barred student-athletes from asserting right of publicity in the use of their NILs during game broadcasts. The court

11

disagreed, noting in that context that even if Section 3344(d) precludes plaintiffs from selling or licensing their publicity rights in California, "it does not prevent them from doing so in any other state that recognizes right of publicity," and because plaintiffs allege harm to a national market, "[t]o disprove the existence of this market…the NCAA would have to identify a law or set of laws that precludes student-athletes from asserting publicity rights to game broadcasts in every state."  *In re NCAA Student-Athlete Name & Likeness Licensing Litig.*, Case No. C 09-1967 CW, Dkt. 876 at 17-18 (N.D. Cal. 2014).  *NCAA* is therefore distinguishable and inapplicable here.

In sum, BrandR's failure to allege facts sufficient to determine which law applies requires dismissal of its right of publicity claims.

### D. BrandR's UCL claim rises and falls with its substantive claims.

BrandR's UCL claim, based on its tortious interference and right of publicity claims, fails for the reasons stated above.  It also fails for the additional reasons below.

#### 1. Damages are an adequate remedy at law for BrandR's claims.

The UCL claim fails because BrandR cannot show that it lacks adequate remedies at law. *See* TRO Order at 5 ("[Plaintiff's alleged injuries are monetarily compensable and otherwise speculative.").  BrandR alleges that "[a]s a direct and proximate result of EA Sports' unfair, fraudulent and illegal business practices, [BrandR] is suffering and will continue to suffer *financial losses*." Am. Compl. ¶ 209 (emphasis added).  Notwithstanding this express request for monetary damages—and implicit acknowledgment of the adequacy of a remedy at law—BrandR argues that this Court should disregard the Ninth Circuit's *Sonner*[9] decision and its progeny, which have dismissed UCL claims for injunctive relief where, as here, damages were a sufficient legal remedy.  Opp. at 23-24.  But the authority BrandR cites in response either (1) underscores that where, as here, damages are a sufficient remedy, dismissal is appropriate or (2) is distinguishable because the harm alleged in those cases was *not* adequately redressable via

---

[9] *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834 (9th Cir. 2020).

damages.[10] In contrast, as this Court has noted, "Plaintiff has not demonstrated any likelihood of irreparable harm either. Mere financial injury 'will not constitute irreparable harm if adequate compensatory relief will be available in the course of litigation.'" TRO Order at 5 (citation omitted).

BrandR further argues that it is "inappropriate" for the Court to resolve the adequacy of remedies pled in the alternative on a motion to dismiss. Opp. at 24. But dismissal is required here because, as this Court has already found, BrandR's alleged harm is adequately redressed through damages, and its claim is therefore legal, not equitable, in nature.[11] The authorities BrandR cites do not lead to a different conclusion. In *Johnson v. Trumpet Behav. Health, LLC*, the court noted that "*Sonner*, by its own terms, requires at the pleadings stage [] that the complaint 'allege that [the plaintiff] lacks an adequate legal remedy.' The plaintiffs do not do so," and neither has BrandR. No. 3:21-CV-03221-WHO, 2022 WL 74163, at *3 (N.D. Cal. Jan. 7, 2022) (cleaned up); *see also Nacarino v. Chobani, LLC*, No. 20-CV-07437-EMC, 2022 WL 344966, at *7 (N.D. Cal. Feb. 4, 2022) ("Plaintiff specifically alleges that she 'lacks an adequate remedy at law.'"). Finally, *Yeomans v. World Fin. Grp. Ins. Agency, Inc.* is distinguishable; there, plaintiffs sought only equitable relief (namely, restitution or an injunction on behalf of the general public) by and through their UCL claim. No. 19-CV-00792-EMC, 2022 WL 844152, at *2 (N.D. Cal. Mar. 22, 2022).

