| | |
|---|---|
| KATTEN MUCHIN ROSENMAN LLP | KEEKER, VAN NEST & PETERS LLP |
| Lindsey L. Smith (admitted pro hac vice) | R. James Slaughter (SBN 192813) |
| lindsey.smith@katten.com | rslaughter@keker.com |
| Kelsey R. Panizzolo (admitted pro hac vice) | R. Adam Lauridsen (SBN 243780) |
| Kelsey.panizzolo@katten.com | alauridsen@keker.com |
| Richard L. Farley (admitted pro hac vice) | Candice Mai Khanh Nguyen (SNB 329881) |
| Richard.farley@katten.com | cnguyen@keker.com |
| 500 S. Tryon Street, Suite 2900 | Luis G. Hoyos (SBN 313019) |
| Charlotte, NC 28202-4213 | lhoyos@keker.com |
| Telephone: 704.344.3178 | 633 Battery Street |
| | San Francisco, CA 94111-1809 |
| Christopher D. Beatty (SBN 266466) | Telephone: 415.391.5400 |
| chris.beatty@katten.com | Facsimile: 415.397.7188 |
| Ashley T. Brines (SBN 322988) | |
| ashley.brines@katten.com | *Attorneys for Defendant Electronic Arts Inc.* |
| 2029 Century Park East, Suite 2600 | |
| Los Angeles, CA 90067 | |
| Telephone: 310.788.4400 | |
| Facsimile: 310.788.4471 | |

*Attorneys for Plaintiff
The BrandR Group, LLC*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# OAKLAND DIVISION

| | |
|---|---|
| THE BRANDR GROUP, LLC | Case No. 4:23-cv-02994-HSG |
| Plaintiff, | [Removed from San Mateo Superior Court, Case No. 23-CIV-02715] |
| v. | **UPDATED JOINT CASE MANAGEMENT STATEMENT** |
| ELECTRONIC ARTS INC., and DOES 1 through 10, inclusive, | |
| Defendants. | Dept.: Courtroom 2 – 4th Floor |
| | Judge: Honorable Haywood S. Gilliam, Jr. |

Plaintiff The BrandR Group ("Plaintiff" or "TBG") and Defendant Electronic Arts Inc. ("Defendant" or "EA") (collectively, the "Parties") hereby submit this Joint Case Management Statement pursuant to the Court's Order Denying Application for Temporary Restraining Order (Dkt. No. 23), Federal Rule of Civil Procedure 26(f), the Standing Order for All Judges of the Northern District of California dated January 17, 2023, and Civil Local Rule 16-9, in advance of the Initial Case Management Conference scheduled for October 19, 2023.

**1.     Jurisdiction and Service**

Plaintiff filed its Complaint in Superior Court of the State of California, County of San Mateo, on June 16, 2023, alleging five causes of action: (1) tortious interference with contract; (2) violation of California's statutory right of publicity, section 3344 of the California Civil Code; (3) violation of the common law right of publicity; (4) violation of California's Unfair Competition Law ("UCL"), section 17200 of the California Business and Professions Code; and (5) declaratory relief.  *See* Dkt. No 1. ("Compl.").

Defendant removed the lawsuit to this Court on June 20, 2023.  *Id.*  Two days later, Plaintiff filed an *Ex Parte* Motion for a Temporary Restraining Order, Dkt. No. 7 ("TRO Motion"), which the Court denied, Dkt. No. 23 ("TRO Order").  Per the parties' agreement, Defendant responded to the Complaint by filing a Motion to Dismiss and a Motion to Stay Discovery on August 1, 2023.  Dkt. No. 28 ("Mot. to Dismiss" or "Mot. to Stay").

On August 15, 2023, Plaintiff filed an Amended Complaint adding a claim for tortious interference with prospective economic advantage, Dkt. No. 31 ("Am. Compl."), and Defendant filed a motion to dismiss the Amended Complaint on August 22, 2023, Dkt. No. 34 ("Renewed Mot. to Dismiss").  The Motion to Stay Discovery and the Motion to Dismiss the Amended Complaint are fully briefed and scheduled to be heard on October 19, 2023.

The parties do not dispute personal jurisdiction and all parties have been served.