---

[10] *See Brooks v. Thomson Reuters Corp.*, No. 21-CV-01418-EMC, 2021 WL 3621837, at *8, 10 (N.D. Cal. Aug. 16, 2021) (permitting UCL claim for injunctive relief only because plaintiffs alleged that "virtually everything about them—including their contact information, partially redacted social security number, criminal history, family history, and even whether they got an abortion, to name just a few—is transmitted to strangers without their knowledge, let alone their consent"); *Zeiger v. WellPet LLC*, No. 3:17-CV-04056-WHO, 2021 WL 756109, at *21, 22 (N.D. Cal. Feb. 26, 2021) (permitting UCL claim only because the plaintiff sought an injunction requiring that defendant disclose the presence of dangerous chemicals in its products, including lead and arsenic); *Andino v. Apple, Inc.*, No. 20-CV-01628-JAM-AC, 2021 WL 1549667, *1 (E.D. Cal. Apr. 20, 2021) (permitting claim for injunctive relief to address allegedly deceptive practices relating to Apple's terminating consumers' access and use of previously purchased content in violation of California's Consumers Legal Remedies Act and False Advertising Law).

[11] The injunctive relief BrandR seeks through its UCL claim is a transparent plea for damages (i.e., participation in EA's negotiations with student-athletes so it can take a cut of the royalties).

13
DEFENDANT ELECTRONIC ARTS INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT
Case No. 4:23-cv-02994-HSG

2372212

### 2. BrandR fails to state a claim under the unlawful, fraudulent, and unfair prongs.

Even if the Court were to find that damages are an inadequate remedy at law, BrandR's UCL claim must be dismissed because it fails to state a claim under any of the three UCL prongs. Because BrandR's claims for tortious interference and right of publicity fails, it does not state a claim under the UCL's "unlawful" prong. And BrandR does not even attempt to argue that its UCL claim satisfies the "fraudulent" prong of the UCL.

Finally, BrandR's claim would fail under both the balancing test and the tethering test of the UCL's "unfair" prong. BrandR's opposition only addresses the balancing test. It asserts that EA's conduct offends a public policy that "is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." Opp. At 23. But, as EA explained in its Opening Brief, the unfair business practices BrandR complains of arise from alleged misrepresentations by EA and thus sound in ***fraud***—meaning that the pleading must "satisfy the heightened standard [of] Rule 9(b)," which BrandR's complaint does not. *Backhaut v. Apple, Inc.*, 74 F. Supp. 3d 1033, 1040,1051 (N.D. Cal. 2014) (applying Rule 9(b) to UCL claim based on purportedly fraudulent conduct and finding claim inadequately pled). BrandR does not even attempt to rebut that argument.

### E. BrandR fails to state a claim for declaratory relief.

For the reasons stated *supra*, this Court should dismiss BrandR's claim for declaratory judgment; as the plain language of the relevant agreements make clear, the Student GLA Template does not grant BrandR exclusive rights to student-athletes' NILs and the school collaboration agreements do not grant BrandR exclusive rights to schools' IP.

### F. Amendment should be denied.

EA's first motion to dismiss put BrandR on notice of EA's arguments for dismissal. BrandR's amended its complaint in response to EA's motion but did not add material factual allegations. Because BrandR has already had a chance to amend in response to EA's arguments and failed to allege facts sufficient to state a claim, the Court should dismiss BrandR amended

complaint with prejudice.[12]

## III. CONCLUSION

The Court should dismiss BrandR's Amended Complaint with prejudice.

Dated: October 3, 2023

KEKER, VAN NEST & PETERS LLP

By: /s/ R. James Slaughter
R. JAMES SLAUGHTER
R. ADAM LAURIDSEN
CANDICE MAI KHANH NGUYEN
LUIS G. HOYOS

Attorneys for Defendant
ELECTRONIC ARTS INC.

---

[12] *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048 (9th Cir. 2003), cited by BrandR, does not require a different result.  The *Eminence* plaintiffs—unlike BrandR—did not take "multiple bites at the apple" in filing successive complaints; and they did not file "substantially similar complaints alleging substantially similar theories . . . by alleging and re-alleging the same theories in an attempt to cure pre-existing deficiencies." *Id.* at 1053.