<u>Plaintiff TBG's Position:</u>

For the reasons set forth in Plaintiff's Amended Complaint and Opposition to Defendant's Motion to Dismiss the Amended Complaint, Plaintiff contends that the Court has subject matter

jurisdiction over each of its claims against EA.  *See* Am. Compl.; Dkt. 41 ("Opposition Brief") pp 27-29.

Defendant EA's Position:

Defendant agrees that the Court has subject matter jurisdiction over the claims in the complaint except for Plaintiff's right of publicity claims for the reasons addressed in EA's motion to dismiss.  *See* Renewed Mot. to Dismiss at 15-17.

**2.     Facts**

Plaintiff TBG's Position:

This matter involves EA's interference with TBG's group licensing rights by virtue of EA's planned use of collegiate student-athletes' name, image, and likeness ("NIL") in its upcoming *EA Sports College Football* video game (the "Game").  Plaintiff TBG is a brand management, marketing, and licensing business, with a particular focus on collegiate group licensing rights.  TBG has entered into Group Rights Collaboration Agreements with dozens of colleges and universities, pursuant to which TBG's partner schools engaged TBG to serve as the exclusive or preferred provider of the schools' Group Licensing Programs ("GLPs").  Dkt. 31 ("Am. Compl.") ¶ 35.  As contemplated by the Collaboration Agreements, TBG has also entered into thousands of Group Licensing Authorization & Assignment agreements ("GLAs") with student-athletes from these partner schools, pursuant to which student-athletes grant TBG the right to license and use their NIL in GLPs.  *Id.* ¶ 47.  TBG's contracts define GLPs as "those licensing or sponsorship programs in which a collegiate licensee or collegiate sponsor uses the Athlete Attributes [e.g. an athlete's name, image, likeness, voice, etc.] of three (3) or more current athletes from one sport or six (6) or more from multiple sports, either in combination with school trademarks and logos or separately as a group."  As clearly stated in the Amended Complaint, TBG's separate contracts with its partner schools and those schools' student-athletes contemplate that a GLP is not defined by a single contract to which the licensee, the partner school, and the college athletes are parties; rather, a GLP is implemented by one contract between the licensee and the partner school, in conjunction with a separate but related contract or multiple contracts between the licensee and the student-athlete(s).  And the contracts are in fact contingent upon each other: the partner schools cannot allow the use

of the students' NIL without the athletes' separate license, and the athletes cannot appear in the school's uniforms, and otherwise tout the school's logos, brands, etc., without the partner school's separate license.  This group licensing model is well known in the industry and is in fact recognized – and complied with – by EA in professional group licensing programs, including its *Madden* NFL video game that is the model for its proposed *NCAA Football Game*.

In its upcoming release of the Game, EA will feature the logos, brands, and other intellectual property (collectively, "IP") of most National Collegiate Athletic Association football programs, as well as the NIL of the individual student-athletes who play for those programs.  TBG claims that EA's use in the Game of the IP of the schools for whom it has entered into exclusive or preferred Collaboration Agreements in combination with the NIL of at least three student-athletes from each respective school's football program directly implicates TBG's group licensing rights and that EA's planned use of school IP and student-athletes' NIL in its Game without TBG's consent interferes with those rights.  In fact, TBG's partner schools and the student athletes with whom it has GLAs cannot participate in the Game, as currently modeled by EA, without violating their contractual obligations to TBG.

Before filing this action, TBG notified EA of its exclusive group licensing rights and informed EA of each school, and thereby each student-athlete, for whom TBG owns the exclusive or preferred group licensing rights for the use of those athletes' NIL in the Game.  EA disputes that the Game implicates TBG's rights, and instead seeks to contract directly with individual student-athletes for the use of their NIL in the Game.  TBG claims that it is a violation of its agreements for EA to use the IP of TBG's partner schools in combination with the student-athletes' NIL in the Game without TBG's consent—regardless of whether EA contracts for that use via separate licenses with the partner schools and individual licenses with the student athletes, or does so through a single contract to which the licensee (EA), the schools, and the student-athletes are all parties.  Moreover, TBG is informed and believes—and EA has not denied—that the compensation EA intends to pay to student-athletes for the use of their NIL in the Game is far below fair market value and far less than what participating student-athletes would earn if they had fair representation in the negotiations with EA for the use of their NIL.

TBG alleges that EA tortiously interfered, and continues to interfere with, its contractual rights under the Collaboration Agreements and GLAs.  TBG also alleges that EA has interfered with its prospective economic advantage, and that EA's actions violate TBG's statutory and common law rights of publicity, and violates California's Unfair Competition Law ("UCL"), section 17200 of the California Business and Professions Code.  In bringing this action, TBG seeks monetary damages and permanent injunctive relief restraining EA from engaging in future harm to TBG's contractual rights granted to it by its partner schools and thousands of student-athletes.  TBG also requests that the Court enter a declaratory judgment recognizing that EA's planned use of TBG's partner schools' IP in combination with student-athletes' NIL in the Game is a violation of TBG's contractual rights.

On June 22, 2023, Plaintiff filed a TRO Motion, seeking emergency relief to enjoin EA from soliciting its partner schools for the use of the schools' IP and student-athletes' NIL in its Game. Dkt. No. 7.  TBG's TRO Motion was largely based on reports that EA was pressuring schools to commit to participating in its Game by June 30, 2023. Dkt. No. 1 ¶¶ 81-82.  In its opposition to the TRO Motion, EA represented to the Court that "nothing precludes any school or student-athlete from participating in the game after June 30[,]" (Dkt. 16, p 4), which the Court recognized in its denial of TBG's TRO Motion.  TRO Order p 4.

Now pending before the Court is Defendant's Motion to Dismiss Plaintiff's Amended Complaint which requires a very different legal standard of review than that which applied to Plaintiff's request for the extraordinary relief of a TRO.  In addition, after the TRO ruling, Plaintiff filed its Amended Complaint, providing significant detail regarding the contracts at issue, how the group licensing space works, and how EA interfered with the contracts.  As set forth in Plaintiff's Opposition, TBG submits that its Amended Complaint more than satisfies the legal pleading standard to state a claim for each of its causes of action.  Plaintiff asks that the Court deny Defendant's Motion to Dismiss the Amended Complaint; alternatively, Plaintiff requests that it be granted leave to further amend the Complaint or that dismissal be entered without prejudice.

Defendant EA's Position:

A more fulsome chronology of the case is laid out in the Court's TRO Order, as well as Defendant's opposition to the TRO and Defendant's Motions to Stay Discovery and to Dismiss the Amended Complaint. *See* Renewed Mot. to Dismiss at 7-8.

In February 2021, Defendant announced that it would be releasing a new college football game—titled *EA Sports College Football*—and that it would license schools' IP for use in the game through the Collegiate Licensing Company ("CLC"), the schools' exclusive licensing agent. *Id.* at 3. In June 2021, after the Supreme Court's decision in *National Collegiate Athletic Association v. Alston*, 141 S. Ct. 2141 (2021), Defendant also announced that it would explore the possibility of licensing student-athletes' NILs for use in the game. *Id.* Sometime *after* that, Plaintiff entered into so-called Collaboration Agreements with certain schools. *See* Am. Compl., Exs. 1 and 2. When Plaintiff approached Defendant about a group license for student-athletes bundled with the licenses for the schools' IP, Defendant informed Plaintiff that it was not pursuing a group licensing strategy for student-athletes' NILs, and instead had decided to seek individual licenses directly with each student-athlete and would separately license school IP through CLC. Plaintiff's group license template with student-athletes provides that "TH[E] AGREEMENT DOES NOT RESTRICT OR PREVENT ANY OF [THE STUDENT-ATHLETE'S] EXISTING OR FUTURE, INDIVIDUAL NIL AGREEMNTS." *Id.*, Ex. 3 ¶ 11.

Nevertheless, Plaintiff filed this case in June 2023 alleging that Defendant is interfering with its contractual relationships with certain schools and their student-athletes by soliciting the schools to license their IP[1] and the student-athletes to license their NILs for use in the upcoming relaunch of Defendant's college football video game. Am. Compl. ¶¶ 151-165. Plaintiff also alleges that Defendant's potential individual licenses with student athletes and schools constitute intentional interference with Plaintiff's prospective economic advantage, violate the student-

---

[1] The term "IP" includes the schools' trademarks, student logos, mascots, and other intellectual property.

athletes' right of publicity, and violate California's UCL, section 17200 of the California Business and Professions Code. *Id.* ¶¶ 166-216.

After Defendant removed the case to this Court, Dkt. No. 1, Plaintiff moved for a temporary restraining order, Dkt. No. 7, which the Court denied. Dkt. No. 23. Among other things, the Court found that Plaintiff's injuries were "monetarily compensable and otherwise speculative," and that Plaintiff had not established a likelihood of success on the merits because, "[c]onsidering the plain language of the sample agreements that Plaintiff provides, Plaintiff appears to overstate the scope of its rights and the reach of those agreements." TRO Order at 5, 11. The Cout correctly concluded that "[e]ven if the IP and NILs are used in the same game, the record suggests that such rights are not licensed together, nor are they apparently contingent on each other." *Id.* at 13.

After the Court denied the TRO Motion, Defendant filed a Motion to Dismiss and a Motion to Stay Discovery, to which Plaintiff responded by filing an Amended Complaint. Shortly thereafter, Defendant filed a renewed Motion to Dismiss the Amended Complaint. As a result, currently before the Court are (1) Defendant's Motion to Dismiss the Amended Complaint and (2) Defendant's Motion to Stay Discovery. Defendant moves to dismiss with prejudice Plaintiff's claims for failure to state a claim and for lack of subject matter jurisdiction. *See* Renewed Mot to Dismiss. If the Court grants Plaintiff leave to amend a second time, however, Defendant asks the Court to stay discovery until it determines that Plaintiff has pled a plausible cause of action. Mot. to Stay at 21-22. Defendant's motions are fully briefed and are currently scheduled to be heard on October 19, 2023.

### 3. Legal Issues

At this time, the principal legal issues in dispute include the following:

- Whether Plaintiff states a claim against Defendant for tortious interference with its agreements with student-athletes;
- Whether Plaintiff states a claim against Defendant for tortious interference with its agreements with schools;
- Whether Plaintiff states a claim against Defendant for tortious interference with a

prospective economic advantage;

- Whether Plaintiff's right of publicity claim pursuant to section 3344 of the California Civil Code is ripe for adjudication;
- Whether Plaintiff has standing to bring right of publicity claims on behalf of student-athletes even though it is not the exclusive licensee of those athletes' NILs;
- Whether Plaintiff states a claim against Defendant for violation of the student-athletes' right of publicity;
- Whether Plaintiff states a claim against Defendant under the UCL;
- Whether Plaintiff is entitled to a declaratory judgment;
- Whether Plaintiff is entitled to, and the amount of, any damages.

The parties reserve the right to modify or supplement this list as appropriate and as the case progresses.

**4.     Motions**

On June 22, 2023, TBG filed the TRO Motion. Defendant filed an Opposition to the TRO Motion on June 27. This Court denied the TRO Motion on June 30.

On August 1, 2023, Defendant filed a Motion to Dismiss and a Motion to Stay Discovery. After Plaintiff filed an Amended Complaint on August 15, Defendant filed a Motion to Dismiss the Amended Complaint on August 22. As a result, the Court terminated the initial Motion to Dismiss and scheduled a hearing on the Motion to Dismiss the Amended Complaint and the Motion to Stay for October 19, 2023. Dkt. No. 37.

**5.     Amendment of Pleadings**

<u>Plaintiff TBG's Position:</u>

The parties agree that it is premature to determine a deadline to amend the pleadings given Defendant's pending Motion to Dismiss the Amended Complaint. In the event the Court denies Defendant's Motion to Dismiss, Plaintiff requests that the Court set the deadline for amending the complaint to sixty (60) days after the entry of such order, while also allowing for the possibility of further amendment after EA discloses the content of the contracts by which EA obtained or plans to obtain the right to use school IP and student-athletes' NIL in the Game.

Defendant EA's Position:

It is premature to determine a deadline to amend the pleadings because Defendant's pending Motion to Dismiss the Amended Complaint could result in the dismissal of the entire case. Alternatively, the Court should set the deadline for amending the complaint to sixty (60) days after an order denying Defendant's motion to dismiss.

**6.      Evidence Preservation**

The Parties have reviewed the Guidelines Relating to the Discovery of Electronically Stored Information and have met and conferred pursuant to Federal Rule of Civil Procedure 26(f) regarding reasonable and proportionate steps taken to preserve evidence relevant to the issues reasonably evident in this action.

**7.      Disclosures**

The parties exchanged Initial Disclosures on August 8, 2023.

**8.      Discovery**

On August 2, 2023, Plaintiff served via mail its first set of requests for production (Nos. 1-27) and first set of interrogatories (Nos. 1-12). Pursuant to Federal Rules of Civil Procedure 33, 34, and 6, Defendant served its objections on September 5, 2023.

EA has moved to stay discovery (Dkt. 28), which motion is fully briefed.

**9.      Class Actions**

This is not a class action lawsuit.

**10.     Related Cases**

There are no related cases filed in any court at this time.

**11.     Relief**

Plaintiff TBG's Position:

Plaintiff TBG seeks permanent injunctive relief and damages for EA's alleged interference with TBG's contractual rights and prospective economic advantage, violation of TBG's right(s) of publicity, and violation of the UCL. Because TBG's damages are difficult to determine and EA has refused to substantively respond to TBG's discovery requests, TBG is unable to compute damages

at this time. TBG further seeks a declaration of its rights under the pertinent contracts and recovery of punitive damages and its attorneys' fees.

Defendant EA's Position:

Defendant does not believe Plaintiff is entitled to any relief.

**12.    Settlement and ADR**

Plaintiff TBG's Position:

TBG is amenable to ADR with a private mediator, and has proposed that such mediation take place no later than May 1, 2024, as indicated in paragraph 17, below. TBG is also amenable to participating in mediation before the close of discovery.

Defendant EA's Position:

Defendant agrees to private ADR in accordance with ADR L.R. 3-4(b) and proposes that the deadline for the completion of private ADR be set for 60 days from the date of the close of expert discovery, should any portion of the case survive the pending motion to dismiss.

**13.    Consent to Magistrate Judge for All Purposes**

The parties do not consent to a magistrate judge for all purposes.

**14.    Other References**

The parties agree that this matter is not suitable for reference to binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation.

**15.    Narrowing of Issues**

It is too early to determine whether the issues in this case can be narrowed through agreement, motion, or bifurcation.

**16.    Expedited Trial Procedure**

The parties do not believe that this case can be handled on an expedited basis with streamlined procedures.

**17.    Scheduling**

Plaintiff TBG's Position:

Plaintiff respectfully proposes the following dates for scheduling in this case:

| Event | Proposed Deadline |
|---|---|
| Completion of Initial ADR Session | May 1, 2024 |
| Close of Fact Discovery | February 16, 2024 |
| Expert Disclosures | March 15, 2024 |
| Rebuttal Expert Disclosures | March 30, 2024 |
| Close of Expert Discovery | April 15, 2024 |
| Hearing of Dispositive Motions | May 13, 2024 |
| Pre-trial Conference | June 17, 2024 |
| Trial | July 8, 2024 |

Defendant EA's Position:

Because Defendant's pending motion to dismiss may result in the dismissal of the entire case, it is premature to set a schedule at this time.  Rather, Defendant suggests that the Court order the parties to meet and confer regarding a proposed case schedule after the Court resolves the pending motion to dismiss and any portion of the case remains.

Alternatively, the Court should set a schedule that is queued from the date it becomes clear that any claims will proceed, as follows.

| Event | Proposed Deadline |
|---|---|
| Close of Fact Discovery | 8 months from order denying motion to dismiss amended complaint |
| Expert Disclosures | 30 days after close of fact discovery |
| Rebuttal Expert Disclosures | 30 days after initial expert disclosures |
| Close of Expert Discovery | 21 days after rebuttal expert disclosures |
| Completion of Initial ADR Session | 60 days after close of expert discovery |
| Hearing of Dispositive Motions | 60 days after close of expert discovery |
| Pre-trial Conference | 90 days after order on dispositive motions |
| Trial | 14 days after pre-trial conference |

**18.    Trial**

The parties request a single jury trial on all issues to which a party is entitled to a jury.

<u>Plaintiff TBG's Position:</u>

Based on the information known at this time, Plaintiff anticipates trial of this case will take two weeks.

<u>Defendant EA's Position:</u>

Defendant is currently unable to speculate as to what the scope of the case will be after the pending motion to dismiss is resolved, and therefore cannot provide a reasonable estimate for the duration of trial.

**19.    Disclosure of Non-party Interested Entities or Persons**

Each party has filed a Certification of Interested Entities or Persons, as required by Civil Local Rule 3-15.

<u>TBG's Disclosure:</u> As previously disclosed:

    a.   TBG is a privately held company.

    b.   No publicly held company owns 10% or more of TBG stock.

    c.   The members of TBG are One Team Partners, LLC, a Delaware limited liability company with its principal place of business in New York. ("OneTeam"), and TBG IP Agency Holding Company, LLC, a North Carolina limited liability company with its principal place of business in Florida ("Holdco").

    d.   The members of Holdco are Wesley Haynes, domiciled in Florida; JC Faulkner, domiciled in North Carolina; Randy Haynes, domiciled in Alabama; Hunter Haynes, domiciled in Florida; Jon Podany, domiciled in New Jersey and/or Florida; Lee Bushkell, domiciled in Florida; Malaika Underwood, domiciled in Florida; Len Stachitas, domiciled in Florida; and Riley Haynes, domiciled in North Carolina.

<u>EA's Disclosure:</u> EA is a publicly traded entity and has no parent corporation or publicly held corporation owning 10% or more of its stock.

**20.     Professional Conduct**

All attorneys of record for the parties have reviewed the Guidelines for Professional Conduct for the Northern District of California.

**21.     Other**

*i. E-mail Service*

As of the date of this statement, the parties consent to service by electronic means as set forth in FRCP 5(b)(2)(e), including service by e-mail and via other widely used electronic file transfer services. Service by e-mail will be treated as service by hand delivery. The parties agree that service by e-mail by 7:00 P.M. Pacific Time on a given day will be treated as service by personal delivery that day. Notwithstanding the foregoing, the parties further agree that documents filed publicly through the Court's ECF system need not be separately served by e-mail, that ECF filing constitutes personal service as of the date and time such document was filed, that documents filed under seal or manually must be served by e-mail within 3 hours of a related ECF filing, and that the e-mail service of such documents shall relate back to the time of the related ECF filing.

*ii. Electronic Mail and Communications*

The parties acknowledge the burden of discovery involving emails and other forms of electronic communication and agree to (a) abide by the Northern District of California's E-Discovery Guidelines, and (b) meet and confer regarding any proposed modifications to the Court's Model Stipulation & Order Re: Discovery of Electronically Stored Information for Patent Litigation ("Model ESI Stipulation").

|   |   |   |
|---|---|---|
|   |   | Respectfully Submitted by, |
| DATED: October 12, 2023 |   | KATTEN MUCHIN ROSENMAN LLP |
|   |   | By /s/  Lindsey L. Smith |
|   |   | Lindsey L. Smith |
|   |   | Attorneys for Plaintiff |
|   |   | *The BrandR Group, LLC* |
| DATED: October 12, 2023 |   | KEKER, VAN NEST & PETERS LLP |
|   |   | By */s/ R. James Slaughter* (with permission) |
|   |   | R. James Slaughter |
|   |   | Attorneys for Defendant |
|   |   | *Electronic Arts, Inc.* |

The filer of this document, Lindsey L. Smith, attests that the concurrence in the filing of the document has been obtained from counsel for Defendant Electronic Arts Inc., pursuant to L.R. 5-1(h)(3).

DATED: October 12, 2023                                            By: */s/ Lindsey L. Smith*
                                                                                   Lindsey L Smith

**CERTIFICATE OF SERVICE**

I, Lindsey L. Smith, hereby certify that on October 12, 2023, the foregoing document was filed and served electronically, using the CM/ECF system, on all parties registered to receive notices.

DATED: October 12, 2023

By:     */s/ Lindsey L. Smith*
          Lindsey L. Smith